**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| Patricia J. Ritchie, | } No. 12 CV 4992 (KMK) |
| Plaintiff | |
| v. | |
| Northern Leasing Systems, Inc., Lease Finance Group, LLC, Ricardo Brown, Robert Taylor, and John Does 1-50 | |
| Defendants | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: New York, New York
June 24, 2013

**Chittur & Associates, P.C.**
286 Madison Avenue Suite 1100
New York, New York 10017
Tel: (212) 370-0447

Attorneys for Ms. Ritchie

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................... i

PRELIMINARY STATEMENT................................................ 1

ARGUMENT............................................................. 3

I.      The Complaint Meets the Pleading Requirements of Rules 8(a).............. 3

        A.      Rule 9(b) Does Not Apply To FCRA/NYFCRA Claims................. 4

        B.      The FAC Provides Sufficient Notice To Each Defendant .............. 4

        C.      The Failure to Investigate Claims May Not Be Dismissed ............. 7

        D.      Defendants' Cases Are Distinguishable............................ 8

II.     The FCRA And NYFCRA Claims Are Proper........................... 9

        A.      FCRA Requires that the Consumer Actually Request Credit. .......... 9

        B.      Defendants Misstate the FAC to Manufacture a Business Purpose...... 10

        C.      Defendants' Cases Are Readily Distinguishable..................... 13

III.    Damages Are Pleaded Adequately..................................... 14

        A.      Since Defendants' FCRA Violations Were Wilful, Ms. Ritchie Is
                Entitled to Statutory and Punitive Damages....................... 14

        B.      Ms. Ritchie Expressly Sought Statutory Damages................... 15

        C.      In Any Event, Ms. Ritchie Has Pleaded Actual Damages. ............ 16

        D.      Actual Damages Are An Issue for Trial........................... 17

        E.      The NYFCRA Claims Do Not Require That Pleadings Detail Damages... 19

IV.     Northern Leasing, the Central Platform For the Wrongdoing At Issue, Is A Proper
        Defendant......................................................... 19

V.      The Individual Defendants May Be Liable.............................. 21

A.  Employees May be Personally Liable For Wilful Violations of the Law. . .  21

B.  The Individual Defendants Acted For Their "Personal Purposes". . . . . . .  22

C.  At the Very Least, the Individual Defendants' Scope of Employment Is a Factual Issue That Cannot Be Resolved Now. . . . . . . . . . . . . . . . . . . . . . . .  23

VI.  Defendants May Be Liable for Impermissible Access. . . . . . . . . . . . . . . . . . . . . . . .  23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

TABLE OF AUTHORITIES

<u>Cases</u>

*Abdell v. City of New York*,
2009 WL 1270455, at *5 (S.D.N.Y. May 5, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Airlines Reporting Corp. v. Inter Transit Travel, Inc.*,
884 F.Supp. 83, 87 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ali v. Vikar Management Ltd.*,
994 F. Supp. 492, 497 (S.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Am. Underground Eng'g, Inc. v City of Syracuse*,
2013 WL 2396027 (2d Cir June 4, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Anderson v Frederick Ford Mercury, Inc.*,
694 F Supp 2d 324, 332 (D Del 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Anwar v Fairfield Greenwich Ltd.*,
728 F Supp 2d 372, 405-06 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Atuahene v City of Hartford*,
10 Fed Appx 33, 34 (2d Cir 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Baker v. Bronx-Westchester Investigations, Inc.*,
850 F. Supp. 260, 263-64 (S.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barnes v Pozzi*,
2012 WL 3155073, *4 (S.D.N.Y. Aug. 3, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beckstrom v Direct Merchant's Credit Card Bank*,
2005 WL 1869107 (D. Minn Aug. 5, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Belshaw v. Credit Bureau of Prescott*,
392 F. Supp. 1356, 1359 (D. Ariz. 1975).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Berman v. Parco*,
986 F. Supp. 195, 213 (S.D.N.Y. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Boothe v. T.R.W. Credit Data*,
523 F. Supp. 631, 634 (S.D.N.Y. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Breed v. Nationwide Ins. Co.*,
2007 WL 1231558, *2 (W.D.Ky. Apr 24, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brims v Ramapo Police Dept.,*
2011 WL 7101233 (S.D.N.Y. Dec. 23, 2011), *appeal dismissed* (Mar. 21, 2012), *lv to appeal denied*, 2012 WL 234435 (S.D.N.Y. Jan. 26, 2012). . . . . . . . . . . . . . . . . . . . . . . . 20

*Buhmeyer v Case New Holland, Inc.,*
446 F Supp 2d 1035, 1051 (S.D. Iowa 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Burns v Bank of Am.,*
655 F Supp 2d 240, 251 (S.D.N.Y. 2008), *affd*, 360 Fed Appx 255 (2d Cir 2010). . . . . . 17

*Buxton v. Equifax Credit Info. Servs.,*
2003 WL 22844245, *5 (N.D.Ill. Dec. 1, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Caltabiano v BSB Bank & Trust Co.,*
387 F Supp 2d 135, 142 (E.D.N.Y. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Church & Dwight Co., Inc. v Kaloti Enterprises of Michigan, L.L.C.,*
2011 WL 4529605 (E.D.N.Y. Sept. 28, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cisneros v Trans Union, LLC,*
293 F Supp 2d 1167, 1175 (D. Haw. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of New York v Smart Apartments LLC,*
39 Misc 3d 221, 228 (Sup Ct 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Comeaux v. Brown & Williamson Tobacco Co.,*
915 F.2d 1264, 1273-75 (9th Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of Pomona,*
2013 WL 66473, *8 (S.D.N.Y. Jan. 4, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Croce v. Kurnit,*
565 F.Supp. 884, 894 (S.D.N.Y. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Denius v. Dunlap,*
330 F.3d 919, 930 (7th Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*DiVittorio v. Equidyne Extractive Indus .,*
822 F.2d 1242, 1248 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dixon-Rollins v Experian Info. Solutions, Inc.,*
2010 WL 3749454 (E.D. Pa Sept. 23, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe v Selsky,*
2013 WL 2477255, *4 (W.D.N.Y. June 10, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Edge v Professional Claims Bur., Inc.*,
64 F Supp 2d 115, 118 (E.D.N.Y. 1999), *affd*, 234 F3d 1261 (2d Cir 2000) . . . . . . . . . . 25

*Elias v City of New York*,
2010 WL 5475809, *3 (E.D.N.Y. Dec. 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Emerson Enterprises, LLC v Kenneth Crosby New York, LLC*,
781 F Supp 2d 166, 179 (W.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ferro v Ry. Exp. Agency, Inc.*,
296 F2d 847 (2d Cir 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fisher v. Quality Hyunday, Inc.*,
2002 WL 47968 (N.D. Ill Jan. 11, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fleischmann v Care Credit*,
2013 WL 424766 (C.D. Cal Feb. 1, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Garland–Sash v. Lewis*,
348 Fed. Appx. 639, 642 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Goldstein v. Cogswell*,
1991 WL 60420 at *17 (S.D.N.Y. Apr. 11, 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gorman v Experian Info. Solutions, Inc.*,
2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Grand Manor Health Related Facility, Inc. v Hamilton Equities Inc.*,
2013 WL 1748282 (S.D.N.Y. Apr. 23, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Grimes v Fremont Gen. Corp.*,
2013 WL 1187474, *4 (S.D.N.Y. Mar. 22, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hahn v. Star Bank*,
190 F.3d 708, 714 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hansen v. Morgan*,
582 F.2d 1214, 1218-20 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Heath v. Credit Bureau of Sheridan, Inc.*,
618 F.2d 293, 696 (10th Cir 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Trans Union Corp. Privacy Litigation*,
211 F.R.D. 328, 341-42 (N.D.Ill. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Trans Union Corp., Privacy Litig.*,
326 F Supp 2d 893, 900 (N.D. Ill 2004)........................................ 4

*Ippolito v. WNS, Inc.*,
864 F.2d 440 (7th Cir. 1988)........................................... 10, 11

*Iwachiw v New York City Bd. of Elections*,
2013 WL 3110839 (S.D.N.Y. June 20, 2013). ................................. 17

*Johnson v. Wells Fargo Home Mortg., Inc.*,
558 F.Supp.2d 1114 (D.Nev.2008)........................................... 15

*Jones v Federated Fin. Reserve Corp.*,
144 F.3d 961, 966 (6th Cir 1998)........................................... 21

*Klapper v. Shapiro*,
154 Misc. 2d 459 (Sup. Ct. N.Y. Co. 1992).................................. 12

*Krasner v Rahfco Funds LP*,
2012 WL 4069300, *8 (S.D.N.Y. Aug. 9, 2012)................................. 6

*Liberty Mut. Ins. Co. v Blessinger*,
2007 WL 951905 *2 (E.D.N.Y. Mar. 27, 2007)................................. 6

*Lippe v Bairnco Corp.*,
225 BR 846, 860-61 (S.D.N.Y. 1998)........................................ 8

*Lucchesi v. Experian Info. Solutions, Inc.*,
226 F.R.D. 172 (S.D.N.Y. 2005)............................................ 13

*Margan v Niles*,
250 F Supp 2d 63, 74 (N.D.N.Y. 2003)...................................... 21

*Martin v Asset Acceptance, LLC*,
2012 WL 3042524 (N.D. Ill July 25, 2012)................................... 17

*Matthews v. Worthen Bank & Trust Co.*,
741 F.2d 217 (8th Cir. 1984).............................................. 14

*McKinley v. CSC Credit Services, Inc.*,
2007 WL 1412555, *6 (D.Minn. May 10, 2007)................................. 20

*McMindes v. Jones*,
839 N.Y.S.2d 365, 366 (4th Dept. 2007).................................... 23

*Medina v Bauer,*
2004 WL 136636 (S.D.N.Y. Jan. 27, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mone v. Dranow,*
945 F.2d 306, 308 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Monica v MBNA Am. Bank, N.A.,*
2006 WL 2040380 (D.N.J. July 20, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Moulton v AmeriCredit Fin. Services, Inc.,*
2005 WL 1522237. *3 (N.D. Cal June 28, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Murray v New Cingular Wireless Services, Inc.,*
232 FRD 295, 303 (N.D. Ill 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Myers v Bennett Law Offices,*
238 F Supp 2d 1196, 1202 (D Nev 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*New York State Elec. & Gas Co.v Sec'y of Labor,*
88 F.3d 98, 104 (2d Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Northrop v. Hoffman of Simsbury, Inc.,*
134 F.3d 41, 49 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Nova Int'l, Inc. v. Am. Express Bank, Ltd.,*
1996 WL 39317(DC) at *5 (S.D.N.Y. Jan. 31, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ochre LLC v Rockwell Architecture Planning and Design, P.C.,*
2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oneida Indian Nation v. Cnty. of Oneida,*
434 F.Supp. 527, 547 (N.D.N.Y.1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*PDK Labs, Inc. v. G.M.G. Trans W. Corp.,*
2012 N.Y. Slip Op 8706, *3 (2d Dept 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People ex rel. Spitzer v. Telehublink Corp.,*
301 A.D.2d 1006, 1010 (3rd Dept. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Perretta v Capital Acquisitions & Mgt. Co.,*
2003 WL 21383757 (N.D. Cal May 5, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Philbin v. Trans Union Corp.,*
101 F.3d 957, 963 n. 3 (3d. Cir.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Phillips v. Grendahl,*
312 F.3d 357, 367–68 (8th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Phillips v. Grendahl,*
312 F.3d 357, 370 (8th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Phoenix Tech. Intern., LLC v Krones AG,*
2010 WL 818869, *2 (N.D. Ohio Mar. 9, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pludeman v. Northern Leasing Sys.,*
10 N.Y.3d 486 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Popik v. Amer. Int'l Mortgage Co.,*
936 F. Supp. 173, 176 (S.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rice v. Montgomery Ward & Co.,*
450 F. Supp. 668, 672 (M.D.N.C. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Robinson v. Equifax Info. Serv., LLC,*
560 F.3d 235, 239–40 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rodgers v. McCullough,*
296 F.Supp.2d 895, 898, 901 (W.D.Tenn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rodriguez v Mount Vernon Hosp.,*
2010 WL 3825736 (S.D.N.Y. Sept. 7, 2010), *report and recommendation adopted,* 2010
WL 3825715 (S.D.N.Y. Sept. 30, 2010), *aff'd,* 2010 WL 3959602 (S.D.N.Y. Oct. 5, 2010)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ross Univ. School of Medicine, Ltd. v Brooklyn-Queens Health Care, Inc.,*
2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sampson v. Western Sierra Acceptance Corp.,*
2004 WL 406992, *3 (N.D.Ill. Feb.27, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Saunders v. Equifax Information Services, L.L.C.,*
469 F.Supp.2d 343 (E.D.Va. 2007), *aff'd,* 526 F.3d 142 (4th Cir. 2008). . . . . . . . . . . . . 15

*Scott v Real Estate Fin. Group,*
183 F3d 97, 100 (2d Cir 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Serin v N. Leasing Sys., Inc.,*
2009 WL 7823216,*8 (S.D.N.Y. Dec. 18, 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Smith v HireRight Solutions, Inc.,*

711 F Supp 2d 426, n. 4 (E.D. Pa 2010)............................................... 4, 15

*Sotheby's, Inc. v Minor,*
2009 WL 3444887 (S.D.N.Y. Oct. 26, 2009)..................................... 16

*Southerland v New York City Hous. Auth.,*
2010 WL 4916935, *2 (E.D.N.Y. Nov. 23, 2010). ................................. 9

*St. Paul Guardian Ins. Co. v. Johnson,*
884 F.2d 881, 884-85 (5th Cir. 1989)....................................... 11, 13

*Stevenson v. TRW Inc.,*
987 F.2d 288 (5th Cir. 1993). ................................................ 15

*Stonehart v Rosenthal,*
2001 WL 910771 (S.D.N.Y. Aug. 13, 2001) ..................................... 25

*Thibodeaux v. Rupers,*
196 F.Supp.2d 585, 586, 591–92 (S.D.Ohio 2001) .............................. 24

*Thomas v Cendant Mortg.,*
2004 WL 2600772 (E.D. Pa Nov. 15, 2004)...................................... 7

*Thornton v. Equifax, Inc.,*
467 F.Supp. 1008 (E.D.Ark. 1979), *reversed on other grounds*, 619 F.2d 700 (8th Cir.),
*cert denied*, 449 U.S. 835 (1980)............................................ 15

*Traveler v. Glenn Jones Ford Lincoln Mercury 1987, Inc.,*
2006 WL 173687 (D. Ariz. Jan 24, 2006)........................................ 9

*Trikas v Universal Card Services Corp.,*
351 F Supp 2d 37, 42-43 (E.D.N.Y. 2005) ..................................... 24

*Turley v ISG Lackawanna, Inc.,*
2013 WL 150382, *11 (W.D.N.Y. Jan. 14, 2013).................................. 23

*TVT Records v. Island Def Jam Music Group,*
412 F.3d 82, 89 (2d Cir.2005). ............................................... 24

*Usery v. Marquette Cement Mfg. Co.,*
568 F.2d 902, 906 (2d Cir.1977). ............................................. 18

*Wakefield v Cavalry Portfolio Services, LLC,*
2006 WL 3169517 (D Or Nov. 1, 2006).......................................... 4

*White v. First American Registry, Inc.,*
378 F.Supp.2d 419 (S.D.N.Y. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Willey v J.P. Morgan Chase, N.A.,*
2009 WL 1938987 (S.D.N.Y. July 7, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wilson v. C&R Dist.,*
2002 U.S. Dist. LEXIS 8475 (W.D. Tex. Apr 12, 2002).. . . . . . . . . . . . . . . . . . . . . . 14

*Yang v. Government Employees Ins. Co.,*
146 F.3d 1320, 1325 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Yeadon v. New York City Transit Auth.,*
719 F.Supp. 204, 207, 212 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Yeager v. TRW, Inc.,*
961 F.Supp. 161 (E.D.Tex. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Yohay v. City of Alexandria Employees Credit Union, Inc.,*
827 F.2d 967, 971-72 (4th Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Other Authorities</u>

Coffey, FTC Informal Staff Opinion Letter (Feb. 11, 1998). . . . . . . . . . . . . . . . . . . . . 9

National Consumer Law Center, *Fair Credit Reporting* (7th Ed. 2010), ¶7.2.3.2.. . . . . . . 9

Shibley, FTC Informal Staff Opinion Letter (Jun 8, 1999). . . . . . . . . . . . . . . . . . . . . . 9

<u>PRELIMINARY STATEMENT</u>

Plaintiff Patricia Ritchie brings this action under the FCRA and NYFCRA,

asserting

> . . that she never had any business or any dealings with Lease
> Finance Group, LL.C., and that her signature had been forged in the
> alleged Lease.

First Amended. Comp. ("FAC", Dkt. 8), 6¶19. Nevertheless, *after knowing this fact*,

Defendants (a) accessed her credit report, (b) trashed it with an adverse entry; and (c)

refused to delete that adverse entry.  She asserts claims under FCRA and NYFCRA for

wilful/negligent impermissible access, and wilful/negligent failure to investigate.

Defendants seek dismissal of all 8 claims, lumping them together without

distinguishing the different elements.  Illustratively, they say *nothing* about the

impermissible access claims under NYFCRA (Counts V and VI), which they *indisputably*

violated by failing to give the statutorily mandated advance notice to Ms. Ritchie.  They

ignore the failure to investigate claims (Counts III, IV, VII,  VIII), which claims, courts

have held, merely require the consumer to plead an inaccuracy in the report.  Further,

Defendants don't explain why their pleading objections apply to the NYFCRA claims

(Counts V - VIII).

Rather, Defendants argue, first, that the FAC violates Rule 8(a) and 9(b), Fed. R.

Civ. P., because Plaintiffs have allegedly "lumped" all Defendants.  But Rule 9(b) is not

applicable here, and the FAC gives "fair notice" to each Defendant.  To quote this Court,

the FAC is far from "confused, ambiguous, vague or otherwise unintelligible" warranting

dismissal under Rule 8.

Second, Defendants contend that since they *thought* they had a "business

1

transaction" with Ms. Ritchie, the FCRA is inapplicable.  Defendants are wrong; the

consumer must "actually" express a desire to obtain credit; Ms. Ritchie never did so.

Moreover, Defendants pulled her credit reports long after the alleged transaction.

Third, Defendants assail the lack of detail of "actual damages."  But Ms. Ritchie

has sought statutory and punitive damages for wilful violations.  Actual damages are an

alternative remedy to "actual damages" and Ms. Ritchie does not have to elect her

remedies at this stage.  In any event, courts have not required damages to be pleaded in

detail, and the FAC alleges such damages sufficiently for now.

Fourth, Defendants object that Northern Leasing is not liable, since the FAC does

not plead facts sufficient to pierce the corporate veil.  Defendants err.  Lease Finance is a

shell, with no assets or employees, run by Northern Leasing.  Thus, Northern Leasing

may be liable as a wrongdoer itself.

Fifth, Defendants dispute the Individual Defendants' personal liability on the

ground that they acted within the scope of their employment.  But wilfully violating the

law cannot be part of any employment.  Further, the Individual Defendants acted for

their own personal purposes of monetary compensation; why else would an "employee"

wrongfully refuse to delete an adverse entry or file false affidavits?

Lastly, Defendants challenge the impermissible access claims since - according to

Defendants - *Defendants* intended their credit pulls to be for permissible purposes.

Defendants ignore that they pulled Ms. Ritchie's credit report several months after they

knew the facts; those pulls *could not* have been for "review" or "collection" of an account

which, Defendants knew, Ms. Ritchie never had.  Defendants then proceeded to drag Ms.

Ritchie to New York City Civil Court, and cannot seriously claim to have been acting in

good faith.  Cases cited by Defendants dealt with innocent errors committed in good

faith, or where there was no dispute about the existence of an account; courts have

repeatedly upheld liability for wilful impermissible pulls.  At the very least, Defendants'

intent underlying their credit pulls is an issue of fact improper for resolution now.

Thus, Defendants' motion is meritless and should be denied in its entirety.

## ARGUMENT[1]

This Court is familiar with the well-settled standards governing this motion,

which merit no repetition.  *Congregation Rabbinical Coll. of Tartikov, Inc. v Vil. of*

*Pomona*, 2013 WL 66473, *8 (S.D.N.Y. Jan. 4, 2013) (Karas, J.).  It is important that

> Ultimately, the complaint is not to be measured by whether its factual allegations stand up to the aggressive scrutiny of a skilled lawyer, but by whether it is minimally sufficient to "give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (*citing Twombly*, 550 U.S. at 596). To the extent that *Twombly* has caused courts to lose sight of this fact, its effect has been unfortunate, for the danger that one plaintiff will be denied his day in court on a meritorious claim far outweighs the risk of permitting discovery on many cases that will ultimately fail to find factual support. If a party truly feels that it is unable to prepare an answer, the remedy under the federal rules remains with a motion under Rule 12(e) for a more definitive statement, not in slamming the courthouse door in the face of a plaintiff who has been afforded no opportunity to prove his allegations.

*Phoenix Tech. Intern., LLC v Krones AG*, 2010 WL 818869, *2 (N.D. Ohio Mar. 9,

2010). Viewed in light of these standards, the claims are proper.

I.     The Complaint Meets the Pleading Requirements of Rules 8(a)

Rule 8 dismissals are "generally disfavored," and granted only in "exceptional

---

[1]For brevity's sake, Plaintiffs incorporate the contents of the FAC in its entirety.

cases," *Grimes v Fremont Gen. Corp.*, 2013 WL 1187474, *4 (S.D.N.Y. Mar. 22, 2013) (Karas, J.).

> "Dismissal for failure to comply with Rule 8 ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."

*Id.* (*quoting Salahuddin*, 861 F.2d at 42). *Accord, Barnes v Pozzi*, 2012 WL 3155073, *4 (S.D.N.Y. Aug. 3, 2012).

A. *Rule 9(b) Does Not Apply To FCRA/NYFCRA Claims*

While Defendants cite Rule 9(b) in their motion, dkt. 13, that Rule does not apply to FCRA claims. "Because the standard for establishing a willful violation of the [FCRA] does not require a showing of either fraud or mistake, heightened pleading standards do not apply," *Smith v HireRight Solutions, Inc.,* 711 F Supp 2d 426, n. 4 (E.D. Pa 2010). *Accord, In re Trans Union Corp., Privacy Litig.*, 326 F Supp 2d 893, 900 (N.D. Ill 2004); *Moulton v AmeriCredit Fin. Services, Inc.*, 2005 WL 1522237. *3 (N.D. Cal June 28, 2005).[2]

B. *The FAC Provides Sufficient Notice To Each Defendant*

The FAC provides specific details of the role and actions of each Defendant.

---

[2]Assuming, arguendo, that Rule 9(b) applied here, Ms. Ritchie has met that standard. *Wakefield v Cavalry Portfolio Services, LLC*, 2006 WL 3169517 (D Or Nov. 1, 2006) ("Plaintiff asserts her credit report reflects that she filed bankruptcy and that Defendant requested and received her credit report three times before and three times after she filed bankruptcy. Finally, Plaintiff contends 'Defendant's action in repeatedly requesting Plaintiff's credit report when Defendant had knowledge of Plaintiff's bankruptcy is a violation of FCRA, 15 U.S.C. § 1681q.' Thus, Plaintiff has pled the time, place, and nature of the alleged false pretenses and attributed specific conduct to Defendants. The Court concludes, therefore, even if Plaintiff's FCRA claim is required to meet the pleading requirements of Rule 9(b), Plaintiff has pled her claims with sufficient specificity.")

Defendant Northern Leasing is the main corporate platform for Defendants' scheme, which is run through over 100 shell entities "from the same offices in the same business using the same personnel with the same forms working with the same systems and employing the same *modus operandi*," FAC2¶4.

Defendant Lease Finance is one such shell entity. It has "no assets and no employees of its own," *id.*, ¶5.

Defendants Brown and Taylor are two of the principals of the scheme, with Brown being the "Legal Recovery Director" and Taylor, the "Legal Collections Manager," *id.,* ¶¶6-7. Taylor and Brown have both (a) been working in this scheme for "long periods of time at high levels," *id.*, ¶8, and as such, (b) are "well aware" of the scheme, *id.* Each has FCRA responsibilities: making entries in consumer credit reports, and investigating disputes. *Id.* Each was responsible for refusal to retract "false statements despite conclusive evidence to the contrary." *Id.* In this case, each acted beyond the scope of his employment, and participated in the scheme for "his own personal purposes" of "enhanced bonuses, profits, perks, and other benefits," *id.*

The FAC provides details of (a) the unauthorized access of, and adverse entry in, Ms. Ritchie's credit report, *id.* 5¶¶16-17; (b) Defendants' fraudulent lawsuit against Ms. Ritchie, *id.*, ¶18; and (c) Defendants' failure/refusal to investigate the dispute, *id.*, 6¶21. Defendant Taylor verified the complaint in the New York City Civil Court, and persisted in it despite uncontroverted evidence that the lease was forged, *id.*, 7¶24. Defendants Brown and Taylor were responsible for the FCRA violations, 7¶¶24-25.

These allegations suffice. *Fleischmann v Care Credit*, 2013 WL 424766 (C.D. Cal Feb. 1, 2013) ("factual allegations sufficient to put Defendants on notice of Plaintiff's

claims."); *Monica v MBNA Am. Bank, N.A.*, 2006 WL 2040380 (D.N.J. July 20, 2006) ("Plaintiff's Complaint is sufficient since it contends that defendant's conduct in verifying the arbitration award to TransUnion and Equifax, in face of plaintiff's dispute notices was inappropriate and in violation of FCRA").[3]

Further details such as the identity of the specific employee who accessed the credit report and/or who made the adverse entry are "precisely the kind of 'information solely in the possession of the defendant . .'" *Krasner v Rahfco Funds LP*, 2012 WL 4069300, *8 (S.D.N.Y. Aug. 9, 2012) (*citing DiVittorio v. Equidyne Extractive Indus* ., 822 F.2d 1242, 1248 (2d Cir. 1987) and other cases). To paraphrase another Court, Ms. Ritchie's claims "undoubtedly . . puts Defendant on clear notice of the precise conduct which Plaintiff finds objectionable." *Smith*, 711 F Supp 2d at 435.

Further, under the "group pleading doctrine," particular statements or omissions may be attributed to individual defendants even when the exact source is unnamed. *Liberty Mut. Ins. Co. v Blessinger*, 2007 WL 951905 *2 (E.D.N.Y. Mar. 27, 2007);

---

[3]Indeed, with much *less* detail, our courts have upheld claims against Northern Leasing and its officers for much *more* serious claims requiring heightened pleading, such as fraud, *Pludeman v. Northern Leasing Sys.*, 10 N.Y.3d 486 (2008), and racketeering:

> it is . . unnecessary for the Plaintiffs to allege that each of the individual Defendants personally committed at least two of the predicate acts of mail and/or wire fraud. It is sufficient that the Plaintiffs allege that the individuals committed the predicate acts of mail and wire fraud by directing NLS and its employees to use the mails and/or wires to further the fraudulent scheme.

*Serin v N. Leasing Sys., Inc.*, 2009 WL 7823216,*8 (S.D.N.Y. Dec. 18, 2009).

*Anwar v Fairfield Greenwich Ltd.*, 728 F Supp 3d 372, 405-06 (S.D.N.Y. 2010).[4]  Thus,

the adverse entries may be attributed to the individual defendants here.  As the

*Pludeman* court held, 10 N.Y.3d at 493,

> The very nature of the scheme . . gives rise to the reasonable
> inference . . that the officers, as individuals and in the key positions
> they held, knew of and/or were involved in the fraud.

In sum, the FAC's allegations give "sufficient notice for [Defendants] to

understand [Ms. Ritchie's] claim and be able to defend against it," *Thomas v Cendant*

*Mortg.*, 2004 WL 2600772 (E.D. Pa Nov. 15, 2004).  *Accord, Moulton v AmeriCredit*

*Fin. Services, Inc.*, 2005 WL 1522237 (N.D. Cal June 28, 2005); *Cisneros v Trans*

*Union, LLC*, 293 F Supp 2d 1167, 1175 (D. Haw. 2003).

C.     *The Failure to Investigate Claims May Not Be Dismissed*

> "[A] plaintiff may present his case to the jury on the issue of
> reasonable procedures merely by showing an inaccuracy in the
> consumer report and nothing more." *[Philbin v Trans Union Corp.*,
> 101 F.3d 957] at 965 [3d Cir 1996]; *see also Guimond v. Trans
> Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)
> (recognizing that the reasonableness of a procedure is a jury
> question in overwhelming majority of cases); *Crabill v. Trans
> Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir.2001) (reasonableness of
> procedures is treated as a factual question generally suited for a
> jury's resolution).

*Smith*, 711 F Supp 2d at 434.

The FAC specifies the inaccuracy in Ms. Ritchie's credit report.  That, without

more, suffices to uphold Counts III, IV, VII and VIII.

_____

[4]To "invoke the group pleading doctrine against a particular defendant the
complaint must allege facts indicating that the defendant was a corporate insider, with
direct involvement in day-to-day affairs, at the entity issuing the statement." *In re
Alstom SA*, 406 F.Supp.2d 433, 448 (S.D.N.Y.2005) (citations omitted).  That is the case
here.

D.     *Defendants' Cases Are Distinguishable*

Defendants do not cite a single case where an FCRA or NYFCRA claim was

dismissed under Rule 8.  Instead, they cite cases which bear no semblance to this case:

> 1.     *Ochre LLC v Rockwell Architecture Planning and Design, P.C.*,
> 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), DM12, was a copyright
> action where the complaint was dismissed because "the designs at
> issue are not copyrightable."  As an alternative ground, the Court
> faulted that plaintiff's lumping of "defendants" -  corporations from
> four States - without specifying "which of the defendants or agents
> of those defendants engaged in the infringing activities."

> 2.     *Lippe v Bairnco Corp.*, 225 BR 846, 860-61 (S.D.N.Y. 1998), DM5,
> involved several corporate defendants, and "Nothing in the
> amended complaint or moving papers suggests that these separate
> corporate entities acted together or are responsible for Transactions
> other than the ones in which they were directly involved."  That is
> not so here.

> 3.     *Medina v Bauer*, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004), was a
> racketeering case where the Court held that "inequitable conduct
> before the PTO cannot qualify as an act of mail fraud . . . for
> purposes of the predicate act requirement."  Further, the allegations
> against each Defendant were remarkably sparse for RICO claims.[5]

> 4.     *Ferro v Ry. Exp. Agency, Inc.*, 296 F2d 847 (2d Cir 1961), involved
> class action discrimination allegations "that defendants have in a
> willful and malicious manner discriminated against plaintiff in
> favor of members of Lodge 2147 of the Brotherhood."  *Id.*, 851.  The
> Second Circuit held that the claim "raises an issue of fact which

---

[5]"Although the amended complaint often refers to the defendants collectively, the
only allegations against Matthew Fischer, Magnetic Snap, and Lanfran Realty are as
follows:

1. '[Mathew] Fischer is an officer of RRNY';

2. 'In 1994, Riceman executed a contract with Magnetic Snap [ ] under which
Riceman actually worked for RRNY'; and

3. 'Lanfran Realty [ ] provided financial guarantees on behalf of Bauer as part of
this transaction [the sale of a portion of RR–Del].'" *Medina*, 2004 WL 136636.

requires a trial."[6]

II.    <u>The FCRA And NYFCRA Claims Are Proper</u>

Defendants argue that the FCRA claims "must be dismissed because the reports

at issue were obtained in connection with a business transaction," DM12.  According to

Defendants, because *Defendants*' purpose was commercial, they could access and trash

Ms. Ritchie's credit report at will.  By Defendants' proposition, the FCRA can be

emasculated by unscrupulous businesses by simply claiming a "commercial" purpose to

accessing and trashing anyone's credit report - and refuse to rectify it - based upon a

forged document created by their own agents.  Put bluntly, that is absurd.

A.    *FCRA Requires that the Consumer Actually Request Credit*

"[T]he consumer must *actually express* a desire to obtain credit," National

Consumer Law Center, *Fair Credit Reporting* (7th Ed. 2010), ¶7.2.3.2 (citing cases)

(emphasis added);  *See also Scott v Real Estate Fin. Group*, 183 F3d 97, 100 (2d Cir

1999) ("issues of fact on the legitimacy of Simonoff's business need for the report at the

time he requested it"); Shibley, FTC Informal Staff Opinion Letter (Jun 8, 1999); Coffey,

FTC Informal Staff Opinion Letter (Feb. 11, 1998); *Traveler v. Glenn Jones Ford Lincoln*

---

[6]Defendants also cite civil rights cases where, unlike here, a host of defendants were impleaded with no facts concerning each defendant.  *Atuahene v City of Hartford*, 10 Fed Appx 33, 34 (2d Cir 2001) (sued City, 2 individuals and 2 corporations; "no factual basis to distinguish their conduct"); *Elias v City of New York*, 2010 WL 5475809, *3 (E.D.N.Y. Dec. 30, 2010) ("Plaintiff fails to give the defendants fair notice of her remaining civil rights claims or to allege facts against each individual and entity); *Southerland v New York City Hous. Auth.*, 2010 WL 4916935, *2 (E.D.N.Y. Nov. 23, 2010) ("fails to give the defendants fair notice of plaintiff's claim"); *Marcilis v Twp. of Redford*, 693 F.3d 589, 593 (6th Cir 2012) (civil rights case arising from federal task force narcotics raids conducted at two homes by Drug Enforcement Administration agents and police; no "fair notice" to each defendant).

*Mercury 1987, Inc.*, 2006 WL 173687 (D. Ariz. Jan 24, 2006); *Fisher v. Quality Hyunday, Inc.*, 2002 WL 47968 (N.D. Ill Jan. 11, 2002).

Taking the FAC's allegations as true - as we must for present purposes - Ms. Ritchie never expressed "a desire to obtain credit from Defendants".  That suffices.

B.    *Defendants Misstate the FAC to Manufacture a Business Purpose*

Ms. Ritchie (a) entered into a commercial transaction with "Merchants Made Easy", not with Defendants, FAC4-5¶13; and (b) did not sign *any* agreement with Defendants, *id.*, ¶¶13, 15.  Nevertheless, Defendants assert that the FAC alleges that Defendants "tried to collect payments due under *that* lease . . and ultimately commenced a lawsuit. . ." DM12 (emphasis added).  This is disingenuous; Defendants sued under the forged lease, not "that lease" with Merchants Made Easy.

Thus, Ms. Ritchie's commercial transaction was with "Merchants Made Easy." That did not entitle Defendants to access her credit report or trash it at will.  Ms. Ritchie's complaint is *precisely* about what the FCRA was meant to protect:  "inaccurate or arbitrary information in a consumer report," DM8 (quoting *Ippolito v. WNS, Inc.*, 864 F.2d 440 (7th Cir. 1988)).  Thus, whether or not a credit report "issued in connection with a business transaction" implicates FCRA, DM9, is irrelevant.[7]  There was *no* business transaction whatsoever between Ms. Ritchie and these Defendants.

---

[7]The FCRA and NYFCRA requirements are similar, but not identical.  First, Plaintiffs can seek relief injunctive and declaratory relief under NYFCRA, *White v. First American Registry, Inc.*, 378 F.Supp.2d 419 (S.D.N.Y. 2005).

Second, NYFCRA forbids anyone from requesting a consumer report without first informing the consumer "in writing or in the same manner in which the application is made that" a report would be requested, N.Y. Gen. Bus. L. § 380-b(b); *Scott*, 183 F.3d at 100 -101.  Defendants never gave such advance notice to Ms. Ritchie.

Defendants' discussion of *Ippolito v. WNS, Inc.*, 864 F.2d 440 (7th Cir. 1988),

DM10, is misleading. *Ippolito* involved a "Special Services Report" which was typically

used by WNS for "evaluating prospective franchisees," 864 F2d at 452. The Seventh

Circuit found that Report was not a "consumer report" within FCRA. 864 F.2d at 449.

The evidence did not show that Equifax "expected" that report to be used for consumer

purposes, and the record was

> devoid of basic information concerning why Equifax collected the
> information used in the Special Service Reports on plaintiffs. Nor is
> there more general information on how or why Equifax stores
> information.

864 F.2d at 453. Thus, the reports at issue in *Ippolito* were not "consumer reports."

Here, the reports at issue were consumer reports within FCRA. And the FCRA is

applicable wherever a transaction involves a "consumer report."

> [E]ven if a report is used or expected to be used for a non-consumer
> purpose, it may still fall within the definition of a consumer report if
> it contains information that was originally collected by a consumer
> reporting agency with the expectation that it would be used for a
> consumer purpose.

*Ippolito*, 864 F.2d at 453. *Accord, Breed v. Nationwide Ins. Co.*, 2007 WL 1231558, *2

(W.D.Ky. Apr 24, 2007); *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264,

1273-75 (9th Cir.1990); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 293, 696 (10th

Cir 1980). Hence, whether or not Ms. Ritchie entered into commercial transactions with

other persons is immaterial.[8]

---

[8]*Accord, Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1325 (11th Cir.
1998); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 884-85 (5th Cir. 1989);
*Hansen v. Morgan*, 582 F.2d 1214, 1218-20 (9th Cir. 1978)(upholding FCRA claim of
political candidate against persons who had obtained a consumer report at the behest of
his opponent); *Rice v. Montgomery Ward & Co.*, 450 F. Supp. 668, 672 (M.D.N.C.

New York courts have consistently followed this approach. *See, e.g., Ali v. Vikar Management Ltd.*, 994 F. Supp. 492, 497 (S.D.N.Y. 1998); *Popik v. Amer. Int'l Mortgage Co.*, 936 F. Supp. 173, 176 (S.D.N.Y. 1996); *Klapper v. Shapiro*, 154 Misc. 2d 459 (Sup. Ct. N.Y. Co. 1992); *Baker v. Bronx-Westchester Investigations, Inc.*, 850 F. Supp. 260, 263-64 (S.D.N.Y. 1994); *Boothe v. T.R.W. Credit Data*, 523 F. Supp. 631, 634 (S.D.N.Y. 1981).

Holding otherwise would eviscerate the FCRA; instead of a salutary consumer protection statute that it is intended to be, it would become toothless, unable to stop even demands for tribute as is the case here. *Berman v. Parco*, 986 F. Supp. 195, 213 (S.D.N.Y. 1997)("Upholding defendants' argument would allow persons who obtain consumer reports from consumer reporting agencies for improper purposes to escape liability under the Act.."). As the Fifth Circuit explained:

> To illustrate the untenable nature of St. Paul's construction of the FCRA in this context, suppose X secured Y's credit report for the sole purpose of disclosing it to embarrass Y. Under St. Paul's reasoning, focusing solely on X's "use" of the report, the report would not be a credit report under the FCRA and thus Y would not be afforded FCRA protections. Not only would this run contrary to congressional intent, it would render meaningless (Section 604) which allows for the release of credit reports only for certain purposes.

_____

1978) ("if this Court were to hold that the FCRA does not apply where the recipient of the information obtains it for an unauthorized purpose, it would undermine the consumer's right to privacy, one of the policies underlying the FCRA."); *Belshaw v. Credit Bureau of Prescott*, 392 F. Supp. 1356, 1359 (D. Ariz. 1975) (rejects identical argument because "FCRA cannot be interpreted as applicable to the activities of credit reporting agencies only when the consumer applies for credit, insurance, or employment, leaving them otherwise free to continue the very practices the Act was designed to prohibit. . . . If a consumer report is only a report made for one of the purposes enumerated in § 1681a(d), then § 1681b(3), restricting the uses to which a consumer report may be put, adds nothing to the Act.").

*St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 884-85 (5th Cir. 1989).

      C.    *Defendants' Cases Are Readily Distinguishable*

Defendants cite cases where a commercial transaction did occur.  Not so here.

That apart, Defendants' strenuous reliance upon *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172 (S.D.N.Y. 2005), is misplaced.  *Lucchesi* involved only a *commercial* credit report about County Van Lines, Inc. ("CVL"):

> The Plaintiff alleges that his "personal report was also corrected," although there is no suggestion in the amended complaint that the Defendant issued a personal credit report about Plaintiff to Fleet Bank or that Fleet Bank relied on any such report in denying CVL's application for a loan.

*Lucchesi*, 226 F.R.D. at 173.   Here, no question exists that Defendants sought and obtained Mr. Ritchie's personal credit report.

*In Boothe*, 523 F. Supp. 631, DM8, a private investigator hired by a business obtained Mr. Boothe's consumer report. 523 F. Supp. at 632-33.  Those defendants contended that the report "was not a consumer report as defined by the Act because the investigation . . . was a legitimate, good faith investigation of Mr. Boothe's business, unconnected to any consumer credit transaction." *Id.* at 633.  The Court rejected this argument:

> The purpose of the investigation in connection with which the report was released does not by itself determine whether the report is a "consumer report," as defendants suggest... [T]he proper focus for determining whether a report falls under the Act's definition of consumer report is the purpose for which it was collected, and not solely the purpose for which it was released.
>
> . . The [FCRA] applies when the information in question was *collected* for one of the purposes provided in the [FCRA], and it requires that the information be made available to third parties only for those purposes.

523 F. Supp. at 633-34 (emphasis added).  Thus, *Boothe* actually supports Ms. Ritchie.

*Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217 (8th Cir. 1984), DM8, also did not involve the furnishing of false information to a CRA, but merely the use of consumer report for commercial credit.  That's not what Ms. Ritchie is complaining about.  Defendants accessed her consumer reports, **and** furnished false information to a CRA, **and** refused to rectify **after** knowing of the forgery, all of which are violative of FCRA and NYFCRA.  *Wilson v. C&R Dist.*, 2002 U.S. Dist. LEXIS 8475 (W.D. Tex. Apr 12, 2002), DM10, and *Yeager v. TRW, Inc.*, 961 F.Supp. 161 (E.D.Tex. 1997), DM11, are distinguishable on the same ground.

III.   Damages Are Pleaded Adequately

     A.   *Since Defendants' FCRA Violations Were Wilful, Ms. Ritchie Is Entitled to Statutory and Punitive Damages*

        [T]he plain language of the statute provided for compensatory damages in the form of either actual damages or statutory damages, plus punitive damages, . .

*Buhmeyer v Case New Holland, Inc.*, 446 F Supp 2d 1035, 1051 (S.D. Iowa 2006) (*quoting  In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 341-42 (N.D.Ill. 2002)).  Pecuniary damages are not required to state a claim for wilful violation (Counts I and III).  *Murray v New Cingular Wireless Services, Inc.*, 232 FRD 295, 303 (N.D. Ill 2005).  *Accord, Sampson v. Western Sierra Acceptance Corp.*, 2004 WL 406992, *3 (N.D.Ill. Feb.27, 2004) ("the application of statutory damages ... are unrelated to any actual harm suffered by Plaintiff ...").

For statutory damages, "[t]he plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of

the consumer." *Buxton v. Equifax Credit Info. Servs.*, 2003 WL 22844245, *5 (N.D.Ill.

Dec. 1, 2003). Ms. Ritchie

> ". . need not show malice or evil motive." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997) (*quoting Philbin*, 101 F.3d at 970). The United States Supreme Court has clarified that reckless disregard of FCRA requirements also qualifies as willful violation within the meaning of section 1681n(a). *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

*Smith*, 711 F Supp 2d at 433.

So also, FCRA violations permit punitive damages in such cases. *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993) (". . malice or evil motive" not necessary for punitive damages; "willful violation" suffices).[9]

Ms. Ritchie has set forth Defendants' wilful violations in the FAC. The wilfulness of Defendants' violations is indisputable at this stage.

B.    *Ms. Ritchie Expressly Sought Statutory Damages*

Defendants argue in a footnote that Ms. Ritchie has "elected" to seek actual, not statutory damages, DM12 n.5. This is frivolous.

---

[9]*See, e.g., Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F.Supp.2d 1114 (D.Nev.2008) (Mortgage servicer's misapplied borrower's loan payment to another account and refused to correct error while reporting negative information to credit reporting agencies; held, sufficiently willful to support award of punitive damages); *Saunders v. Equifax Information Services, L.L.C.*, 469 F.Supp.2d 343 (E.D.Va. 2007), *aff'd*, 526 F.3d 142 (4th Cir. 2008) (upholding statutory damages of $1,000, and punitive damages of $80,000, for bank's "reprehensible" FCRA violation in reporting derogatory credit information to agencies following consumer's nonpayment on an automobile loan; statutory award was nominal but nevertheless maximum allowed under FCRA, and amount of punitive damages was but a fraction of bank's substantial net worth.); *Boothe*, 557 F.Supp. 66 (punitive damages of $15,000 upheld to prevent "future similar abuses"); *Thornton v. Equifax, Inc.*, 467 F.Supp. 1008 (E.D.Ark. 1979), *reversed on other grounds*, 619 F.2d 700 (8th Cir.), *cert denied*, 449 U.S. 835 (1980) ($250,000 punitive damages).

First, the FAC *expressly* recites that Ms. Ritchie seeks statutory damages. FAC1¶1, 16¶(a).

Second, while "actual damages" are an alternative remedy to statutory damages, Ms. Ritchie is not required to elect her remedy now; when she should do so "is left to the trial court's discretion 'in the light of the record as it develops.'" *Am. Underground Eng'g, Inc. v City of Syracuse*, 2013 WL 2396027 (2d Cir June 4, 2013) (citations omitted). A "plaintiff is not required to make an election of remedies at the pleading stage," *Sotheby's, Inc. v Minor*, 2009 WL 3444887 (S.D.N.Y. Oct. 26, 2009) (*quoting Nova Int'l, Inc. v. Am. Express Bank, Ltd.*, 1996 WL 39317(DC) at *5 (S.D.N.Y. Jan. 31, 1996)). *Accord, Croce v. Kurnit*, 565 F.Supp. 884, 894 (S.D.N.Y. 1982) ("[e]lection is to be made after trial."); *Goldstein v. Cogswell*, 1991 WL 60420 at *17 (S.D.N.Y. Apr. 11, 1991) ("it is clear that such a election should not be required until after trial"); *Ross Univ. School of Medicine, Ltd. v Brooklyn-Queens Health Care, Inc.*, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013)

The only case Defendants cite, *Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, DM12 n. 5, said nothing about when or how this alleged "election" was to take place. Defendants cite no case - and we found none - holding that a plaintiff waived her right to statutory damages despite having expressly claimed it in her complaint.

C.      *In Any Event, Ms. Ritchie Has Pleaded Actual Damages*

An "FCRA plaintiff need not state her emotional damages with particularity." *Dixon-Rollins v Experian Info. Solutions, Inc.*, 2010 WL 3749454 (E.D. Pa Sept. 23, 2010) (*citing Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n. 3 (3d. Cir.1996)). "The FCRA does not explicitly limit the 'actual damages' recoverable under the statute and a

plaintiff does not need to plead damages with heightened particularity." *Martin v Asset Acceptance, LLC*, 2012 WL 3042524 (N.D. Ill July 25, 2012). The FAC asserts that Defendants (a) accessed her credit report repeatedly; (b) made abusive phone calls demanding money on the forged lease at a time that Ms. Ritchie was recovering from cancer; (c) refused to reverse the adverse entry they made in her credit report; as a result of which she had to (d) retain attorneys to defend her; and (e) suffered injuries. For now, assuming these allegations "as true and draw[ing] all reasonable inferences in favor of the plaintiff," *Iwachiw v New York City Bd. of Elections*, 2013 WL 3110839 (S.D.N.Y. June 20, 2013) (*citing Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)), Ms. Ritchie has alleged (a) monetary damages, *e.g.*, retaining an attorney; and (b) severe emotional distress damages.

That suffices for present. "Damages under the FCRA can include humiliation and emotional distress," *Willey v J.P. Morgan Chase, N.A.*, 2009 WL 1938987 (S.D.N.Y. July 7, 2009) (*citing Robinson v. Equifax Info. Serv., LLC*, 560 F.3d 235, 239–40 (4th Cir. 2008). *See Garland–Sash v. Lewis*, 348 Fed. Appx. 639, 642 (2d Cir. 2009) ("The law generally construes the phrase 'compensatory damages' to include damages for pain, suffering, and other emotional harms.").

D.     *Actual Damages Are An Issue for Trial*

Courts in this Circuit have considered the issue of "actual damages" on motions for summary judgment, "the procedural equivalent of a trial," *Am. Underground*, 2013 WL 2396027, \*1, not for testing pleading sufficiency. *Burns v Bank of Am.*, 655 F Supp 2d 240, 251 (S.D.N.Y. 2008), *affd*, 360 Fed Appx 255 (2d Cir 2010)(plaintiff's "bare allegations that he was 'embarrassed' and 'humiliated' were insufficient to justify

sending the issue to the jury," *quoting Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir.

2003)); *Gorman v Experian Info. Solutions, Inc.*, 2008 WL 4934047 (S.D.N.Y. Nov. 19,

2008) ("provided no evidence"); *Caltabiano v BSB Bank & Trust Co.*, 387 F Supp 2d

135, 142 (E.D.N.Y. 2005) ("failed to establish pecuniary, emotional, or punitive

damages").

      Defendants' cases from other circuits run counter to the express language of the

Federal Rules that all relief warranted by the evidence should be granted, whether or not

sought in complaint:

> Every . . final judgment should grant the relief to which each party
> is entitled, *even if the party has not demanded that relief in its
> pleadings.*

Fed. R. Civ. P., Rule 54 (emphasis added). *Accord, Abdell v. City of New York*, 2009

WL 1270455, at *5 (S.D.N.Y. May 5, 2009) (granting plaintiffs leave to file a fourth

amended complaint seeking, among other things, injunctive relief because it "may be

warranted by the facts alleged," citing Rule 54(c)); *In re Dobrayel*, 287 B.R. at 19–21

("the question is not how plaintiffs characterized the action, but whether plaintiffs are

entitled to relief") (*quoting Oneida Indian Nation v. Cnty. of Oneida*, 434 F.Supp. 527,

547 (N.D.N.Y.1977). As the Second Circuit observed,

> Under the Federal Rules, pleadings are not ends in themselves, but
> are simply the means by which a case is presented to a tribunal.

*New York State Elec. & Gas Co.v Sec'y of Labor*, 88 F.3d 98, 104 (2d Cir. 1996) (*citing

Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir. 1977)). *Accord,

Rodriguez v Mount Vernon Hosp.*, 2010 WL 3825736 (S.D.N.Y. Sept. 7, 2010), *report

and recommendation adopted*, 2010 WL 3825715 (S.D.N.Y. Sept. 30, 2010), *affd*, 2010

WL 3959602 (S.D.N.Y. Oct. 5, 2010).

In sum, Ms. Ritchie has pleaded actual damages sufficiently. Nevertheless, should this court be inclined to hold otherwise, Ms. Ritchie may be granted leave to amend the pleadings to assert specifics of her damages sustained.

E. *The NYFCRA Claims Do Not Require That Pleadings Detail Damages*

Negligence claims under NYFCRA do not require damages be pleaded with particularity. New York has a provision parallel to Rule 54(c). CPLR 3017. *Accord,* Siegel, *N.Y. Prac.* § 217 (5th ed.).

IV. <u>Northern Leasing, the Central Platform For the Wrongdoing At Issue, Is A Proper Defendant</u>

Northern Leasing is a primary wrongdoer. As the FAC asserts,

A. At all relevant times, Northern Leasing managed and operated, and continues to manage and operate, itself and over 100 shell entities;

B. Northern Leasing did so from the same offices in the same business using the same personnel with the same forms working with the same systems and employing the same *modus operandi*;

C. Lease Finance is one of the shell entities managed and operated by Defendant Northern Leasing and/or Northern Leasing's principals;

D. Lease Finance Group is merely a "pass through" entity;

E. Defendant Lease Finance Group has no assets or employees of its own;

F. Defendant Lease Finance Group is managed and operated by Defendant Northern Leasing.

FAC2¶¶4-5.

Defendants' principals have conceded this in deposition testimony and court

filings in other cases.[10]  Given these allegations, Defendants' demand for more particularity is not a good faith complaint about lack of "fair notice".

For example, the assertion that Defendant Lease Finance Group has no employees and no assets, is a statement of fact; it is not a "legal conclusion," DM14. Everything done under Lease Finance Group's name is done by Northern Leasing.  What more details could be asked or provided at this stage?  In any event, such information is solely in the possession of the defendant, and Ms. Ritchie cannot be required to plead them now.  *Brims v Ramapo Police Dept.*, 2011 WL 7101233 (S.D.N.Y. Dec. 23, 2011), *appeal dismissed* (Mar. 21, 2012), *lv to appeal denied*, 2012 WL 234435 (S.D.N.Y. Jan. 26, 2012).

The FCRA imposes liability on "any person" who negligently or wilfully fails to comply with any requirement imposed thereunder, 15 U.S.C. §§1681o(a), 1681n(a); *McKinley v. CSC Credit Services, Inc.*, 2007 WL 1412555, *6 (D.Minn. May 10, 2007); *see also Phillips v. Grendahl*, 312 F.3d 357, 370 (8th Cir. 2002) ("knowing and intentional commission of an act the defendant knows to violate the law.").  Hence,

> Failure to impose vicarious liability on a corporation like Federated would allow it to escape liability for "willful" or "negligent" violations of the statute. Because a company like Federated can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose. The FCRA's deterrence goal would be subverted if a corporation could escape liability for a violation that could only occur because

---

[10]Such deposition testimony also bears out that all leases acquired under the name of any shell entity such as Lease Finance Group are promptly "assigned" to Northern Leasing, which then collects lease payments, and extracts tribute under the name of the shell entities.  Should the Court require that Ms. Ritchie amend the complaint to assert these facts, she may be granted leave to amend.

the corporation cloaked its agent with the apparent authority to
request credit reports.

*Jones v Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir 1998).  *Accord, Myers*

*v Bennett Law Offices*, 238 F Supp 2d 1196, 1202 (D Nev 2002); *Margan v Niles*, 250 F

Supp 2d 63, 74 (N.D.N.Y. 2003).  Thus, Defendants' reliance upon cases involving

"piercing the corporate veil" are singularly irrelevant.

V.  <u>The Individual Defendants May Be Liable</u>

A.  *Employees May be Personally Liable For Wilful Violations of the Law*

Courts have repeatedly upheld FCRA claims against corporate officers.  *See, e.g.,*

*Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2nd Cir. 1997); *Yohay v. City of*

*Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 971-72 (4th Cir. 1987).  As the

Ninth Circuit explained:

> Dranow contends he was acting in his corporate capacity as chief
> executive officer of Sawyer when he ordered the acquisition of
> Mone's credit report and is therefore not personally liable to Mone
> for any improprieties related to the acquisition. However, both
> California corporate law and federal common law hold that
> corporate officers are personally liable for their torts even if the
> torts were committed on behalf of the corporation.

*Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (citing cases).[11]  *Accord, Hahn v.*

---

[11]New York law is the same:

> [O]fficers and directors of a corporation may be held liable if they
> participated in or had knowledge of the fraudulent or illegal
> activities of a corporation.. .

*People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1010 (3rd Dept. 2003)
(citations omitted).  *Accord, Airlines Reporting Corp. v. Inter Transit Travel, Inc.*, 884
F.Supp. 83, 87 (E.D.N.Y. 1995) (officer may be liable for conversion where "personally
involved in the wrongdoing," *citing15 N.Y.Jur.2d, Business Relationships,* §1085, pp.
357-58); *Auto Collection Inc. v Pinkow*, 29 Misc 3d 1215(A) (Sup Ct 2013) ("corporate

*Star Bank*, 190 F.3d 708, 714 (6ᵗʰ Cir. 1999).  As the Court explained:

> Corporations can only act through their employees; but that does not mean that any act done in furtherance of the corporation's business is shielded by the corporate veil, which limits personal financial liability for a corporation's financial debts. For example, an employee who dumps a corporation's toxic waste is still liable for violating anti-pollution laws. To take an extreme example, an employee who murders the principal of a corporation's competitor, even if only done to further the corporation's business (and not out of personal animosity), is still guilty of murder.

*City of New York v Smart Apartments LLC*, 39 Misc 3d 221, 228 (Sup Ct 2013).[12]

Thus, the Individual Defendants may be liable for wilfully violating federal law. Their personal awareness and culpability is also clear from their (a) making perjurious court filings despite knowing the facts; and (b) refusal to remove the adverse credit entry.

B.     *The Individual Defendants Acted For Their "Personal Purposes"*

Defendants concede that the individual Defendants may be liable if they acted for "personal purposes."  The FAC asserts that each individual Defendant

> has been employed by Defendant Northern Leasing and/or its principals and affiliates for long periods of time at high levels in

---

officer may be liable for torts committed by or for the benefit of the corporation if the officer participated in their commission," *quoting PDK Labs, Inc. v. G.M.G. Trans W. Corp.*, 2012 N.Y. Slip Op 8706, \*3 (2d Dept 2012)).  Thus, the individual Defendants may be liable under New York law.

[12]*See also Church & Dwight Co., Inc. v Kaloti Enterprises of Michigan, L.L.C.*, 2011 WL 4529605 (E.D.N.Y. Sept. 28, 2011) (personal liability for corporate employees for trademark infringement where employee is a "moving, active, conscious force" behind the illicit transaction); *Emerson Enterprises, LLC v Kenneth Crosby New York, LLC*, 781 F Supp 2d 166, 179 (W.D.N.Y. 2011) (employee personally liable under Navigation Law for a discharge occurring at a site owned or operated by the corporation where employee "directly, actively and knowingly involved in the culpable activities or inaction which led to a spill").

senior positions; as such, each is well aware of the fraudulent scheme that is the core of Defendants' ostensible "business." . . each committed these illegal acts, and participated in the fraudulent scheme, for his own personal purposes, motivated and incentivized by enhanced bonuses, profits, perks, and other economic benefits and unmindful of the damage inflicted upon Ms. Ritchie and other innocent victims across the country.

FAC3¶8.  That suffices for present purposes.  *See Yeadon v. New York City Transit Auth.*, 719 F.Supp. 204, 207, 212 (S.D.N.Y. 1989) (officers engaged in race-based false arrests to "improve their arrest records in order to secure promotions and other benefits" had "independent, conspiratorial purpose").

C.  *At the Very Least, the Individual Defendants' Scope of Employment Is a Factual Issue That Cannot Be Resolved Now*

"[T]he determination of whether a particular act was within the scope of the [person's] employment is heavily dependent on factual considerations, and therefore the question is ordinarily one for the jury".  *Turley v ISG Lackawanna, Inc.*, 2013 WL 150382, *11 (W.D.N.Y. Jan. 14, 2013).  *Accord, McMindes v. Jones*, 839 N.Y.S.2d 365, 366 (4th Dept. 2007).  That factual issue is "inappropriate to decide on a motion to dismiss," *Doe v Selsky*, 2013 WL 2477255, *4 (W.D.N.Y. June 10, 2013).

VI.  Defendants May Be Liable for Impermissible Access

Defendants say nothing about the NYFCRA, which mandates an advance notice before pulling a credit report.  N.Y. G.B.L. §380-b(b).  Thus, Counts VII and VIII are beyond pale.  Their other arguments ignore the FAC.

Defendants pulled Ms. Ritchie's credit report on August 20, 2010 and December 8, 2010, FAC5¶17.  The lease transaction is alleged to have taken place on December 11, 2008, dkt. 14-2 at 2¶3.  Thus, these pulls *could not* have been for "deciding whether to

extend credit," DM17.

Further, in April 2010, "Ms. Ritchie categorically informed Defendants that she had never signed any lease with them . .," FAC5¶15. Thus, Defendants knew at least as of April 2010 that she did not have any account with them, and hence, there was no question of "review" or "collection". Nevertheless, Defendants obtained her report months later under "false pretenses" or "knowingly without a permissible purpose." 15 U.S.C. §1681n(b).

Defendants ignore these facts. Their cases contradict Second Circuit law that the consumer must have "expressed" a desire to obtain credit, *supra*. Moreover, their cases involved "good faith" errors.[13]

Courts have routinely imposed liability in other cases. *Phillips v. Grendahl*, 312 F.3d 357, 367–68 (8th Cir.2002) (prospective son-in-law's report to investigate him); *Rodgers v. McCullough*, 296 F.Supp.2d 895, 898, 901 (W.D.Tenn. 2003) (report on client's adversary in custody case); *Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 586, 591–92 (S.D.Ohio 2001) (report on sister's estranged husband to investigate finances).

At the very least, Defendants' intent is "a question of fact for the jury," *Grand Manor Health Related Facility, Inc. v Hamilton Equities Inc.*, 2013 WL 1748282 (S.D.N.Y. Apr. 23, 2013) (*quoting TVT Records v. Island Def Jam Music Group*, 412

---

[13]*See, e.g., Beckstrom v Direct Merchant's Credit Card Bank*, 2005 WL 1869107 (D. Minn Aug. 5, 2005) ("good faith error in pulling the report"); *Trikas v Universal Card Services Corp.*, 351 F Supp 2d 37, 42-43 (E.D.N.Y. 2005) (Bank "simply retained" due to a bona fide error). Not so here.

F.3d 82, 89 (2d Cir.2005), internal citation omitted).[14]

## CONCLUSION

Defendants' motion to dismiss should be denied in its entirety.

Dated:     New York, New York          **Chittur & Associates, P.C.**
           June 24, 2013
                                        _____Sd/_____
                                        By: Krishnan Chittur, Esq.
                                        286 Madison Avenue Suite 1100
                                        New York, New York 10017
                                        Tel: (212) 370-0447

                                        Attorneys for Ms. Ritchie

---

[14]Defendants' other cases are equally far-removed. *Edge v Professional Claims Bur., Inc.*, 64 F Supp 2d 115, 118 (E.D.N.Y. 1999), *affd*, 234 F3d 1261 (2d Cir 2000) (referral of debt for collection gave a permissible purpose); *Anderson v Frederick Ford Mercury, Inc.*, 694 F Supp 2d 324, 332 (D Del 2010) ( plaintiff initiated transaction, authorized credit inquiries); *Stonehart v Rosenthal,* 2001 WL 910771 (S.D.N.Y. Aug. 13, 2001) (dispute was about amount, not existence, of debt); *Perretta v Capital Acquisitions & Mgt. Co.*, 2003 WL 21383757 (N.D. Cal May 5, 2003) ("does not dispute his incurrence of the subject debt").