UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA J. RITCHIE,

                     Plaintiff,

     v.

NORTHERN LEASING SYSTEMS,
INC., LEASE FINANCE GROUP, LLC,
RICARDO BROWN, ROBERT
TAYLOR, and JOHN DOES 1–50,

                  Defendants.

No. 12-CV-4992 (KMK)

OPINION AND ORDER

Appearances:

Audrey Strutinskiy, Esq.
Krishnan Shanker Chittur, Esq.
Chittur & Associates, P.C.
New York, NY
*Counsel for Plaintiff*

Robert D. Lillienstein, Esq.
Scott Evan Silberfein, Esq.
Moses & Singer LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Patricia J. Ritchie ("Plaintiff") filed the instant Complaint against Ricardo Brown

("Brown"); Robert Taylor ("Taylor"); John Does 1–50 ("John Doe Defendants")

(collectively, "Individual Defendants"); Lease Finance Group, LLC ("LFG"); and

Northern Leasing Systems, Inc. ("NLS") (collectively, "Corporate Defendants")

(collectively, "Defendants"), alleging four counts of violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*., and four counts of violations of a

related New York state law, the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 380 *et seq.* (*See* Am. Compl. ("Compl.") (Dkt. No. 8).)  Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  (*See* Notice of Mot. To Dismiss the First Am. Compl. ("Mot.") (Dkt. No. 13).)  For the following reasons, Defendants' Motion is granted in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Complaint and are taken as true for the purposes of resolving the instant Motion.  Defendant NLS is a New York corporation "ostensibly in the business of originating and servicing micro-ticket leases through itself and through over 100 shell entities."  (Compl. ¶¶ 4–5.)  Defendant LFG is a Delaware limited liability company and "is one of the shell entities managed and operated by [NLS]."  (*Id.* ¶ 5.)  NLS "has managed and operated, and continues to manage and operate, itself and [LFG] from the same offices in the same business using the same personnel with the same forms working with the same systems and employing the same *modus operandi.*"  (*Id.* ¶ 4; *see also id.* ¶ 5 (alleging that LFG "is a 'pass through' entity with no assets or employees of its own, and is managed, operated, serviced, controlled and dominated by [NLS]").)  Defendants Brown and Taylor are, respectively, the Legal Recovery Director and Legal Collections Manager for NLS "and/or its principals and affiliates."  (*Id.* ¶¶ 6–8.)  John Doe Defendants "are either individuals or corporate entities affiliated with the other Defendants" that "have willfully or negligently engaged in the same wrongful conduct as alleged against Defendants."  (*Id.* ¶ 9.)

Beginning in 2007, Plaintiff operated a "legal document preparation service." (*Id.* ¶ 12.) In October 2008, Plaintiff's business "leased a point-of-sale machine from a company called 'Merchant Made Easy.'" (*Id.* ¶ 13.) In doing so, she "submitted a voided check[] and a signed Merchant Processing Application" to that company. (*Id.*) She "did not sign any other agreements, contracts, guarantees or other commitments in connection with that transaction." (*Id.*)

In 2009, Plaintiff "closed the business and returned the machine to Merchant Made Easy." (*Id.* ¶ 14.) Then, in April 2010, Defendants—none of whom is "Merchant Made Easy"—"commenced harassing [Plaintiff]" by "call[ing] her repeatedly" and "rudely demanding payments under an alleged lease." (*Id.* ¶ 15.) In response to these phone calls, Plaintiff "categorically informed Defendants that she had never signed any lease with them, and demanded that they stop the harassment." (*Id.*) But Defendants "mercilessly" continued making these "abusive calls." (*Id.*)

Defendants then took a number of actions relating to Plaintiff's consumer credit report, all "under the name of Defendant [LFG]." (*Id.* ¶¶ 16–17.) First, Defendants "accessed" Plaintiff's consumer credit report "on or about August 20, 2010." (*Id.* ¶ 17.) Second, Defendants "made an adverse entry on [Plaintiff's] consumer credit report with the credit reporting agency Experian," which entry reflected that Defendants "had 'charged off' $1,836" in money that Plaintiff allegedly owed. (*Id.* ¶ 16.) Third, Defendants again "accessed" Plaintiff's consumer credit report "on or about . . . December 8, 2010." (*Id.* ¶ 17.) With regard to the August 20 and December 8 incidents, Defendants "never provide[d] any advance or written notice to [Plaintiff] that they intended to pull her consumer credit report, or that such pulling was even a possibility."

(*Id.*)  Fourth, Defendants "commenced a lawsuit against [Plaintiff] in the New York City Civil Court" on February 16, 2011, which lawsuit is "pending."  (*Id.* ¶¶ 18, 19 n.2.) Fifth, after Plaintiff "disputed th[e] adverse entry with the credit reporting agency Experian[] and demanded that Defendants investigate and rectify the inaccurate entry," "Defendants willfully failed and refused to conduct any investigation." (*Id.* ¶ 20–21.) Instead of "communicating with [Plaintiff]" about the dispute, "they summarily—and falsely—reported back to Experian that they had 'verified' the alleged loan to [Plaintiff]," allowing the adverse entry "to continue on [Plaintiff's] consumer credit report for at least seven years."  (*Id.* ¶ 21.)

### B.  Procedural History

Plaintiff filed the initial Complaint in June 2012.  (*See* Dkt. No. 1.)  The Court held a premotion conference in October 2012, at which it granted Plaintiff leave to amend the Complaint.  (*See* Dkt. (minute entry for Oct. 17, 2012).)  Plaintiff thereafter filed an Amended Complaint in November 2012, alleging the same eight counts she had alleged in the original Complaint against the same Defendants.  (*See* Dkt. No. 8.)  The Court then held another premotion conference in March 2013 to discuss Defendants' renewed request to file a motion to dismiss.  (*See* Dkt. (minute entry for Mar. 19, 2013).)  Pursuant to the scheduling order entered after that conference, (*see* Dkt. No. 12), Defendants filed their Motion To Dismiss on May 17, 2013, (*see* Dkt. No. 13), Plaintiff filed a response on June 24, 2013, (*see* Dkt. No. 18), and Defendants filed a reply on July 15, 2013, (*see* Dkt. No. 21).

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to accept as true all factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a

complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

    B.  Analysis

       In general, the FCRA provides a cause of action against "[a]ny person who willfully fails to comply" or who "is negligent in failing to comply" with an FCRA requirement.  15 U.S.C. §§ 1681n(a), 1681o(a).  These requirements include a requirement "not [to] use or obtain a consumer report" for an impermissible purpose, *id.* § 1681b(f), and a requirement to "conduct an investigation," "review all relevant information," and "report the results of the investigation to [relevant] consumer reporting agenc[ies]" upon "receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," *id.* § 1681s-2(b)(1).  *See LaCourte v. JP Morgan Chase & Co.*, No. 12-CV-9453, 2013 WL 4830935, at *9 (S.D.N.Y. Sept. 4, 2013) ("[S]ection[] 1681s-2(b) . . . provide[s] for a private right of action against entities that furnish information to credit reporting agencies . . . ."); *Perl v. Am. Express*, No. 11-CV-7374, 2012 WL 178333, at *2 (S.D.N.Y. Jan. 19, 2012) ("To state a claim for civil liability based on [§ 1681b(f)], a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible

purpose, and that the violation was willful or negligent." (citations omitted)).  A plaintiff may recover actual, punitive, or statutory damages for willful violations, but may recover only actual damages for negligent violations.  *See Willey v. J.P. Morgan Chase, N.A.*, No. 09-CV-1397, 2009 WL 1938987, at *2 (S.D.N.Y. July 7, 2009) ("Successful plaintiffs may recover actual damages . . . for negligent violations and may recover actual damages, statutory damages, and punitive damages . . . for willful violations.").

Plaintiff brings multiple FCRA causes of action based on these two requirements and these two categories of violations, alleging that Defendants willfully (Count I) and, in the alternative, negligently (Count II) accessed her credit report without a permissible purpose, and that Defendants willfully (Count III) and, in the alternative, negligently (Count IV) failed to resolve a dispute over the adverse entry Defendants added to her consumer credit report pursuant to statutory requirements.  (*See* Compl. ¶¶ 28–52.) Plaintiff also brings essentially the same four claims under analogous state-law provisions in the NYFCRA.  (*See id.* ¶¶ 53–74 (citing N.Y. Gen. Bus. Law §§ 380-b, 380-l, 380-m, 380-o).)[1]

Defendants move to dismiss the Complaint for multiple reasons.  First, they argue that the Complaint generally fails to meet the notice-pleading requirements of Rule 8(a) because it "lump[s] defendants together," and thereby fails "to distinguish between the conduct of each of the defendants."  (Defs.' Mem. of Law in Supp. of Mot. To Dismiss

---

[1] In their Motion and accompanying Memoranda of Law, Defendants request dismissal of all eight claims, but they cite only to cases addressing the FCRA, and do not otherwise identify any distinctions between the FCRA and NYFCRA claims.  Keeping in mind the Second Circuit's recognition that "the[se] two statutes must be construed in the same way" in light of the similarities between many of their provisions, *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999), the Court does not find it necessary to discuss separately the provisions of the NYFCRA referenced in the Complaint.

the First Am. Compl. ("Mem.") (Dkt. No. 16) 4–7 (some alterations omitted).)  Second,

they argue that the Complaint fails to state a claim under the FCRA because "all of the

transactions at issue were business transactions, and not consumer transactions," and

therefore "the FCRA does not apply."  (*Id.* at 8.)  Third, they argue that the Complaint

"does not adequately allege that Plaintiff has sustained damages cognizable under the

FCRA."  (*Id.* at 11.)  Fourth, they argue that the Complaint fails to state any "plausible

allegations from which the Court could conclude that [NLS] violated the FCRA."  (*Id.* at

13.)  Fifth, they argue that the Complaint fails to state a claim against Individual

Defendants Brown and Taylor because it does not allege that those Defendants acted "for

personal purposes" or "outside the ordinary course of their employment."  (*Id.* at 15.)

Finally, they argue that the Complaint fails to state a claim for "impermissible access" of

a credit report under either the FCRA or the NYFCRA because Defendants accessed

Plaintiff's report pursuant to a "permissible purpose."  (*Id.* at 16.)  The Court will address

each argument in turn.

### 1.  Rule 8(a)

Defendants first argue that the Complaint fails to meet Rule 8(a)'s notice-pleading

standard, which requires, *inter alia*, that a complaint "must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Defendants cite a number of cases standing for the proposition that, "[w]here a

complaint names multiple defendants, that complaint must provide a plausible factual

basis to distinguish between the conduct of each of the defendants."  (Mem. 5–6 (citing

*Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012); *Atuahene v. City of Hartford*,

10 F. App'x 33, 34 (2d Cir. 2001); *Ochre LLC v. Rockwell Architecture Planning &*

*Design, P.C.*, No. 12-CV-2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012); *Elias v. City of New York*, No. 10-CV-5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010); *Southerland v. N.Y.C. Housing Auth.*, No. 10-CV-5243, 2010 WL 4916935 (E.D.N.Y. Nov. 23, 2010); *Medina v. Bauer*, No. 02-CV-8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)).)[2]  In most of the cases that Defendants cite, the courts dismissed the complaints because the complaints failed to distinguish *at all* between any of the Defendants in claims alleging discrimination or constitutional-rights violations.  *See Marcilis*, 693 F.3d at 596 (dismissing a complaint raising a *Bivens* claim where the complaint "ma[de] *only* categorical references to 'Defendants'" (emphasis added)); *Atuahene*, 10 F. App'x at 34 (noting that the complaint "alleging a host of constitutional and state common law claims" initially "failed to differentiate among the defendants, alleging instead violations by 'the defendants,'" and then later "still fail[ed] to identify which defendants were alleged to be responsible for which alleged violations" when the plaintiff "replaced the allegations against 'the defendants' with the names of all of the defendants"); *Elias*, 2010 WL 5475809, at *3 (dismissing complaint that "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants,' without distinguishing their individualized conduct" (internal citation omitted)); *Southerland*, 2010 WL 4916935, at *3 (dismissing complaint alleging constitutional-rights violations where the complaint failed "[to] allege facts against *any* individual defendant" (emphasis added)).  In one

---

[2] Defendants cite *Atuahene v. City of Harford*, a Second Circuit summary order from 2001.  The Court notes that, under the Local Rules for the Court of Appeals for the Second Circuit, summary orders do not have precedential effect, and parties may not cite a summary order issued prior to January 1, 2007, except in two circumstances, neither of which is present here.  *See* 2d Cir. R. 32.1.1(a), (b)(2).

case, the court dismissed a copyright-infringement claim where the plaintiff sued four entirely separate entities—a design firm, an architect, a hotel, and a procurement agent—and the complaint "fail[ed] to isolate the key allegations against each defendant." *See Ochre*, 2012 WL 6082387, at *6. And in another case, the court dismissed a civil RICO claim against three defendants because the complaint contained only one allegation specific to each defendant, and each allegation "fail[ed] to give adequate notice to th[o]se defendants as to what they did wrong." *See Medina*, 2004 WL 136636, at *6.[3]

Defendants argue that, like the courts in those cases, this Court should dismiss the Complaint because it fails to "provide a plausible factual basis to distinguish between the conduct of each of the defendants." (Mem. 5–6.) But Defendants, for the most part, mischaracterize the Complaint. Unlike the complaints in each of the cases Defendants cite, this Complaint contains numerous allegations specific to each of Defendants LFG, Brown, Taylor, and NLS. For example, it specifically alleges that Defendant LFG made the adverse entry in Plaintiff's credit report and accessed that credit report twice without a permissible purpose. (*See* Compl. ¶¶ 16–17.) The Complaint further alleges that Defendant Taylor served as a "Legal Collections Manager" for Defendants, and that he was "actually or constructively responsible for the impermissible access" of Plaintiff's consumer credit report. (*Id.* ¶ 24.) The Complaint also alleges that Taylor had knowledge of Plaintiff's adverse-entry dispute from his involvement in the lawsuit

---

[3] Defendants also cite *Lippe v. Bairnco Corp.*, 225 B.R. 846 (S.D.N.Y. 1998), where the court dismissed a civil RICO claim against certain defendants because the complaint "'lump[ed]' all the defendants together and allege[d] that the purported acts of every defendant [could] be imputed to every other defendant." *Id.* at 860. However, the court dismissed the claim not under Rule 8(a) for failing to provide fair notice, but under Rule 12(b)(6) for failing to allege a civil RICO claim under 18 U.S.C. § 1962(c). *See id.* at 860–61.

against Plaintiff and that he was responsible for the "wrongful refusal to remove [that] entry from [Plaintiff's] credit report." (*Id.*)  Furthermore, the Complaint alleges that Defendant Brown served as a "Legal Recovery Manager" for Defendants, that he was "responsible for Defendant's impermissible access as well as wilful failure/refusal to investigate [Plaintiff's] dispute raised with Experian," and that he "confirmed the false information that Defendants had provided to the credit reporting agency about [Plaintiff]." (*Id.* ¶ 25.)  Finally, the Complaint alleges that Defendant NLS "exercised complete domination of [LFG], and used such domination to commit the fraud and/or wrongs against [Plaintiff] which resulted in [her] injuries at issue." (*Id.* ¶ 4; *see also id.* ¶ 5 ("[LFG] is one of the shell entities managed and operated by [NLS] and/or [its] principals . . . .  It is a 'pass through' entity with no assets or employees of its own, and is managed, operated, serviced, controlled and dominated by [NLS].").)

Plaintiff's Complaint therefore does not simply "lump" these Defendants together, as Defendants argue.  Instead, it "satisfies the requirements of Rule 8(a) because it gives [these Defendants] fair notice of the basis for [Plaintiff's] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[Rule 8(a)(2)] requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (internal quotation marks and alterations omitted)); *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (noting that "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given," and that "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the

nature of the case so that it may be assigned the proper form of trial" (internal quotation marks omitted)).  And it does so even though it includes certain allegations against "Defendants" collectively.  *See Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *7 (S.D.N.Y. July 9, 2013) ("In order to comply with Rule 8, [a] complaint should offer specification as to the particular activities by any particular defendant . . . .  Rule 8(a) . . . requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." (internal quotation marks and citations omitted) (first and second alterations in original)), *adopted as modified by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *Howard v. Mun. Credit Union*, No. 05-CV-7488, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each [d]efendant on notice of what they allegedly did or did not do." (citations and some internal quotation marks omitted) (alteration in original)).  The Court therefore denies Defendants' Motion To Dismiss under Rule 8(a) with respect to Defendants NLS, LFG, Brown, and Taylor.

But Defendants are correct that the Complaint fails to give fair notice to John Doe Defendants.  With respect to those defendants, the Complaint vaguely alleges that they are "either individuals or corporate entities"; that they are "affiliated with the other Defendants"; that they are "joint tortfeasors, conspirators, general or specific agents

and/or 'alter egos' of Defendants"; that they "have wilfully or negligently engaged in the same wrongful conduct as alleged against Defendants"; and that they "were familiar with and authorized the unlawful policies and practices complained of" in the Complaint. (Compl. ¶ 9.)  Although courts sometimes allow plaintiffs to plead causes of action against a "John Doe" defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense.  *See, e.g.*, *Regeda v. City of New York*, No. 09-CV-5427, 2012 WL 7157703, at *8 (E.D.N.Y. Sept. 7, 2012) (noting that a plaintiff, in an amended complaint, must either "identify each [defendant] by name, or else identify them as the 'John Doe defendants' and provide sufficient factual basis to allow the defendants to successfully identify the John Doe defendants and prepare for a defense"), *adopted by* 2013 WL 619567 (S.D.N.Y. Feb. 19, 2013); *Barreto v. Cnty. of Suffolk*, 762 F. Supp. 2d 482, 487–88 (E.D.N.Y. 2010) (holding that a complaint against John Doe defendants satisfied Rule 8(a), as liberally applied to pro se complaints, where the plaintiff "identified the specific [jobs] that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place" related to the cause of action, and "provided the grounds for liability with regards to each of the [d]efendants," such that those defendants had "ample notice as to the nature of the claims brought against them [and] also the opportunity to prepare an intelligent defense"); *Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (holding that a complaint "fail[ed] to plead a claim against [John Doe] defendants" under Rule 8(a) where it contained no information specific to the identities or actions of those defendants).  The Court thus grants Defendants' Motion To

Dismiss all claims against John Doe Defendants, but it also grants Plaintiff leave to amend the Complaint and either name specific Defendants or allege facts that satisfy Rule 8(a)'s pleading standard as applied to John Doe defendants.

### 2.  Business Transactions

Defendants next argue that the Complaint fails to state an FCRA or NYFCRA claim because "the reports at issue were obtained in connection with a business transaction," (Mem. 7), but the FCRA and NYFCRA "do[] not apply to credit reports used in connection with a loan for a consumer's business," (*id.* at 10).  The Court need not address the substance of this argument, however, because it is based on a factual dispute that the Court, at this stage in the proceedings, is required to resolve in Plaintiff's favor.  *See Ruotolo*, 514 F.3d at 188 (noting that a court reviewing a Rule 12(b)(6) motion must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor" (internal quotation marks omitted)).

Defendants contend that "it is apparent [from the Complaint] that any credit reports Defendants obtained relating to Plaintiff were obtained in connection with a business transaction involving the lease of a credit card swiping machine which was to be used in connection with Plaintiff's business."  (Mem. 7.)  They read the Complaint to allege, first, that Plaintiff leased a machine in October 2008 from "Merchant Made Easy," (*id.*); and, second, that Defendants undertook the alleged actions giving rise to Plaintiff's claims as part of their effort "to collect payments due under that lease," (*id.* at 7–8).  Defendants also ask the Court to consider the complaint and associated exhibits filed in the New York City Civil Action referenced in the Complaint, (*id.* at 7 & n.4), which exhibits include a copy of the alleged lease, indicating that Plaintiff entered into a lease

14

with LFG, not Merchant Made Easy, (*see* Decl. of Robert D. Lillienstein in Supp. of Mot. To Dismiss the First Am. Compl. ("Decl.") (Dkt. No. 15), Ex. A ("NYC Compl.") at unnumbered 5–7 ("Lease")).

If the Complaint alleged that Plaintiff entered into a lease with LFG, the Court might be able to evaluate Defendants' argument that Plaintiff has not stated a claim under the FCRA or NYFCRA.  However, the Complaint explicitly disputes the premise underlying Defendants' argument.  First, the Complaint alleges that Plaintiff signed a "Merchant Processing Application" with "Merchant Made Easy" and "did not sign any other agreements, contracts, guarantees or other commitments in connection with that transaction."  (Compl. ¶ 13.)  Second, it alleges that Plaintiff "had no account with [Defendants], and did not owe [them] anything."  (*Id.* ¶ 23.)  Third, it alleges that Plaintiff has stated, "under penalties of perjury, that she never had any business or any dealings with [LFG]."  (*Id.* ¶ 19.)  Finally, the Complaint alleges that, to the extent Defendants claim Plaintiff signed a lease, her signature was forged.  (*Id.* ¶¶ 19, 21, 24–25.)  In other words, the Complaint alleges that Plaintiff never completed any kind of transaction with Defendants, and that Defendants violated her rights under the FCRA and NYFCRA when they "made an adverse entry on [her] consumer credit report" without a permissible purpose.  (*Id.* ¶ 16.)  *See* 15 U.S.C. § 1681b(f) (prohibiting the "use" of a "consumer report" unless, *inter alia*, "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished"); *see also Farkash v. RJM Acquisitions Funding, Inc.*, Nos. 12-CV-735 et al., 2012 WL 1948643, at *2 (S.D.N.Y. May 29, 2012) (holding that the plaintiff "adequately allege[d] that his report was obtained for an impermissible purpose by alleging that he never had any business

dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from, Defendants" (internal quotation marks omitted)); *Stonehart v. Rosenthal*, No. 01-CV-651, 2001 WL 910771, at *5 (S.D.N.Y. Aug. 13, 2001) ("If a user requests information from a consumer reporting agency for a purpose not permitted by [§] 1681b, while representing to the agency that the report will be used for a permissible purpose, the user may be subject to civil liability for obtaining information under false pretenses."). Taking these allegations as true, the Court finds that it need not address Defendants' argument that the FCRA and NYFCRA do not apply to these claims.[4]

### 3.  FCRA Damages

Defendants next argue that the Complaint "does not adequately allege that Plaintiff has sustained damages cognizable under the FCRA." (Mem. 11.)  As discussed, a plaintiff may recover actual, statutory, and punitive damages for a willful violation of the FCRA, but may recover only actual damages for a negligent violation.  *See* 15 U.S.C. § 1681n(a)(1) (allowing the victim of a willful FCRA violation to recover "any actual

---

[4] Although courts, in deciding a Rule 12(b)(6) motion, may consider "documents . . . incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107, the Court would still refuse to consider Defendants' argument at this stage in the litigation even if it did consider the New York City Civil Court complaint and the copy of the lease attached thereto. Those documents prove only that Defendants have *alleged*, in a different court, that Plaintiff signed a lease with LFG. But Plaintiff disputes that allegation in the Complaint, creating the type of factual dispute that this Court may not resolve in a Rule 12(b)(6) motion, which tests only whether the Complaint has stated a valid claim, not a true one. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt., Cooperation, Pension & Welfare Funds v. Dykeman Carpentry, Inc.*, No. 13-CV-1508, 2014 WL 976822, at *5 (E.D.N.Y. Mar. 12, 2014) ("[T]he resolution of a factual dispute, in the absence of any discovery or evidentiary hearing, is not appropriate on a motion to dismiss." (internal quotation marks omitted)).

damages sustained by the consumer as a result of the failure [to comply with the FCRA] or damages of not less than $100 and not more than $1,000," or, specifically for a claim alleging access of a credit report "without a permissible purpose, actual damages sustained by the consumer . . . or $1,000, whichever is greater"); *id.* § 1681n(a)(2) (allowing the victim of a willful FCRA violation to recover "such amount of punitive damages as the court may allow"); *id.* § 1681o(a)(1) (allowing the victim of a negligent FCRA violation to recover "any actual damages sustained by the consumer as a result of the failure [to comply with the FCRA]"); *see also Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 374 (3d Cir. 2012) ("[The FCRA] imposes civil liability for violations of [FCRA provisions], with the available remedies dependent upon whether the violation was negligent or willful.  If a [defendant's] violation was merely negligent, a plaintiff may recover only *actual* damages, and statutory damages are not available.  If the violation was willful, however, [the FCRA] allows a plaintiff to elect to recover either actual damages or statutory damages between $100 and $1,000.  A court may also award punitive damages in cases involving willful violations." (citations omitted)).

The Complaint generally seeks "compensatory, statutory, punitive and/or exemplary damages together with equitable and injunctive relief as well as attorneys' fees and expenses."  (Compl. ¶ 1; *see also id.* ¶ 75(a) (seeking an "[a]ward[] [of] compensatory, punitive, statutory and/or treble damages . . . in such amount as may be determined after discovery and trial").)  Therefore, the Court will not dismiss Plaintiff's willful-violation claims (Counts I and III) for failure to allege actual damages, because even if Plaintiff failed to do so, the Complaint would still state a claim based on entitlement to statutory damages.  *See Martin v. Asset Acceptance, LLC*, No. 11-CV-

6256, 2012 WL 3042524, at *4 (N.D. Ill. July 25, 2012) ("Unlike § 1681o, § 1681n does not require proof of actual damages, as the plaintiff may also recover statutory damages. Plaintiff's failure to allege facts giving rise to a facially plausible inference of actual damages therefore does not defeat his claims for willful noncompliance." (citations omitted)); *cf. Clark Consulting, Inc. v. Fin. Solutions Partners, LLC*, No. 05-CV-6296, 2005 WL 3097892, at *6 (S.D.N.Y. Nov. 17, 2005) (denying motion to dismiss for failure to allege special damages where complaint sufficiently pled actual damages); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 735 (S.D.N.Y. 1996) (noting that a plaintiff "does not have to make an election between statutory damages and actual damages until the Court renders final judgment," and that "what is at issue [at the motion-to-dismiss stage] is solely whether plaintiff will be entitled to elect statutory damages . . . if it is successful in th[e] action").

But a complaint alleging a claim for negligent violations of the FCRA under § 1681o must allege actual damages.  *See Morse v. USAA Fed. Sav. Bank*, No. 12-CV-381, 2012 WL 6020090, at *3 (D. Nev. Dec. 3, 2012) ("[A]ctual damages . . . are a required element" of a claim for negligent violation of § 1681s-2(b)); *Buechler v. Keyco, Inc.*, No. 09-CV-2948, 2010 WL 1664226, at *2 (D. Md. Apr. 22, 2010) ("[Plaintiff] [did] not allege actual damages; to recover, he must prove that [defendant's] violation of [the FCRA] was willful."); *cf. Zaun v. Al Vento Inc.*, No. 11-CV-2024, 2013 WL 268930, at *1 (D. Minn. Jan. 24, 2013) (noting that a complaint "was required" to allege that "[an FCRA] violation was willful . . . in light of the fact that there were no actual damages suffered").  To do so, the Complaint need allege only enough facts demonstrating that Plaintiff suffered an injury entitling her to actual damages.  *See Nowlin v. Avis Budget*

*Grp.*, No. 11-CV-511, 2011 WL 7087108, at *2 (M.D.N.C. Dec. 22, 2011) ("[A] [p]laintiff [alleging an FCRA claim] bears the burden of establishing that he is entitled to damages.  To satisfy the *Iqbal* pleading standard, [a] [p]laintiff must allege facts that plausibly suggest that he is entitled to damages." (citation omitted)), *adopted by* 2012 WL 204162 (M.D.N.C. Jan. 24, 2012); *Johnson v. CGR Servs., Inc.*, No. 04-CV-2587, 2005 WL 991770, at *2 (N.D. Ill. Apr. 7, 2005) ("The FCRA does not explicitly limit the 'actual damages' recoverable under the statute and [a] [p]laintiff does not need to plead her damages with heightened particularity.  However, the Complaint needs at least to give the other party some notice as to what her actual damages could possibly be.").

Here, the Complaint contains nothing more than conclusory allegations that Plaintiff is entitled to actual damages from Defendants' alleged negligent FCRA violations.  (*See* Compl. ¶ 27 ("[Plaintiff] suffered, and continues to suffer, actual and real monetary injury as a direct result of Defendants' aforesaid misconduct."), ¶ 39 ("As a result of Defendants' aforesaid misconduct, [Plaintiff] has sustained damages for which Defendants are liable . . . ."), ¶ 52 ("Defendants are liable to [Plaintiff] for the actual damages sustained by reason of the aforesaid misconduct . . . .").)  Plaintiff argues that the Complaint alleges actual damages in the form of "monetary damages [from] retaining an attorney" in the New York City Civil Court lawsuit and "severe emotional distress damages."  (*See* Opp'n 17.)  Although the Complaint does allege that Plaintiff "had to retain attorneys in New York to defend herself," and it does reference "harassment," "rude[] demand[s] [for] payments under [the] alleged lease," and "abusive calls [that] continued mercilessly," (Compl. ¶¶ 15, 19), these injuries arose, if at all, from conduct entirely separate from the alleged FCRA violations, all of which directly relate to

Plaintiff's consumer credit report.  Moreover, Plaintiff's attempt in her Memorandum of

Law to characterize these allegations as claims for actual damages cannot rectify her

failure to allege actual damages in the Complaint itself.  *See Goldberg v. Danaher*, 599

F.3d 181, 183 (2d Cir. 2010) ("[A] motion under Rule 12(b)(6) presents a pure legal

question[] based on allegations contained within the four corners of the complaint . . . .");

*Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-

standing precedent in this circuit that parties cannot amend their pleadings through issues

raised solely in their briefs.").  The Court therefore dismisses, without prejudice, both

counts alleging negligent FCRA violations for failure to allege actual damages.  *See*

*Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 126 (S.D.N.Y. 2011) (dismissing

negligence-based causes of action under § 1681o because the plaintiff did "not allege[]

that he . . . sustained actual damages"); *cf. In re UBS Auction Rate Secs. Litig.*, No. 08-

CV-2967, 2009 WL 860812, at *6 (S.D.N.Y. Mar. 30, 2009) (dismissing complaint for

"fail[ing] to allege any theory of damages cognizable under [a statute]"); *Turk v. Chase*

*Manhattan Bank, USA, N.A.*, No. 00-CV-1573, 2001 WL 34644307, at *2 (S.D.N.Y. Feb.

20, 2001) (dismissing a claim where statutory damages were not available and the

plaintiffs "d[id] not allege that they suffered any actual damages" other than a "cryptic

reference [in the complaint] to 'any actual damages which may be shown,'" which the

court held was "speculative pleading [that] [would] not save [plaintiffs] from dismissal").

### 4.  Claims Against Defendant NLS

Defendants next argue that the Complaint "lacks any plausible allegations to

buttress the conclusion that [NLS] was responsible for either investigating or responding

to the dispute," and therefore that the Complaint "should be dismissed in its entirety as

against [NLS]."  (Mem. 14.)  The Complaint specifically alleges that NLS "has managed and operated, and continues to manage and operate, itself and [LFG] from the same offices in the same business using the same personnel with the same forms working with the same systems and employing the same *modus operandi*," such that NLS "exercised complete domination of [LFG], and used such domination to commit the fraud and/or wrongs against [Plaintiff]."  (Compl. ¶ 4; *see also id.* ¶ 5 ("[LFG] is one of the shell entities managed and operated by [NLS] and/or [NLS's] principals . . . .  It is a 'pass through' entity with no assets or employees of its own, and is managed, operated, serviced, controlled and dominated by [NLS].").)  Defendants nevertheless contend that these allegations are "purely conclusory" and that they are insufficient to make NLS liable under a corporate-veil-piercing theory.  (Mem. 13–14.)

The Court need not address Defendants' latter argument—i.e., whether NLS could be vicariously liable for LFG's actions—because the Complaint alleges that NLS itself, in addition to the other Defendants, unlawfully accessed Plaintiff's credit report and failed to correct the adverse entry.  (*See* Compl. ¶¶ 16, 21.)  Plaintiff's allegation that Defendants undertook the alleged actions "under the name of Defendant [LFG]" does not suggest a different result, but rather confirms that the Complaint specifically alleges that NLS violated the FCRA.  (*See id.* ¶¶ 16–17.)  Moreover, the Complaint alleges facts sufficient to support a plausible inference that NLS violated the FCRA, as it specifically alleges that Defendants Brown and Taylor were employees of NLS, not LFG, and that they personally accessed Plaintiff's credit report and "confirmed" the adverse entry to the credit-reporting agency and "verified" the New York City Civil Court complaint after

Plaintiff notified Defendants of her dispute.  (*See id.* ¶¶ 8, 24–25.)[5]  The Court therefore

denies Defendants' Motion To Dismiss the claims against NLS based on this argument

because it finds that the Complaint plausibly alleges that NLS itself committed FCRA

and NYFCRA violations.

### 5.  Claims Against Individual Defendants

Defendants next argue that the Complaint fails to allege claims against

Defendants Brown and Taylor because it does not allege that these Defendants "did

anything for personal purposes, or for any purpose outside the ordinary course of their

employment."  (Mem. 15.)  They base their argument on two cases, one from the Second

Circuit and one from this district.  In *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41

(2d Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S.

506 (2002), *as recognized in Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 617 F.3d

114 (2d Cir. 2010), the Second Circuit held that "[w]hether an employee may be held

liable as a 'user of information' under § 1681n for violating [an FCRA provision]

depends on whether the employee impermissibly obtained credit information for personal

purposes, or merely in the ordinary course of employment."  *Id.* at 49.  Similarly, in

*Woodell v. United Way of Dutchess County*, 357 F. Supp. 2d 761 (S.D.N.Y. 2005), the

district court relied on *Northrop* in granting summary judgment against a plaintiff

alleging an FCRA claim against an individual employee where the plaintiff "[did] not

---

[5] It bears noting that Defendants conceded that NLS "services the leases originated by [LFG]" in a Declaration that they submitted along with their Reply Memorandum.  (*See* Decl. of Lina Kravic (Dkt. No. 20) ¶ 1 (declaration of Lina Kravic, stating that she is "the director of operations of [NLS]," that NLS "services the leases originated by [LFG]," and that she has "personal knowledge of [certain] facts [related to this case] based on a review of the business records maintained by [NLS] and [LFG] in the ordinary course of their business").)

allege[] any facts that could support a finding that [the individual defendant] requested or used [the plaintiff's] credit report for anything other than the performance of his duties as an employee." *Id.* at 774.  Defendants argue that this Court should dismiss the claims against Individual Defendants pursuant to these cases, because the Complaint does not allege that either defendant acted for personal purposes.  (*See* Mem. 15–16.)

In *Northrop*, the Second Circuit analyzed claims arising under the FCRA as it existed in 1995.  *See* 134 F.3d at 43–44 (analyzing claims arising out of events that occurred in 1995).  In that version, § 1681n made liable "*[a]ny consumer reporting agency or user of information* which willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer," 15 U.S.C. § 1681n (1994) (emphasis added), and the Second Circuit based its conclusion on its interpretation of the term "user of information," *Northrop*, 134 F.3d at 49 (analyzing "[w]hether an employee may be held liable as a 'user of information' under § 1681n").  However, in 1996, Congress amended the FCRA and thereby replaced the phrase "[a]ny consumer reporting agency or user of information" in § 1681n with the much broader "[a]ny person."  *See* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 2412(a), 110 Stat. 3009, 3009–446 (1996) (codified as amended at 15 U.S.C. § 1681n(a)) ("Section 616 of the [FCRA] (15 U.S.C. 1681n) is amended by striking 'Any consumer reporting agency or user of information which' and inserting '(a) IN GENERAL.—Any person who'.").  Defendants' argument therefore does not apply to this claim, which Plaintiff alleges under the currently enacted version of the FCRA, making liable "*[a]ny person who* willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer."  15 U.S.C. § 1681n(a) (emphasis added); *see also Scott v. Real*

*Estate Fin. Grp.*, 183 F.3d 97, 99 & n.1 (2d Cir. 1999) (applying *Northrop* to claims

"addressed . . . under the [FCRA] as it existed prior to various 1996 amendments"); *cf.*

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 982 (7th Cir. 2004)

(holding that district court erred in dismissing an FCRA claim based on a finding that

defendant "was not a 'user' of credit reports under [§ 1681(m)]" because that court failed

to apply the correct version of § 1681m, which made liable "any person," not just "[a]

user of [a] consumer report").  The scope of liability under the currently enacted version

of the FCRA is thus broader than the scope that existed before the 1996 amendment.  *See*

*Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)

(recognizing that the 1996 amendments broadened the scope of liability under § 1681n to

include liability for furnishers of information to credit-reporting agencies); *Ayers v.*

*Equifax Info. Servs.*, No. 03-CV-551, 2003 WL 23142201, at *5 (E.D. Va. Dec. 16, 2003)

("Before the [1996] amendment, [§ 1681n] limited consumer remedies to suits against

'any consumer reporting agency or user of information.'  The amendment eliminated this

limitation by broadly changing the language to 'any person,' which should be read to

include furnishers of information." (quoting 15 U.S.C. § 1681n (1994))); *Hawthorne v.*

*Citicorp Data Sys., Inc.*, 216 F. Supp. 2d 45, 48 (E.D.N.Y. 2002) ("By changing the

language in both sections to impose liability on 'any person', [sic] the 1996 amendment

appears to have clearly expanded the scope of liability under the [FCRA].ic"), *withdrawn*

*and superseded on other grounds by* 219 F.R.D. 47 (E.D.N.Y. 2003); *DiMezza v. First*

*USA Bank, Inc.*, 103 F. Supp. 2d 1296, 1300 (D.N.M. 2000) ("The changes to [§ 1681n]

reflected the new broader category of those [who] may be liable for [FCRA]

violations.").  And although the court in *Woodell* applied *Northrop*'s holding to grant

summary judgment against a plaintiff asserting an FCRA claim under the currently enacted version of § 1681n, *see* 357 F. Supp. 2d at 763–66, 773 (analyzing claims arising out of events that occurred in 2003), this Court respectfully disagrees with that court's holding that § 1681n does not extend liability to employees acting "in the ordinary course of [their] employment" in light of the statutory language broadly making "[a]ny person" liable for FCRA violations, 15 U.S.C. § 1681n(a), not just those acting for "personal purposes" and "outside the ordinary course of . . . employment," (Mem. 15). The Court therefore denies Defendants' Motion To Dismiss the FCRA claims on this ground.

### 6. Permissible Purpose

Defendants finally argue that Count I of the Complaint fails to state a claim for impermissible access under both the FCRA and the NYCRA because, if Defendants did access Plaintiff's credit report, they did so for a "permissible purpose." (*See* Mem. 16–20.) To state her claim under Count I, Plaintiff "must show that [her] credit information was obtained for an impermissible purpose, and, thus, a showing of a permissible purpose is a complete defense." *Thomas v. RJM Acquisition LLC*, No. 12-CV-5294, 2014 WL 723676, at *3 (E.D.N.Y. Feb. 24, 2014) (internal quotation marks omitted); *see also Stonehart*, 2001 WL 910771, at *5 ("[W]here a permissible purpose for obtaining a credit report is demonstrated, then, as a matter of law, the information cannot have been obtained under false pretenses."). "'Permissible purposes' for obtaining credit information are set forth in 15 U.S.C. § 1681b." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08-CV-4207, 2012 WL 1038804, at *5 (E.D.N.Y. Mar. 28, 2012). As relevant here, that section includes a provision that allows

> any consumer reporting agency [to] furnish a consumer report . . . [t]o a
> person which it has reason to believe . . . intends to use the information in

connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.

15 U.S.C. § 1681b(a)(3)(A).  Defendants contend that, under this provision, they had a permissible purpose for accessing Plaintiff's credit report because "the pertinent credit transaction involve[d] an equipment finance lease," and they intended to access Plaintiff's credit report "for the purpose of reviewing or collecting an account."  (Mem. 17, 19 (emphasis removed).)  They further contend that whether Plaintiff "actually had an account with LFG and whether . . . she disputed her account . . . have no bearing on the issue of whether LFG had a permissible purpose," (*id.* at 20), because "[t]he critical issue . . . is whether the person obtaining the credit report *intends* to use the report for one of the specified purposes," (*id.* at 18).

Defendants cite a number of cases in support of their position.  In *Stonehart v. Rosenthal*, No. 01-CV-651, 2001 WL 910771 (S.D.N.Y. Aug. 13, 2001), the court granted summary judgment against a plaintiff after holding that the owner of a debt and a third-party agency he "enlist[ed] . . . [to] aid in his collection effort" had a permissible purpose under § 1681b(a)(3)(A) in obtaining a credit report for debt-collection purposes where the plaintiff disputed the amount, but not the existence, of the debt.  *Id.* at *4; *see also Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 332 (D. Del. 2010) (granting summary judgment to defendant where "it [was] clear from the record that [the] plaintiff initiated the transaction and authorized credit inquiries," and therefore there were "no genuine issues of material fact as to whether the credit inquiries were made in connection with [the plaintiff's] credit application"); *Alexander v. Textron Fin. Corp.*, No. 08-CV-553, 2009 WL 169076, at *3 (S.D. Miss. Jan. 26, 2009) (granting summary

judgment and dismissing FCRA claim where the plaintiff "d[id] not contest the validity of [an agreement] authorizing [the defendant] to continually review his account" and "there [was] no dispute that [the plaintiff's company] sought a line of credit from [the d]efendant"); *Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005) (granting summary judgment and dismissing an FCRA claim based on a finding that the parties had "engaged in a business transaction involving credit" and that "[t]he parties d[id] not dispute [the existence of] th[e] agreement"); *Kennedy v. Victoria's Secret Stores, Inc.*, No. 03-CV-2691, 2004 WL 2186613, at *3 (E.D. La. Sept. 29, 2004) (granting defendant's motion for judgment on the pleadings and dismissing an FCRA claim where "the facts of th[e] case indicate[d] that the consumer report . . . was obtained for the purposes of using the information to extend credit or to review or collect on an account"); *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999) (granting summary judgment and dismissing FCRA claim based on finding that defendant "had been referred a debt for collection[ that was] guaranteed by [the p]laintiff").  Similarly, in *Perretta v. Capital Acquisitions & Management Co.*, No. 02-CV-5561, 2003 WL 21383757 (N.D. Cal. May 5, 2003), the court dismissed an FCRA claim under Rule 12(b)(6) for failure to demonstrate an impermissible purpose where the complaint alleged that the defendant was a debt-collection agency and that it accessed his credit report "in connection with an effort to collect a debt."  *Id.* at *5; *see also Baker v. Am. Express Travel Related Servs. Co.*, No. 02-CV-26, 2002 WL 1205065, at *2 (W.D. Ky. May 28, 2002) (granting a motion to dismiss an FCRA claim based on a finding that the defendant accessed the plaintiff's credit report in connection with "extending credit to the plaintiff").  Finally, in *Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37

27

(E.D.N.Y. 2005), the court granted summary judgment and dismissed an FCRA claim against a defendant bank that erroneously obtained the credit report of an individual who was not one of its customers after finding that the defendant "did not plot or plan to obtain [the p]laintiff's credit report for any ostensibly impermissible purpose," but instead obtained the report with an "intent to review an existing customer's account." *Id.* at 42–43; *see also Beckstrom v. Direct Merchant's Credit Card Bank*, No. 04-CV-1351, 2005 WL 1869107, at *3 (D. Minn. Aug. 5, 2005) (granting summary judgment where the defendant "had reason to believe that [the p]laintiff had defaulted on [an] account," even though "it was later discovered that [the p]laintiff did not own the . . . account," because "the FCRA is not violated if the entity seeking the credit report made a good faith error in pulling the report").

Defendants' argument is unavailing, as it depends on the resolution of a disputed factual issue in their favor at the motion-to-dismiss stage. The Complaint specifically alleges that Plaintiff did not complete a credit transaction with Defendants, (*see* Compl. ¶¶ 1, 13, 15), and it also alleges that Defendants knowingly did not intend to collect on a valid debt, (*see id.* ¶¶ 1, 8, 11, 21, 23–25 (alleging that Defendants knowingly acted pursuant to a fraudulent scheme involving "wilful attempts to intimidate . . . [and] bully [Plaintiff] into paying Defendants monies to which [they] were never entitled")). And although Defendants dispute both of these allegations, the Court must accept the Complaint's allegations as true in resolving this Motion. *See Iowa Pub. Emps. Ret. Sys.*, 620 F.3d at 139 n.1. The cases Defendants cite, therefore, are inapposite. In most of the cases, the courts granted summary judgment or a motion for a judgment on the pleadings after finding no dispute over the existence of a debt or credit transaction, which finding

allowed the courts to conclude that the defendants had a permissible purpose to access a credit report in connection with attempts to collect on the debt. *See Anderson*, 694 F. Supp. 2d at 332; *Alexander*, 2009 WL 169076, at *3; *Breese*, 393 F. Supp. 2d at 821; *Kennedy*, 2004 WL 2186613, at *3; *Stonehart*, 2001 WL 910771, at *4; *Edge*, 64 F. Supp. 2d at 118.  And although Defendants cite two cases where courts granted motions to dismiss FCRA claims for failure to allege an impermissible purpose, the courts in those cases did so based on allegations in the complaint that the courts construed to concede the existence of at least a genuinely disputed credit transaction involving the parties.  *See Perretta*, 2003 WL 21383757, at *5; *Baker*, 2002 WL 1205065, at *2. Finally, Defendants argue that even if Plaintiff did not, in fact, owe a debt to them, "[t]he critical issue" in analyzing a permissible-purpose argument "is whether the person obtaining the credit report *intends* to use the report for [a permissible] purpose," and that "[i]f the person obtaining the report did so with the proper intent . . . it is permissible." (Mem. 18.)  However, in the two cases that Defendants cite for this proposition, the courts found—at the summary judgment stage—that the defendants intended to collect a debt based on a good-faith belief that a debt existed, even though the belief turned out to be incorrect.  *See Beckstrom*, 2005 WL 1869107, at *3; *Trikas*, 351 F. Supp. 2d at 42–43. Here, the Complaint alleges that Defendants had no such good faith belief.  The Court therefore rejects Defendants' argument because it cannot hold, based on the allegations in the Complaint, that Defendants had a permissible purpose in accessing Plaintiff's credit report.  *See Martin*, 2012 WL 3042524, at *1 ("Whether [the defendant] had a permissible purpose for retrieving [the plaintiff's] credit information and whether [the defendant's] purpose was certified pursuant to the FCRA are factual disputes that cannot

be decided at the motion to dismiss stage."); *Norman v. RJM Acquisitions, LLC*, No. 11-
CV-1330, 2011 WL 4376551, at *1 (N.D. Tex. Sept. 20, 2011) ("The complaint does not
effectively concede that [the defendant] had a permissible purpose for accessing [the
plaintiff's] credit report.  Accordingly, without suggesting a view regarding whether [the
defendant] would or would not be entitled to summary judgment, the court denies the
motion to dismiss under Rule 12(b)(6)."); *Aramjoo v. Sallie Mae Inc.*, No. 11-CV-77,
2011 WL 3568903, at *3 (W.D. Mo. Aug. 12, 2011) ("[The d]efendant claims that its
access to [the p]laintiff's credit file was for the permissible purpose of collecting a debt
. . . .  [The p]laintiff has stated in her [c]omplaint that [the d]efendant knew she did not
owe the outstanding debt and thus access to her credit file was impermissible.  Because
the [c]ourt construes the [c]omplaint as true for a [m]otion to [d]ismiss, the [c]ourt cannot
decide the factual question of the [d]efendant's purpose for accessing the credit file.").

### III.  Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion To
Dismiss in part, without prejudice, with respect to Counts II and IV, alleging negligent
violations of the FCRA, and with respect to all Counts against John Doe Defendants, and
denies it in part, with respect to Counts I and III (alleging willful FCRA violations) and
Counts V–VIII (alleging NYFCRA violations), as alleged against Defendants Brown,
Taylor, NLS, and LFG.  The Clerk of Court is respectfully requested to terminate the
pending Motion.  (Dkt. No. 13.)

SO ORDERED.

DATED:      March 31 , 2014
            White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE