**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| Patricia J. Ritchie, | } |
| Plaintiff | }    12 cv 4992 (KBF) |
| v. | } **SECOND** |
| | } **AMENDED** |
| Northern Leasing Systems, Inc., Lease Finance | } **COMPLAINT** |
| Group, LLC, Ricardo Brown, Robert Taylor, Joseph I. | } |
| Sussman, Joseph I. Sussman, P.C., and Jay Cohen, | } JURY TRIAL DEMANDED |
| Defendants | } |

## Nature of the Action

1. This action arises out of Defendants' racketeering scheme to intimidate out-of-state individuals into paying unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court for relatively small sums of money, typically under $10,000.  Defendants were aware well before bringing such actions that the documents underlying Defendants' claims in these lawsuits were forged and/or that Defendants never had a claim.  Nevertheless, Defendants persisted in these small claims proceedings in order to harass, intimidate, and thereby extort money from those victims through threats of expensive long-distance litigation, of damage to credit rating, and/or entry of default judgments. Despite the fact that as early as 2005, a City Civil Court judge (Cooper, J.C.C.) refused jurisdiction on Defendants' boilerplate lawsuits premised on boilerplate forum selection clause because such exercise of jurisdiction effectively deprived litigants from far-off places (such as Ms. Ritchie) of their day in court, Defendants

have continued to commence such proceedings and enter default judgments in that Court.  Worse, they have continued to do so without even apprizing that Court of the adverse ruling of 2005 and/or similar subsequent decisions.

2.     The racketeering scheme at issue also involves Defendants' wilful violations of the credit reporting statutes in order to coerce individuals from far off places to pay unwarranted sums to Defendants.  Ms. Ritchie never had any dealings with Defendants.  Nevertheless, Defendants impermissibly accessed her credit report without even giving her the advance notice required under the statute. Thereafter, Defendants made an adverse entry on her credit report, and wilfully refused to delete that entry even after being alerted to the falsity of their entry.

3.     On these and related grounds, Ms. Ritchie asserts claims under the federal racketeering statute, 18 U.S.C. §1962, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*, ("FCRA"), the New York Fair Credit Reporting Act, N.Y. Gen. Bus. L., §380 *et seq* ("NYFCRA"), and New York's  common law, and seek compensatory, statutory, punitive and/or exemplary damages together with equitable and injunctive relief as well as attorneys' fees and expenses.

## Jurisdiction

4.     Jurisdiction is proper under the federal racketeering statute, 18 U.S.C. §1964(c), under the Fair Credit Reporting Act, 15 U.S.C. §§1681(p), and the principles of supplementary jurisdiction, 28 U.S.C. §1367.  Defendants conducted a racketeering scheme in interstate commerce, and/or violated the credit reporting statutes through the use of the facilities of interstate commerce.

5.     Supplementary Jurisdiction is proper over the State Law claims under 28 U.S.C. §1367.

## Parties

6.     Ms. Patricia J. Ritchie is a resident of Suisun City, California.  Ms. Ritchie is a "consumer" within the meaning of the FCRA, 15 U.S.C. §1681a(c), and NYFCRA, Gen. Bus. L., §380a- (b).

7.     Defendant Northern Leasing Systems, Inc., is a New York corporation with its principal place of business at 132 West 31st Street, New York, New York.  It is ostensibly in the business of originating and servicing micro-ticket leases through itself and through over 100 shell entities.  At all relevant times, it has managed and operated, and continues to manage and operate, itself and all these entities from the same offices in the same business using the same personnel with the same forms working with the same systems and employing the same *modus operandi*.  It exercised complete domination of Defendant Lease Finance Group, LLC, and used such domination to commit the fraud and/or wrongs against Ms. Ritchie which resulted in Ms. Ritchie's injuries at issue.

8.     Defendant Lease Finance Group, LLC, is a Delaware limited liability company authorized to do business in New York.  It is one of the shell entities managed and operated by Defendant Northern Leasing and/or Northern Leasing's principals referred to above.  It is a "pass through" entity with no assets or employees of its own, and is managed, operated, serviced, controlled and dominated by Defendant Northern Leasing.

9.     Defendant Jay Cohen is one of the masterminds of the racketeering enterprise which is the subject of this action ("Enterprise").  At all relevant times, he was and continues to be the principal, an officer, and controlling person of the corporate Defendants, including, without limitation, President and Chief Executive Officer of Defendant Northern Leasing Systems, Inc.   At all relevant times, he received and continues to receive income directly and/or indirectly from the racketeering Enterprise.

10.    Defendant Joseph I. Sussman is an attorney duly admitted to the Bar in New York.  At all relevant times, he commenced and conducted, and continues to commence and conduct, all of the litigation in the New York City Civil Court on behalf of the Enterprise.  At all relevant times, his offices were, and continue to be, part of the Defendants' offices, for the use of which offices he does not pay any rent.  In addition, he received, and continues to receive, a portion of the amounts collected by the Enterprise.  He has, and continues to have, "all encompassing" access to the Enterprise's lease databases at all times.   He used, and continues to use, Defendants' computer system, CCS, as his own litigation management tool.  He is fully integrated with and a wilful, active participant in the Enterprise.  Whenever Defendant Sussman is made a party or subpoenaed as a witness in a lawsuit involving the Enterprise or its business practices, the Enterprise provides him with legal counsel and pays all attorneys' fees and expenses in his defense.  Defendant Sussman has routinely disregarded the decision of Judge Cooper of the New York City Civil Court of 2005, *infra*.  Indeed, in subsequent proceedings

that he commenced in the New York City Civil Court, in which proceedings he asserted jurisdiction over individuals from far-off places based solely on Defendants' boilerplate forum selection clause, he affirmatively concealed Judge Cooper's decision, and even obtained default judgments.

11.     Joseph I. Sussman, P.C., is a professional corporation under New York law with its principal offices at 132 West 31st Street, New York, New York 10001, the same offices as the other Defendants.  It is Defendant Joseph Sussman's law firm and as such, all pleadings and court filings in the New York City Civil Court are under its name and signature.  Defendants Joseph Sussman and Joseph I. Sussman, P.C., are cumulatively referred to herein as the "Sussman Defendants".

12.     Defendant Ricardo Brown is one of the active, wilful participants in the Enterprise which is the subject of this action.  At all relevant times, he was and continues to be a principal, an officer, and controlling person of the corporate Defendants, including, without limitation, the Director of Legal Collections for the Defendants, and an officer of some of the shell entities through which the Enterprise is conducted.  At all relevant times, he was one of the persons who verified complaints filed by the Sussman Defendants in the New York City Civil Court on behalf of the Enterprise.  At all relevant times, he received, and continues to receive, income directly and/or indirectly from the racketeering Enterprise at issue.

13.     Defendant Robert Taylor is one of the active, wilful participants in the Enterprise which is the subject of this action.  He is also a principal, an officer, and

controlling person of the corporate Defendants, including, without limitation, the

Legal Collections Manager for the Defendants, and an officer of some of the shell

entities through which the Enterprise is conducted.  At all relevant times, he was

one of the persons who verified complaints filed by the Sussman Defendants in

the New York City Civil Court on behalf of the Enterprise.  At all relevant times,

he received, and continues to receive, income directly and/or indirectly from the

racketeering Enterprise at issue.

14.    The Individual Defendants, together with certain others, direct, control, and run

the racketeering Enterprise as more fully described below.   Defendants are

ostensibly engaged in the business of leasing small business equipment, mostly

credit card processing machines.  The Individual Defendants worked in concert to

cause the racketeering Enterprise at issue to engage in the misconduct described

in this complaint. In particular, the Individual Defendants each directed

Northern Leasing, Lease Finance Group, and the shell entities to maintain

continuous and systematic contacts with other members of the scheme and

further directed the Enterprise to consummate the unlawful transactions

described herein, and to attempt to enforce non-existent liabilities against Ms.

Ritchie through a misuse of New York's judicial system.  Each of the Individual

Defendants has personally profited personally from those activities.

15.    Defendants are "furnishers of information" within the meaning of the FCRA, 15

U.S.C. §1681s-2, and "users" of consumer credit reports within the meaning of

NYFCRA, Gen. Bus. L., §380a-(I).  At all relevant times, each Defendant was

aware of, and a wilful participant in, the violations of the credit reporting statutes at issue.

## Factual Allegations

- <u>Overview</u>

16.    This case involves the systematic and repeated manner in which Defendants' Enterprise attempted to intimidate, and did intimidate, individuals located around the country in essentially a "shakedown" effort, in common parlance, to bully them into paying the Enterprise monies to which the Enterprise was never entitled.  Based on forged documents, <u>which Defendants knew were forged</u>, the Enterprise sought to intimidate its victims (including, without limitation, Ms. Ritchie and the plaintiffs in the related case pending in this Court, *Angermeir v. Cohen*, 12 CV 55 (S.D.N.Y.)) with dunning letters and phone calls, telling them that it would be more expensive for them to dispute the Enterprise's claims in New York than it would be to pay tribute to the Enterprise.

17.    Obviously, once the Enterprise commenced these legal proceedings, Defendants' victims faced significant hurdles to having their day in court, including additional expenses and inconveniences of long-distance litigation, and multiple trips to New York.  The relatively small amounts at issue would have, as Defendants and other participants in the Enterprise were well aware, prevented these victims from obtaining counsel or from otherwise developing their defense.  Further, the victims' potential witnesses would all be in their respective local areas, quite far from the New York City Civil Court.  Defendants' entire scheme was designed to

ensure that their victims had no real opportunity to raise defenses to the Enterprise's bogus lawsuits, so that the entry of a default judgment was all but certain.  In fact, an overwhelming majority of the lawsuits brought by the Sussman Defendants on behalf of the Enterprise resulted in default judgments in the New York City Civil Court.

18.   As this Court is well aware, once a judgment is entered in the New York City Civil Court, it would be almost impossible for the judgment-debtor to challenge the Enterprise in subsequent judgment enforcement actions without incurring costs far in excess of the judgment itself.  Had the Enterprise filed the suits in the victims' home locations to enforce its alleged claims, the victims would have been able to present evidence of what really transpired, and establish the bogus nature of the Enterprise's claims in a local court, either through an attorney or by themselves.

19.   Moreover, Defendants accessed, without any notice to their victims, such victims' personal consumer credit reports from credit reporting agencies at will.  This was violative of the credit reporting statutes.

20.   Further, the very entry of judgment in New York City Civil Court is automatically reported as an adverse entry in the victims' respective personal consumer credit reports.  This has significant impact on credit availability to the victims, including without limitation, denial of credit opportunities, increase in interest rates, and diverse other consequences.

21.   As shown below through the facts concerning Ms. Ritchie, the repeated nature of the manner in which Defendants acted and their wrongful behavior set the pattern and practice of a racketeering scheme unlawful under both federal and state law.

-   <u>Facts Concerning Ms. Ritchie</u>

22.   Between 2007 and 2009, Ms. Ritchie operated a legal document preparation service under California law.

23.   Sometime in October of 2008, Ms. Ritchie's business leased a point-of-sale machine from a company called "Merchant Made Easy."   For this purpose, she submitted a voided check, and a signed Merchant Processing Application to Merchants Made Easy.  Ms. Ritchie did not sign any other agreements, contracts, guarantees or other commitments in connection with that transaction.

24.   Subsequently, Ms. Ritchie was diagnosed with breast cancer, and had to undergo treatment therefor, including several surgeries.  She closed the business and returned the machine to Merchant Made Easy.

25.   In April of 2010, Defendants commenced harassing Ms. Ritchie.  They called her repeatedly, rudely demanding payments under an alleged lease.  Ms. Ritchie categorically informed Defendants that she had never signed any lease with them, and demanded that they stop the harassment.  Nevertheless, Defendants' abusive calls continued mercilessly.  Defendants made over 200 such abusive phone calls to Ms. Ritchie within a span of a few weeks.

26.     Further, Defendants, under the name of Defendant Lease Finance Group, LLC, accessed Ms. Ritchie's consumer credit report on or about August 20, 2010 and December 8, 2010.  Defendants never provided any advance or written notice to Ms. Ritchie that they intended to pull her consumer credit report, or that such pulling was even a possibility.

27.     On or about February 16, 2011, Defendants, under the name of Defendant Lease Finance Group, LLC, commenced a lawsuit against Ms. Ritchie in the New York City Civil Court.

28.     Ms. Ritchie filed a *pro se* answer and stated, under penalties of perjury, that she never had any business or any dealings with Lease Finance Group, LLC, and that her signature had been forged in the alleged lease.  She subsequently had to retain attorneys in New York to defend herself against these bogus claims.[1]

29.     On or about August 31, 2010, Defendants, under the name of Defendant Lease Finance Group, LLC, made an adverse entry on Ms. Ritchie's consumer credit report with the credit reporting agency Experian.  Defendants reported that they had "charged off" $1,836, which Ms. Ritchie allegedly owed."

30.     On or about April 3, 2012, Ms. Ritchie disputed this adverse entry with the credit reporting agency Experian, and demanded that Defendants investigate and rectify the inaccurate entry.  Upon information and belief, Experian duly notified Defendants of Ms. Ritchie's request.

---

[1]That action is pending.

31.    Defendants wilfully failed and refused to conduct any investigation.  Although Ms. Ritchie had categorically asserted, under penalties of perjury, that her signatures had been forged in the alleged lease underlying Defendants' claim, Defendants did not even bother calling her by phone, or writing to her, or communicating with her in any manner in this connection.  Instead, they summarily - and falsely - reported back to Experian that they had "verified" the alleged loan to Ms. Ritchie.  Defendants' adverse entry is scheduled to continue on Ms. Ritchie's consumer credit report for at least seven years.

32.    Defendants did not have any authority to access or make any entry in Ms. Ritchie's credit report.

33.    Defendants knew or ought to have known that Ms. Ritchie had no account with them, and did not owe Defendants anything.

34.    Defendant Taylor signed and verified the complaint in the New York City Civil Court false asserting that Ms. Ritchie had duly executed that lease.  Defendant Taylor, as Defendants' Legal Collections Manager, has persisted in that lawsuit, despite Ms. Ritchie's categorical assertions, under penalties of perjury, that the lease was forged, and despite Defendants' lack of any evidence to contravene the said assertions.  Further, Defendant Taylor was actually or constructively responsible for the impermissible access as well as wrongful refusal to remove the adverse credit entry from Ms. Ritchie's credit report.  These actions were beyond the scope of his employment.  Commission of fraud and wilfully violating the law

as detailed in this complaint was beyond the scope of Defendant Taylor's legitimate employment responsibilities.

35.     Defendant Brown, as Defendants' Legal Recovery Manager, was responsible for Defendants' impermissible access as well as wilful failure/refusal to investigate Ms. Ritchie's dispute raised with Experian.  Despite Ms. Ritchie's categorical assertions, under penalties of perjury, that the lease was forged, Defendant Brown confirmed the false information that Defendants had provided to the credit reporting agency about Ms. Ritchie.  These actions were beyond the scope of his employment.  Commission of fraud and wilfully violating the law as detailed in this complaint was beyond the scope of Defendant Taylor's legitimate employment responsibilities.

Defendants' Wilfulness, Ms. Ritchie' Injuries

36.     Defendants' accessing of Ms. Ritchie' credit records, and making a  wrongful adverse report to credit reporting agencies, was wilful and malicious.

37.     Ms. Ritchie suffered, and continues to suffer, actual and real monetary injury as a direct result of Defendants' aforesaid misconduct.  These injuries include, without limitation, loss of credit expectancy of at least $15,000; loss of time spent of at least $27,000; reduction in value of life of at least $780,000; out-of-pocket expenses of at least $3,350; in addition to mental anguish, emotional distress, aggravation, annoyance, embarrassment, and fear of aggravation of medical problems.

38.    These injuries were attributable to each of the Defendants, and to Defendant Northern Leasing's complete domination of Lease Finance Group, LLC.  Ms. Ritchie is entitled to compensatory and punitive damages therefor, together with attorneys' fees and expenses.

## COUNT I

### (RICO, 18 U.S.C. §1962(c))

39.    The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.  Ms. Ritchie also incorporates the contents of the Proposed Second Amended Complaint dated October 21, 2014, served in the *Angermeir v. Cohen*, 12 CV 0055 (KMK) in this Court.

40.    The association of Defendants and others whose identities are known only to Defendants at this time (cumulatively, the "Conspirators"), constituted an Enterprise within the meaning of 18 U.S.C. §1961(c), which Enterprise was engaged in, and whose activities affected, interstate and foreign commerce.  This Enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged here.

41.    Each Defendant is a person within the meaning of 18 U.S.C. §1961(3) and separate from the Enterprise.

42.    Defendant Cohen, the President of the Defendant Northern Leasing and officer of some of the other related corporate shell entities, was in charge of all its day-to-day operations.  As such, he was one of the masterminds of the Enterprise who set up, orchestrated, and supervised the entire racketeering scheme at issue.

While he and the other Conspirators acted through various corporate entities, they functioned from the same business premises, with the same staff, in the same ostensible business, with the same standard form lease and the same *modus operandi.*

43.    Defendant Ricardo Brown is one of the wilful, active participants in the Enterprise which is the subject of this action.  He is the Director of Legal Collections for the Defendants, and an officer of some of the shell entities through which the Enterprise is conducted.  He was one of the persons who verified many fraudulent complaints filed by the Sussman Defendants in the New York City Civil Court on behalf of the Enterprise**.**

44.    Defendant Robert Taylor is a wilful, active participant in the Enterprise which is the subject of this action.  He is the Legal Collections Manager for the Defendants, and an officer of some of the shell entities through which the Enterprise is conducted.  He was one of the persons who verified many fraudulent complaints filed by the Sussman Defendants in the New York City Civil Court on behalf of the Enterprise**.**

45.    Defendant Joseph I. Sussman is an attorney duly admitted to the Bar in New York.  Since late 2002, and continuing to date, he commences and conducts all of the litigation in the New York City Civil Court on behalf of the Enterprise.

46.    The remaining Defendants are corporate entities, through which the Enterprise functioned, and through which the underlying racketeering scheme was carried out.

47.    Defendants' *scienter* is established from their pattern and practices at issue and the centrality of these practices to their entire business.  As the New York Court of Appeals observed while upholding fraud claims against Defendant Cohen and others, "As alleged, the fraud in this case was not an isolated incident, but rather a nationwide scheme that took place over a number of years."  *Pludeman v. Northern Leasing Systems, Inc.*, 10 N.Y.3d 486, 493 (2008).  Moreover, Defendants continued their misconduct nonchalantly.

48.    Defendants' *scienter* may also be inferred from the fact that the scheme at issue has continued despite several racketeering and class actions in various courts throughout the country impugning Defendants' deceptive business practices over the past several years, which actions are still pending as of today.[2]  In one such action, for example, the New York Court of Appeals, the highest court of the State of New York, held that Defendants' systematic deception warranted an inference of fraud "against the corporate officers in their individual capacity . . ." *Pludeman*, 10 N.Y.3d at 493.  Defendants knew, or should have known, of that pronouncement and taken affirmative steps to stop filing these fraudulent lawsuits in the New York City Civil Court.

---

[2]For example, the Attorney General of the State of New York commenced a lawsuit in New York Supreme Court, New York County, on April 23, 2012, asserting that Defendant Northern Leasing and its affiliates had been engaged in a fraudulent scheme to collect over $10 million from lessees under long-expired leases under false representations.  <u>People of the State of New York v. SKS Associates, et al</u>, 400908/2012 (N.Y. Sup. N.Y. Co.) (Donna Mills, J.S.C.).  Defendants settled that action by repaying all sums collected (full restitution), in addition to $575,000 in costs, penalties and fees to the Attorney General.  Order of Feb. 28, 2013.

49.     Further, at least since 2005, in those rare cases where the small businesspersons from far away places did raise challenges in the New York City Civil Court, judges refused to enforce Defendants' consent to jurisdiction and/or forum selection clauses whereunder they have been dragging small businesspersons from far off places to New York courts.  As one judge held:

> It is apparent that [Defendant Northern Leasing's] suit in New York, approximately 1600 miles away from where defendant lives and works, puts defendant at a significant disadvantage in defending herself.  From the numerous cases that it has presided over, this court is aware of the boiler-plate provision in [Defendant Northern Leasing's] lease agreement to justify proceeding against an out-of-state resident in New York. "To allow [Defendant Northern Leasing] to do so is to effectively deprive litigants [such as defendant] of their day in court."  *Northern Leasing Systems, Inc. v. Soumastre*, Civ Ct, N.Y. Cty, January 26, 2005, Cooper, J., Index No. 13566/03

*Northern Leasing Sys., Inc. v. Walton*, CV049136/02NY, 2012 WL 2466977 (N.Y. Civ. Ct. June 25, 2012).  It merits emphasis that the *Soumastre* decision was of 2005, some seven years earlier, during which time Defendants continued filing these boilerplate lawsuits.

50.     The Sussman Defendants were Defendants' attorneys in each of those cases.  Thus, the Sussman Defendants knew at least since 2005 that judges in the New York City Civil Court had refused to exercise jurisdiction in New York over the lawsuits brought by the Enterprise, and that commencing such boilerplate lawsuits here were, according to New York courts, attempts to deprive Ms. Ritchie and others of their day in court, *i.e.*, violative of elementary Due Process.

51.     Nevertheless, the Sussman Defendants have commenced and continued to
commence these lawsuits in New York City Civil Court, presumably in the hopes
of default judgments, without informing that Court in such subsequent lawsuits
of these precedents refusing jurisdiction.  The Sussman Defendants, as attorneys
duly admitted to the Bar in New York State, have a duty of candor to the Court,
and are obligated to inform the Court of decisions such as those cited above.
Instead, they have continued to file their boilerplate complaints with boilerplate
verifications by Defendants as before.

52.     Each Defendant knew, or should have known, of all these legal proceedings, and
the decisions therein.  Nevertheless, they have continued their lucrative
racketeering Enterprise.

53.     Defendants participated, and conspired with others (including others whose
identities are known only to Defendants at this time) to participate, in the affairs
of the aforementioned Enterprise through a pattern of racketeering activity, as
more fully set forth below, all in violation of 18 U.S.C. §§ 1962(c)).

Mail Fraud, Violations of 18 U.S.C. §1341

54.     Defendants and the other members of the enterprise, having devised or intending
to devise the scheme or artifice to defraud, and/or for obtaining money or
property by means of false or fraudulent pretenses, representations, or promises,
for the purpose of executing such scheme or artifice or attempting so to do,
placed in post office(s) or authorized depository for mail matter, several letters
and/or packages to be sent or delivered by the Postal Service, and/or took or

received therefrom, letters and/or packages, or knowingly caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it was directed to be delivered by the addressee such letters and/or packages. Specifically,

a.   On or about April 15, 2011, Defendants in New York caused the mailing, through the use of interstate mails, of a summons and complaint to Ms. Ritchie in California, which complaint contained the false assertions detailed elsewhere in this complaint;

b.   On or about March 23, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota;

c.   On or about November 6, 2009, Defendants in New York, using the letterhead reflecting an Illinois address, caused the mailing, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding payment;

d.   On or about April 8, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that

she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota;

e.      On or about April 16, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota;

f.      On or about May 3, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota.  Indeed, Defendants even expressly threatened continued injury to Ms. Ritchie by making adverse entries in her consumer credit report;[3]

g.      On or about May 17, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be

---

[3]**"Each day that passes your personal Credit Rating suffers from this delinquency."**  Emphasis in original.

sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota.  Indeed, Defendants even taunted Ms. Ritchie about continuing their abusive phone calls and dunning communication;[4]

h.      On or about June 1, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota.  Once again, Defendants taunted Ms. Ritchie about their continuing abusive phone calls and dunning communication;[5]

i.      On or about September 1, 2010, Defendants in New York caused the mailing, using a letterhead reflecting an Illinois address, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and demanding that payment be sent to Defendant Lease Finance Group at a post box number in Sioux Falls, South Dakota.  Defendants once again threatened Ms. Ritchie with

---

[4]"Why are you making this so difficult? **Could it be that you enjoy receiving numerous telephone calls, messages, reminders and invoices about the Past Due balance on your equipment lease?**" Emphasis added.

[5]". .you can put an end to the letters and phone calls simply by picking up the phone and calling us Toll Free at 1-866-781-0411 and making your Lease Payment by check or major Credit Card.."

continuing injury by making adverse entries in her consumer credit report;[6]

j.      On September 9, 2010, Defendants, Defendants in New York caused the mailing, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and threatening to commence "legal proceedings" and seeking to hold her liable even for collection costs of judgment;[7] and

k.      On or about October 11, 2010, Defendants in New York caused the mailing, through the use of interstate mails, of a letter to Ms. Ritchie in California falsely asserting that she owed them money under a "lease" and repeating the threats aforesaid.

55.   Defendants made or caused to be made, through the use of interstate mail, several other mailings consistent with the misrepresentations detailed above.

56.   Each participant knew, expected, reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

57.   The Conspirators, wilfully and with intent to mislead, concealed the material facts from the New York City Civil Court and from Ms. Ritchie as referred to above.

---

[6]"Please be advised that **_your delinquency has been reported to the Credit Bureau as a chargeoff or collection account_** and will be reflected on your credit report."

[7]"you may be held liable for additional costs to enforce the Judgment in your state, such as placing a lien on real or personal property, Local Docketing, Wage Garnishment and Bank Restraints."

58.    The material misrepresentations were made by Conspirators to the New York City
       Civil Court concerning Ms. Ritchie, and to Ms. Ritchie in California.

59.    The New York City Civil Court, and Ms. Ritchie relied upon Defendants'
       misrepresentations, and such reliance was reasonable.

60.    Defendants' perjurious misconduct was a fraud on the court and on Ms. Ritchie.

<u>Wire Fraud, Violations of 18 U.S.C. §1343</u>

61.    Defendants and the other Members of the enterprise, having devised or intending
       to devise the scheme or artifice to defraud, and/or for obtaining money or
       property by means of false or fraudulent pretenses, representations, or promises,
       for the purpose of executing such scheme or artifice or attempting so to do, made
       phone calls with the use of interstate wires, and/or transmitted by means of
       interstate wire directives to various Automated Clearing Houses to deduct monies
       from accounts of lessees that Defendants knew they were not entitled to, and/or
       electronically accessed and pulled Ms. Ritchie's consumer credit report from
       credit reporting agencies. For example,

       a.    On or about October 13, 2008, Defendants' agent in California, through
             the use of interstate wires, sent a fax to Defendants in New York;

       b.    On or about December 10, 2008, Defendants, through the use of interstate
             wires, pulled Ms. Ritchie's consumer credit report from a consumer
             reporting agency;

c.      On or about August 8, 2010, Defendants, through the use of interstate wires, pulled Ms. Ritchie's consumer credit report from a consumer reporting agency;

d.      On or about August 20, 2010, Defendants, through the use of interstate wires, pulled Ms. Ritchie's consumer credit report from a consumer reporting agency;.

e.      On or about February 7, 2011, Defendants, through the use of interstate wires, pulled Ms. Ritchie's consumer credit report from a consumer reporting agency;

f.      On or about May 5, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof;

g.      On or about April 13, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof;

h.      On or about April 8, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof;

i.     On or about March 21, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof;

j.     On or about March 8, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof; and

k.     On or about February 28, 2011, Defendants in New York, through the use of interstate wires, made a phone call to Ms. Ritchie in California and left a message falsely asserting that Ms. Ritchie owed money to Defendants under an alleged lease and demanding payment thereof.

62.   Defendants, in the same manner through the use of interstate wires, made dunning telephone calls to abuse, intimidate, and threaten Ms. Ritchie on over 200 other occasions.  The details of each of these phone calls is readily available from Defendants' records and recordings.

63.   Defendants, in the same manner through the use of interstate wires, electronically accessed the consumer credit reports of each Ms. Ritchie on numerous other occasions.  The details of each of these electronic accesses are readily available from Defendants' records and recordings.

64.   Defendants, in the same manner through the use of interstate wires, electronically deducted money from the bank accounts of businesses controlled

by Ms. Ritchie.  The details of each of these electronic deductions is readily available from Defendants' records and recordings.

65.  Each participant knew, expected, reasonably foresaw, and intended that the facilities of the interstate wires affecting interstate commerce would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

66.  The Conspirators wilfully and with intent to mislead concealed material facts, and made affirmative misrepresentations of material facts to Ms. Ritchie.

67.  Ms. Ritchie relied upon Defendants' misrepresentations, and such reliance was reasonable.

Extortion Under The Hobbs Act, 18 U.S.C. §1951

68.  Defendants had and implemented a practice and pattern of starting bogus legal proceedings based on false representations, and solely for the purpose of injuring Ms. Ritchie and recovering unwarranted sums through extortion.

69.  For this purpose, Defendants affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.  Ms. Ritchie "unconditionally guaranteed all of the Lessee's obligations to" Defendant Lease Finance;

b.  Ms. Ritchie's business, Divorce Document Assistance, "entered into an Equipment Finance Lease" with Defendant Lease Finance and Ms. Ritchie "personally guaranteed" payments under the lease;

c.  Ms. Ritchie "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Ms. Ritchie to Defendant Lease Finance the sum of $1,836 with interest thereon from February 11, 2010; and

e.   There "is due and owing" from Ms. Ritchie to Defendant Lease Finance attorneys' fees of "no less than $367.20."

70.   These representations were part of Defendants' standard form, boilerplate complaints filed in the New York City Civil Court.  These representations were verified by Defendant Taylor as detailed earlier, abundantly establishing concerted action and conspiracy.

71.   Defendants knew, and should have known, that the above representations were false when made.  Defendants' knowing fraud upon, and/or their intentional misrepresentations to, the New York City Civil Court deprived the litigation of its legitimacy.

72.   Nevertheless, Defendants commenced actions in The New York City Civil Court with the aforesaid false statements.  Based upon such actions, they attempted to extort undeserved sums of money from Ms. Ritchie.

73.   Thereby, Defendants used wrongful means for a wrongful objective, with an intent to obtain that which in justice and equity Defendants were not entitled to, and knew that they were not entitled to, receive.

74.   Defendants affected interstate commerce by extortion and/or attempted or conspired so to do.

75.    Defendants attempted to extort property from each Ms. Ritchie, with each Ms. Ritchie's consent, induced by wrongful use of actual or threatened fear of economic loss and/or injury.  Such loss or injury included, without limitation, legal expenses in long-distance litigation, damage to credit rating, and/or entry of default judgments, and freezing of bank accounts.

Extortion Under New York Law

76.    Ms. Ritchie incorporates the aforesaid allegations herein by reference.

77.    Defendants intended to deprive Ms. Ritchie of property or to appropriate the same to themselves.  They wrongfully took or obtained, or attempted to take or obtain, such property from each Ms. Ritchie.

78.    Defendants wrongfully attempted to take such property by compelling or inducing Ms. Ritchie and other persons to deliver such property to Defendants. They did so by attempting to induce a fear that, if the property is not so delivered, Defendants would cause damage to Ms. Ritchie' property, or engage in other conduct constituting a crime, or testify or provide false information with respect to Defendants' legal claim.

79.    Thereby, Defendants committed the offense of extortion under New York's Extortion Act, N.Y. Penal Law, §155.05.

80.    Defendants' extortions are chargeable under New York law and punishable by imprisonment for more than one year.  As such, they constitute predicate racketeering acts under 18 U.S.C. §1961.

Pattern of Racketeering Activity

81.  The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events.  The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned Conspirators from January 1998, and continuing to date, to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof.  That pattern included multiple predicate acts of extortion, mail fraud, and wire fraud.

82.  The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they: (a) were in furtherance of a common goal, including the goal of profiting illegally by improperly commencing or threatening fraudulent litigation, by improperly threatening to ruin consumer credit scores, and by improperly making adverse entries in consumer credit reports; (b) used similar methods and standard form letters to intimidate; (c) had similar participants; and (d) had similar victims.

83.  The acts of racketeering activity extended over a substantial period of time from January 1998, and continue to this day.  They were sufficiently continuous to form a pattern of racketeering activity.

84.  Defendants participated in the scheme through themselves, and, in the case of the corporate Defendants, their representatives, salesmen, employees and officers, and others whose identities are known only to Defendants at this time.

Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully.  The Conspirators knew, enabled, and actively participated in the racketeering scheme.

85.   Defendants engaged in a pattern of racketeering activity consisting of extortion, mail fraud and wire fraud.  The predicate acts occurred over a period of well over 6 years.  Defendants received income from these patterns in the form of unwarranted payments.  Defendants disbursed these funds amongst themselves in a manner known only to them.

86.   Each Defendant's participation was critical to the racketeering scheme.  Each Defendant enabled, conducted, maintained, aided, and abetted the racketeering scheme by:

    a.   Drafting and preparing letters, "Important Notices," Verified Complaints, false affidavits, and other documents;

    b.   Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

    c.   Concealing the scheme or, alternatively, consciously avoiding discovery of the scheme;

    d.   encouraging third parties to participate in the racketeering scheme;

    e.   wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, and the misuse of the judicial system;

f.   Wilfully violating or being recklessly indifferent to their legal obligations to verify the validity of the alleged lease agreements;

g.   Wilfully violating or being recklessly indifferent to their legal obligations to conduct a reasonable investigation into allegations of forgery by Ms. Ritchie and other victims; and

h.   Wilfully violating or being recklessly indifferent to their legal obligations to conduct "due diligence" with respect to the accounts at issue.

87.   The precise role played by each Defendant is known only to Defendants at this time.  Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendants.

88.   Ms. Ritchie has been injured in their business or property by reason of Defendants' violation of 18 U.S.C. §1962(c).  As a direct and proximate result of these violations, Ms. Ritchie has been injured in that, <u>inter alia</u>, their business accounts were debited wrongfully, and they had to waste time and resources in responding to Defendants's dunning calls, threats, and lawsuit in New York; in retaining lawyers and incurring legal expenses therefor.  In addition, Ms. Ritchie' consumer credit rating has also been adversely affected, and they have suffered damages as detailed above.

89.   By reason of this violation of 18 U.S.C. §1964(c), Ms. Ritchie are entitled to recover from Defendants three times their damages plus pre- and post- judgment interest, costs and attorneys' fees.

## COUNT II

### (Violation of 18 U.S.C. § 1962(d))

90.   The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

91.   In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than January 1998 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above.  The volume and frequency of the transactions, and the continuance of the scheme at issue for over 14 years, could not have occurred without the consent and knowing connivance of Defendants and other Conspirators.

92.   As part of and in furtherance of their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering.  Further, each Defendant's actions are attributable to the other Defendants.

93.   None of the Defendants have withdrawn, or otherwise dissociated themselves from the conspiracy at issue or the other Conspirators.  Defendants have also

continued filing of perjurious affidavits under oath, showing the continuance of this conspiracy till today.

94.  Ms. Ritchie has been injured in business or property by reason of Defendant's violations of 18 U.S.C. S 1962(d).

95.  As a direct and proximate result of each Defendant's violations, Ms. Ritchie has been injured as aforesaid.

96.  By reason of Defendants's violation of 18 U.S.C. §1964(d), Ms. Ritchie are entitled to three times their damages plus interest, costs and attorneys' fees.

**Count III**

(Fair Credit Reporting Act, Section 1681b(f):

Willfully Obtaining Consumer  Reports Without A Permissible Purpose)

97.  Ms. Ritchie realleges and incorporates the preceding paragraphs.

98.  Defendants willfully violated the FCRA by obtaining Ms. Ritchie's consumer credit report without her permission and without having a  permissible purpose therefor.

99.  Defendants Brown and Taylor conducted the business activities (on behalf of all Defendants) through repeated illegal accesses of Ms. Ritchie's consumer reports and the information contained therein, as described above.

100.  These illegal acts affected Ms. Ritchie and a large number of unwitting consumers and persisted over at least a five year period, evidencing a pattern of Defendants' willfully violating the provisions of the FCRA.

101. Defendants' acts in obtaining this information in willful  violation of the FCRA without a permissible purpose violate 15 U.S.C. §1681b(f).

102. As a result of Defendants' aforesaid misconduct, Ms. Ritchie has sustained damages for which Defendants are liable, in addition to attorneys' fees and expenses, 15 U.S.C. §1681n(a).

## Count IV

((Fair Credit Reporting Act, Section 1681b(f):

Negligently Obtaining Consumer  Reports Without A Permissible Purpose)

103. This count is asserted in the alternative to Count III above.

104. Ms. Ritchie realleges and incorporates the preceding paragraphs.

105. Defendants violated the FCRA by negligently obtaining  Ms. Ritchie's consumer credit report without her permission and without having a  permissible purpose therefor.

106. Defendants Brown and Taylor conducted the business activities (on behalf of all Defendants) through repeated illegal accesses of Ms. Ritchie's consumer reports and the information contained therein, as described above.

107. These illegal acts affected a large number of unwitting consumers  and persisted over at least a five year period, evidencing a pattern of Defendants'  negligently violating the provisions of the FCRA.

108. As a result of Defendants' aforesaid misconduct, Ms. Ritchie has sustained actual damages for which Defendants are liable, in addition to attorneys' fees and expenses under 15 U.S.C. §1681o.

**Count V**

(Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(A) -

Wilful Refusal/Failure to Investigate and/or Rectify Error In Reporting)

109.    Ms. Ritchie realleges and incorporates the preceding paragraphs.

110.    Defendants were informed by the credit reporting agencies that Ms. Ritchie
disputed the accuracy of the information Defendants had provided to credit
reporting agencies.  Defendants willfully failed  to conduct a proper investigation,
as required by 15 U.S.C. §1681s-2(b)(A), of Ms. Ritchie's dispute that Ms. Ritchie
was not liable for the account appearing on her credit report.

111.    Defendants willfully failed, neglected and/or refused to review all relevant
information purportedly provided by such credit reporting agencies to
Defendants in conducting their investigation, as required by 15 U.S.C.
§1681s-2(b)(B).

112.    Defendants' failure/refusal to direct such consumer reporting agencies to delete
inaccurate information about Ms. Ritchie pertaining to their respective accounts
as required by 15 U.S.C. §1681s-2(b)(C) was wilful.

113.    Defendants Brown and Taylor conducted the business activities (on behalf of all
Defendants), as described above.

114.    Defendants are liable to Ms. Ritchie for the actual damages sustained by reason of
their violation of the FCRA, in an amount to be determined  by the trier of fact,
together with an award of punitive damages in an amount to  be determined by

the trier of fact, as well as reasonable attorney's fees and expenses pursuant to 15 U.S.C. § 1681n.

## Count VI

(Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(A):

Negligent Refusal/Failure to Investigate and/or Rectify Error In Reporting)

115.    This count is asserted in the alternative to Count V above.

116.    Ms. Ritchie realleges and incorporates the preceding paragraphs.

117.    After being informed by the credit reporting agencies that Ms. Ritchie disputed the accuracy of the information that Defendants had provided to a credit reporting agency, Defendants negligently failed to conduct a proper investigation of their dispute, as required by 15 U.S.C. §1681s-2(b)(A).

118.    Defendants negligently failed to review all relevant information adequately in conducting their investigation, as required by 15 U.S.C. §1681s-2(b)(B).

119.    Defendants negligently failed to direct such consumer reporting agencies to delete inaccurate information about Ms. Ritchie, as  required by 15 U.S.C. § 1681s-2(b)(C).

120.    Defendants Brown and Taylor conducted the business activities (on behalf of all Defendants), as described above.

121.    Defendants are liable to Ms. Ritchie for the actual damages sustained by reason of the aforesaid misconduct, together with reasonable attorney's fees and expenses, 15 U.S.C. §1681o.

## Count VII

(New York Fair Credit Reporting Act, GBL, Section 380-b:

Willfully Obtaining Consumer  Reports Without A Permissible Purpose,

Without Giving Requisite Advance Notice And/Or Under False Pretenses)

122.    Ms. Ritchie realleges and incorporates the preceding paragraphs.

123.    Defendants willfully violated the NYFCRA by obtaining Ms. Ritchie's consumer credit reports without her permission and without having a  permissible purpose therefor, and/or under false pretenses.

124.    Further, Defendants wilfully failed and neglected to inform Ms. Ritchie in writing, before accessing her consumer report, that Defendants would request a consumer report and/or that they would inform her of the name and address of the consumer reporting agency that furnished the report.

125.    Defendants Brown and Taylor conducted the business activities (on behalf of all Defendants), through repeated illegal accesses of consumer reports  and the information contained therein, as described above.

126.    These illegal acts affected Ms. Ritchie and a large number of unwitting consumers and persisted over at least a five year period, evidencing a pattern of Defendants willfully violating the provisions of the NYFCRA.

127.    Defendants' acts in obtaining this information in willful  violation of the NYFCRA without a permissible purpose violate N.Y. Gen. Bus. L., §380-b, which is actionable under Section 380-l thereof.

128.    As a result of Defendants' aforesaid misconduct, Ms. Ritchie has sustained

damages for which Defendants are liable.

## Count VIII

(New York Fair Credit Reporting Act, Section 380-b -

Negligently Obtaining Consumer  Reports Without A Permissible Purpose

And Without Giving Advance Notice And/or Under False Pretenses)

129.    This count is asserted in the alternative to Count VII above.

130.    Ms. Ritchie realleges and incorporates the preceding paragraphs.

131.    Defendants violated the NYFCRA by negligently obtaining Ms. Ritchie's

consumer credit reports without her permission and without having a

permissible purpose therefor.

132.    Further, Defendants failed and neglected to inform Ms. Ritchie in writing, before

accessing her consumer report, that Defendants would request a consumer report

and/or that they would inform her of the name and address of the consumer

reporting agency that furnished the report.

133.    Defendants Brown and Taylor conducted the business activities (on behalf of all

Defendants), through repeated illegal accesses of consumer reports  and the

information contained therein, as described above.

134.    These illegal acts affected Ms. Ritchie and a large number of unwitting consumers

and persisted over at least a five year period, evidencing a pattern of Defendants'

negligently violating the provisions of the NYFCRA.

135. Defendants' actions were in violation of the NYFCRA, Gen. Bus. L., §380-b, which is actionable under Section 380-m.

136. As a result of Defendants' aforesaid misconduct, Ms. Ritchie has sustained damages for which Defendants are liable.

### Count IX

(New York Fair Credit Reporting Act, Gen. 9258Bus. L., §380-l -

Wilful Reporting of False Information and/or Refusal/Failure to

Investigate and/or Rectify Error In Reporting)

137. Ms. Ritchie realleges and incorporates the preceding paragraphs.

138. Defendants knowingly and wilfully introduced or caused to be introduced false information concerning Ms. Ritchie into the files of consumer reporting agency or agencies in violation of Section 380-o, G.B.L.  Even after being informed by the credit reporting agencies that Ms. Ritchie disputed the accuracy of the information provided to credit reporting agencies, Defendants willfully refused to retract such false information, or even investigate Ms. Ritchie's assertions that the information Defendants had provided to the credit reporting agency was false.

139. Defendants are liable to Ms. Ritchie for the actual damages sustained by reason of their violation of the FCRA, together with an award of punitive damages in an amount to  be determined by the jury, as well as her reasonable attorney's fees and expenses, pursuant to New York Fair Credit Reporting Act, Gen. Bus. L., §380-l.

## Count X

### (New York Fair Credit Reporting Act, Gen. Bus. L., §380-m -

### Negligent Refusal/Failure to Investigate and/or Rectify Error In Reporting)

140.   This count is asserted in the alternative to Count IX above.

141.   Ms. Ritchie realleges and incorporates the preceding paragraphs.

142.   Defendants introduced or caused to be introduced false information concerning Ms. Ritchie into the files of consumer reporting agency or agencies in violation of Section 380-o, G.B.L.  Even after being informed by the credit reporting agencies that Ms. Ritchie disputed the accuracy of the information provided to credit reporting agencies, Defendants failed and neglected to retract such false information, or even investigate Ms. Ritchie's assertions that the information Defendants had provided to the credit reporting agency was false.

143.   Defendants are liable to Ms. Ritchie for the actual damages sustained by reason of the aforesaid misconduct, together with her reasonable attorney's fees, N.Y. Gen. Bus. L., §380-m.

## COUNT XI

### (N.Y. General Business Law Article 22-A)

144.   Ms. Ritchie incorporates the contents of the paragraphs hereinabove.

145.   Ms. Ritchie was and is a "consumer" for purposes of consumer protection statutes.

146.   Defendants, in their attempts to bully and intimidate Ms. Ritchie into

paying tribute to Defendants, pulled Ms. Ritchie' consumer credit reports,

and wilfully violated consumer credit reporting statutes as described

above.

147.   Defendants' unauthorized pulling of Ms. Ritchie' consumer credit reports

was in accordance with their systematic practice and procedure.  As clear

from deposition testimony in other cases, Defendants had and

implemented a routine practice of automatic pulling consumer credit

reports of consumers, without authority and without giving the statutorily

mandated notice.  Defendants thus pulled consumer credit reports

thousands of times every month in wilful violation of the credit reporting

statutes.

148.   Indeed, Defendants' computer systems were set up so that such pulling

was done automatically, without any regard to the constraints of federal

and/or state credit reporting statutes.  Defendants authorized,

empowered, and enabled many of their employees to pull consumer credit

reports, but never bothered giving any training or instructions to such

employees on the constraints imposed by these statutes or the permissible

purposes for which such consumer credit reports could be pulled.  Even

Ms. Krieger, who headed and supervised Defendants' originations

department and as such, set and implemented policies and procedures

therefor, admitted in sworn testimony that she knew nothing about the

requirements of credit reporting statutes, and that she did nothing to apprize herself of such requirements. Indeed, Defendants did not even *have* a reference manual concerning pulling consumer credit reports. Consumer credit reports, which have been long considered important enough to be the specific subject of federal as well as New York legislation, were free game for Defendants.

149. Defendants have always been well aware that such pulling of consumer reports inflicts injury on the consumer by lowering the individual's credit score. By pulling Ms. Ritchie' consumer credit reports, Defendants inflicted injury on Ms. Ritchie.

150. Further, Defendants nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements. Even after the New York City Civil Court rejected jurisdiction because it would deprive Defendants' victims of their day in Court, Defendants nonchalantly continued commencing and prosecuting such lawsuits, and obtaining default judgments, so that such judgments would be reported in Defendants' victims' consumer credit reports. Litigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability. For Defendants and their Conspirators to concoct testimony or make false statements under oath even after they

know it is wholly fabricated and baseless is an unacceptable fraud on the court.  Based on such false testimony, Defendants procured default judgments against consumers, including some Ms. Ritchie herein.

151.   Defendants' automatic pulling of consumer credit reports, and trashing of consumer credit reports, filing of bogus lawsuits in the New York City Civil Court, and making dunning repetitious phone calls to extract tribute were deceptive and/or unfair practices which affected, and continues to affect, the public at large.

152.   Defendants committed these deceptive acts or practices in the conduct of business in New York.  Their conduct was unlawful and of a recurring nature, and strongly affected the public interest.  By their conduct aforesaid, Defendants violated Article 22-A (Section 349) of New York's General Business Law.

153.   Ms. Ritchie sustained damages due to Defendants' violation.  Accordingly, under Section 349(h) of New York's General Business Law, Ms. Ritchie is entitled to recover statutory, compensatory, and treble damages and reasonable attorneys' fees and expenses.  In addition, Ms. Ritchie is also entitled to an injunction against Defendants preventing them from continuing the aforesaid deceptive practices.

### Count XII

### (Fraud)

154.   Ms. Ritchie incorporates the contents of the paragraphs hereinabove.

155.   Defendants conducted a fraudulent scheme to extract tribute from Ms. Ritchie.  Defendants wilfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in furtherance of this scheme.  They also wilfully and knowingly concealed material facts from Ms. Ritchie.  Defendants knew the falsity of the misrepresentations at the time these misrepresentations were made.  Defendants also knew the material nature of the facts that they willfully concealed from Ms. Ritchie, and that Defendants ought to have disclosed these facts at that time to Ms. Ritchie.  Defendants had superior knowledge not available to Ms. Ritchie; as such, they had the duty to disclose the facts.  Ms. Ritchie and the court relied upon Defendants's representations, and were unaware of the falsity or misleading nature of the representations.  Ms. Ritchie' reliance was reasonable under the circumstances.  As a result of such reliance, Ms. Ritchie sustained damages.

156.   By engaging in the conduct described above, Defendants committed a fraud upon Ms. Ritchie.

157.   Moreover, Defendants' wanton conduct was systematic, in reckless disregard of their statutory and other duties, tantamount to criminal indifference to civil obligations, and unconscionable.

158.   Defendants are therefore liable to pay Ms. Ritchie compensatory and punitive damages in such amount as may be proven at trial, together with

attorneys' fees and expenses and such other amounts as may be
appropriate.

## Jury Demand

159.   Ms. Ritchie demand a trial by jury.

**WHEREFORE**, Ms. Ritchie demand judgment against Defendants
on each Count aforesaid:

a.     awarding compensatory, punitive, and/or treble damages to Ms.
       Ritchie in such amount as may be determined after discovery and
       trial;

b.     awarding Ms. Ritchie the costs of this action, including reasonable
       attorneys' fees and expenses, experts' fees and other disbursements;
       and

c.     for such further and other reliefs as may be just and proper.

Dated:        New York, New York          **Chittur & Associates, P.C.**
              December 15, 2014

                                                Sd/
                                          _____
                                          By:  Krishnan Chittur, Esq.
                                          500 Executive Blvd. Suite 305
                                          Ossining, New York 10562
                                          Tel: (914) 944-4400

                                          Attorneys for Plaintiff Patricia Ritchie