SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 1
-----------------------------------------------------------------x
BRADLEY C. ALDRICH, MICHAEL ARNOLD,
ESTELA SALAS and STEPHANIE WEIER,
on behalf of themselves and all others similarly situated,

               Plaintiffs,

        -against-

NORTHERN LEASING SYSTEMS, INC., JAY COHEN,
STEVE BERNARDONE, RICH HAHN, SARA KRIEGER
AND JOHN DOES 1-50,

               Defendants.
-----------------------------------------------------------------x

Index No: 602803/07

Decision and Order

**FILED**

MAR 2 3 2016

COUNTY CLERK'S OFFICE
NEW YORK

Hon. Martin Shulman, JSC:

     In motion sequence 017, plaintiffs Bradley C. Aldrich ("Aldrich"), Michael Arnold

("Arnold") and Estela Salas ("Salas") (collectively "plaintiffs") move by order to show

cause ("OSC") for an order:  (1) striking defendant Jay Cohen's ("Cohen") answer and

granting judgment against him based upon his failure to appear for depositions; (2)

pursuant to CPLR Article 9 certifying a "limited issue" class solely with respect to

defendants' liability as to Count IV of the First Amended Class Action Complaint

("amended complaint", at Exh. 1 to OSC), or alternatively as to Count V;[1] (3) granting

summary judgment as to liability against each defendant on amended complaint Count

IV (willfully obtaining CCRs without written notice in violation of GBL §380-b[b]), or

---

[1] These causes of action allege violations of General Business Law ("GBL")
§380-b(b) based upon the named defendants accessing consumer credit reports
("CCRs") of plaintiffs-lease guarantors without providing written notice.  This branch of
the OSC also requests that Aldrich, Arnold and Salas be designated as adequate
representatives for the class; that Krishnan S. Chittur, Esq., of Chittur & Associates,
P.C. ("Chittur") be appointed as class counsel; and defendant Northern Leasing
Systems, Inc. ("NLS") be directed to provide the court-approved notice to all members
of the class at its expense.

alternatively as to Count V (negligent violation of GBL §380-b[b]);[2] (4) pursuant to CPLR §130-1.1, *et seq.*, sanctioning defendants and their counsel for frivolous conduct; and (5) directing that the caption herein be amended to remove former plaintiff Stephanie Weier ("Weier") as a plaintiff.[3]

Defendants oppose plaintiffs' OSC and cross-move for summary judgment dismissing:  (1) Counts I, II, V, VI and VII of the amended complaint (alleging negligent violations of the Fair Credit Reporting Act ["FCRA"][4] and New York's counterpart thereto ["NY FCRA"][5] based upon plaintiffs' alleged inability to establish actual damages); (2) Counts IV through VIII (alleging violations of the NY FCRA) as to non-New York residents Aldrich and Salas; (3) Counts I and VI as to Arnold and Salas on the grounds that NLS (or its affiliate) had a permissible purpose in accessing these plaintiffs' CCRs; and (4) Counts II, III, VII and VIII as to Arnold on the grounds that NLS reported accurate information as to this plaintiff.  Plaintiffs oppose the cross-motion.

In motion sequence 018, defendants move pursuant to CPLR §3126 for an order dismissing this action and/or striking plaintiffs' pleadings based upon various alleged discovery defaults (or alternatively to compel compliance), as well as for sanctions for

---

[2] Related requested relief includes a declaration that defendants violated GBL §380-b(b), permanent injunctive relief enjoining further violations and severance of plaintiffs' remaining claims for compensatory and punitive damages.

[3] This portion of plaintiffs' OSC is granted to the extent that this decision and order shall include appropriate decretal language to effectuate Weier's removal from the caption, as previously stipulated to by counsel for the parties.

[4] 15 USC §§ 1681, *et seq.*

[5] GBL Article 25, §§ 380, *et seq.*

frivolous conduct pursuant to 22 NYCRR §130-1.1, *et seq.* (the "discovery motion"). Plaintiffs oppose defendants' discovery motion and cross-move for: a protective order;[6] reargument of this court's August 28, 2014 decision and order in motion sequence 16 ("8/28/14 decision"); and leave to file a note of issue within 30 days of notice of entry of the instant order (the "discovery cross-motion"). Defendants oppose the discovery cross-motion. Motion sequences 017 and 018 are consolidated for disposition.

The factual and procedural background of this action is set forth at length in this court's prior decisions and orders dated August 16, 2012 and August 9, 2013. The August 16, 2012 decision and order ("prior certification decision") *inter alia* denied plaintiffs' prior motion for class certification on their causes of action under the FCRA and NY FCRA alleging that defendants obtained their CCRs without a permissible purpose ("unlawful access claims").[7] By decision and order dated August 9, 2013, this court granted plaintiffs' motion to amend the complaint to allege willful and negligent violations of GBL §380-b(b), which requires that advance written notice be given prior to accessing plaintiffs' CCRs ("lack of notice claims"). *Aldrich v Northern Leasing Sys.,*

---

[6] Plaintiffs request a protective order barring further discovery based upon their contentions that all discovery is complete and no further discovery is warranted with respect to Counts IV and V, which were interposed upon the complaint's amendment.

[7] The prior certification decision also: denied plaintiffs' motion for partial summary judgment on their negligent unlawful access claims; granted defendants' cross-motion for summary judgment dismissing the willful unlawful access claims in their entirety; and granted summary judgment dismissing the negligent unlawful access claims solely as to the individual defendants.

*Inc.,* 40 Misc3d 1231(A), 2013 WL 4487455, *affd* 127 AD3d 543 (1st Dept 2015) ("amendment decision").[8]

## DISCUSSION

This court first addresses defendants' various challenges to the merits of each cause of action. "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case [internal quotation marks and citation omitted]." *Santiago v Filstein*, 35 AD3d 184, 185-186 (1st Dept 2006). The burden then shifts to the motion's opponent to "present facts in admissible form sufficient to raise a genuine, triable issue of fact." *Mazurek v Metropolitan Museum of Art*, 27 AD3d 227, 228 (1st Dept 2006); *see Zuckerman v City of New York*, 49 NY2d 557, 562 (1980). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied. *See Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 (1978).

### I. NY FCRA Claims (Counts IV-VIII) - Plaintiffs Aldrich and Salas

With respect to Aldrich and Salas, both Texas residents, defendants argue that these plaintiffs cannot assert claims under the NY FCRA (Counts IV, V, VI, VII and VIII[9]) because its protections only extend to New York residents. The statute itself is silent as to its scope. Defendants thus rely upon the NY FCRA's legislative history.

---

[8] Determination of the within motions and cross-motions was held in abeyance pending the Appellate Division, First Department's determination of defendants' appeal from this court's amendment decision.

[9] Counts VII and VIII are not alleged on Salas' behalf.

Originally enacted in 1970, the NY FCRA was amended in 1977 to add GBL §380-b(b). Defendants attach a copy of the New York State Governor's Approval Memorandum No. 45 dated May 1, 1970 (Exh. F to Lillienstein Aff. in Opp. to OSC and in Supp. of Cross-Motion ["Lillienstein Aff."]), which expressly states that the purpose of Senate Bill No. 7401 establishing the Credit Data Reporting Act was "to enable New Yorkers to protect themselves against the dissemination of inaccurate information bearing on their credit worthiness and against unwarranted invasions of their privacy" (emphasis added). Defendants also attach the 1977 Senate Debate Transcripts on Senate Bill S1525 (1977 Ch. 867) pertaining to the amendment to include GBL §380-b(b)'s notice provision (*id.* at Exh. G), which describes the proposed bill as "fairly reasonably afford[ing] to consumers in this State the . . . protection that they need. . ." because "[n]either the State nor the Federal Reporting Act . . . provide [sic] for our consumers to be informed in all instances that a consumer report may be reported on them." *Id.* at pp. 14,005, 14,007 (emphasis added).

Defendants also cite *Goshen v Mutual Life Ins. Co. of New York*, 98 NY2d 314 (2002) and *Batas v Prudential Ins. Co. of Am.*, 37 AD3d 320 (1st Dept 2007), noting that the legislature's intent to limit the NY FCRA's protections to New York consumers is consistent with these case holdings denying the application of other GBL provisions (to wit, GBL Article 22-A [Consumer Protection from Deceptive Acts and Practices])[10] to non-New York residents. In opposition, plaintiffs do not address the NY FCRA's legislative history other than to emphasize that defendants only refer to "isolated

---

[10] GBL §§ 349, *et seq.*

phrases" in the proffered documentation. See Chittur Reply Aff. at ¶39. Instead, plaintiffs focus on the *Goshen* court's finding that GBL §349 was not "intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts . . ." (98 NY 2d at 325) and cite *Cruz v FXDirectDealer, LLC*, 720 F3d 115 (2d Cir 2013), a subsequent federal court decision interpreting *Goshen*.[11] Plaintiffs place too much emphasis on the foregoing language and ignore *Goshen*'s more relevant observations.

Although *Goshen* does not address the NY FCRA and thus is not entirely on point, its statutory analysis construing GBL Article 22-A's consumer protection provisions is nonetheless instructive. First, the Court of Appeals noted GBL §349(a)'s express language prohibiting "deceptive acts or practices in the conduct of any business, trade or commerce . . . *in this state*" (emphasis in original). 98 NY2d at 324-325. The NY FCRA lacks similar language or any other indication as to its scope. Next, the court in *Goshen* looked to GBL §349's legislative history. Like the NY FCRA's legislative history defendants cited to, GBL §349's legislative history also indicates that its goal is to provide "significant new protection to consumers in this state". *Id.* at 325.

Most compelling to this court, however, is *Goshen*'s following observation, which is equally applicable in assessing the NY FCRA's reach:

> To apply the statute to out-of-state transactions in the case before us
> would lead to an unwarranted expansive reading of the statute, contrary to

---

[11] *Goshen* held that the relevant inquiry in determining GBL §349's applicability is whether the consumer was deceived in New York ("to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York"). 98 NY2d at 325. Citing a subsequent Third Department decision, *Cruz* adopts a "transaction-based" test ("we think the appropriate test in this case is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties'"). 720 F3d at 122.

legislative intent, and potentially leading to the nationwide, if not global application of [GBL] §349. . . . Furthermore, the interpretation out-of-state plaintiffs would have us adopt would tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws. (Citation omitted). *Id.*

Based upon the legislative history, the only logical conclusion is that the NY FCRA was intended solely to benefit and protect New York consumers. To find otherwise would result in an overly expansive application of the statute that the legislature never contemplated, which could potentially conflict with other states' laws.

For the foregoing reasons, the portion of defendants' cross-motion seeking summary judgment dismissing Counts IV, V, VI, VII and VIII as to Aldrich and Salas is granted. It follows that the portions of plaintiffs' OSC seeking to certify these plaintiffs as class representatives for the lack of notice claims (Counts IV and V), and for partial summary judgment in their favor on these claims, must be denied.

## II. Negligent Unlawful Access Claims (Counts I and VI) - Arnold and Salas

NLS seeks summary judgment dismissing the negligent unlawful access claims (Counts I and VI) as to plaintiffs Arnold and Salas.[12] With respect to Salas, Count VI has now been dismissed because she is not a New York resident, leaving her with only the federal claim (Count I). NLS argues that since both Arnold and Salas admit they signed equipment finance leases as guarantors, a permissible purpose existed for pulling their CCRs as a matter of law.

---

[12] As previously stated, this court's prior certification decision dismissed the willful unlawful access claims in their entirety and dismissed the negligent unlawful access claims as to the individual defendants.

### A.  FCRA (15 USC §1681o)[13] - Count I

Under 15 USC §1681b(a), the following *inter alia* are permissible purposes for which a credit reporting agency ("CRA") may furnish an individual's CCR:

> (3) To a person which it has reason to believe - -
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving *the extension of credit to, or review or collection of an account of, the consumer*; or
>
> *  *  *  *  *
>
> (F) otherwise has a *legitimate business need* for the information
>
>> (i) in connection with a business transaction that is initiated by the consumer; or
>>
>> (ii) to review an account to determine whether the consumer continues to meet the terms of the account. (Emphasis added).

If NLS can establish a permissible purpose for accessing plaintiffs' CCRs, such a showing "is a complete defense" to Count I.  *Stonehart v Rosenthal*, 2001 WL 910771, at *3 (SDNY); *Edge v Professional Claims Bur., Inc.*, 64 FSupp2d 115, 117 (EDNY 1999), *affd* 234 F3d 1261 (2d Cir 2000).

### 1. Salas

At the outset, Count I must be dismissed as to Salas because NLS is not the entity which accessed her CCR.  Salas entered into her equipment finance lease with non-party MBF Leasing, LLC ("MBF"), an NLS affiliate.  NLS proffers an affidavit from Lina Kravic ("Kravic"), NLS's director of originations, confirming that MBF, rather than NLS, obtained her CCR.  In response, plaintiffs' counsel submits only his own

---

[13] Entitled "Civil liability for negligent noncompliance", 15 USC §1681o delineates the damages a consumer may recover for FCRA violations.

affirmation stating that Salas' CCR indicates that NLS accessed it. Although counsel purports to attach a redacted copy of Salas' CCR, it inexplicably is not included. See Chittur Reply Aff. at ¶67. The affirmation of plaintiffs' counsel, who lacks personal knowledge, and lack of documentary proof are insufficient to defeat Kravic's sworn affidavit. As a result, Salas cannot maintain this cause of action against NLS and it must be dismissed.

### 2. Arnold

As to Arnold, NLS cites the following as incontrovertible evidence establishing a permissible purpose for accessing his CCR: (1) Arnold admits signing an equipment finance lease as a guarantor (see amended complaint, ¶ 42); and (2) having admitted signing same, a permissible purpose existed for accessing his CCR because, as NLS's employees testified,[14] its intended use involved the extension of credit to Arnold and/or it was obtained for purposes of review, collection and/or to advance a legitimate business need.

NLS's representatives testified that it accesses CCRs at the lease inception for various reasons, including but not limited to, determining whether to extend any credit, as well as to "price the lease", i.e., determine what to pay the vendor.[15] In previously

---

[14] See deposition transcripts of Sara Krieger (Lillienstein Aff. at Exh. H, pp. 42-43; 117-118) and Lina Kravic (id. at Exh. J, pp. 52-53; 101-103; 109-110; 112; 124; 126); and Kravic Aff. at ¶¶ 15-19, 23-27.

[15] This court opined in the prior certification decision, in dicta, that if NLS's intent in pulling plaintiffs' CCRs was to calculate the amount to pay to vendors, such would be an impermissible purpose under both the FCRA and the NY FCRA. Id. at p. 23. In this cross-motion, NLS notes its disagreement with the foregoing, arguing that pricing the lease is part and parcel of determining the terms on which credit will be granted, an arguably permissible purpose.

dismissing plaintiffs' willful unlawful access claims, this court's prior certification decision concluded that "NLS has demonstrated that it had a permissible purpose to pull the Plaintiffs-lease guarantors' CCRs at the time of lease origination (record citations omitted)." *Id.* at pp. 21-22.

The prior certification decision also noted that NLS was authorized during the lease term to obtain CCRs for review or collection of an account:

> Moreover, based on the executed guaranties and Plaintiffs' then ongoing obligation to be directly responsible for all lease payments during the terms of these leases, NLS had the statutory right to run further personal credit checks to review accounts or for collections in the event of lease payment defaults. *Id.* at p. 22.

As noted earlier, the prior certification decision dismissed plaintiffs' willful unlawful access claims as to all defendants and dismissed the negligent unlawful access claims only as to the individual defendants. Citing inconsistencies in Kravic's EBT testimony and her supporting affidavit, the prior certification decision denied dismissal of the negligent unlawful access claims as to NLS, finding that "a material issue of fact exist[ed] as to what NLS truly intended". *Id.* at p. 23. NLS now urges this court to essentially reconsider that finding, bringing to the court's attention what it contends was plaintiffs' counsel's misleading presentation of Kravic's EBT testimony during that prior round of motion practice.[16] Further bolstering NLS's renewed request for summary judgment on the negligent unlawful access claims, defendant Sara Krieger

---

[16] Defense counsel contends they were unable to bring this to the court's attention at that time because plaintiffs' counsel's statements were made in reply papers. However, the prior certification decision refers to defendants having submitted a reply, and specifically notes that defendants took issue with plaintiffs' counsel selectively quoting from Kravic's deposition transcript. *Id.* at p. 9.

("Krieger"), NLS's Vice President of Originations, has since been deposed.  NLS argues that Kravic's complete testimony, combined with Krieger's corroborating testimony, establishes that a permissible purpose existed for accessing plaintiffs' CCRs, thus warranting summary judgment in NLS's favor dismissing the negligent unlawful access claims.

In opposition to this branch of the cross-motion, plaintiffs' counsel argues that: (1) having previously moved for summary judgment dismissing the unlawful access claims, NLS's instant cross-motion is barred by the "one motion rule"; (2) the doctrine of "law of the case" bars dismissal of the negligent unlawful access claims; (3) NLS cannot establish entitlement to summary judgment dismissing the unlawful access claims because the lease relied upon is purportedly inadmissible;[17] and (4) the document Arnold signed was null and void for fraud in the inducement based upon alleged misrepresentations made to him at lease signing.[18]

Addressing the argument that NLS should not be allowed to bring a successive motion for summary judgment, as recently stated in *Fleming & Assoc., CPA, P.C. v Murray & Josephson, CPAs, LLC*, 127 AD3d 428, 428 (1st Dept 2015), "[s]uccessive motions for summary judgment should not be entertained without a showing of newly discovered evidence or other sufficient justification (citation omitted)."  However, while

---

[17] Arnold claims to have signed a one page document rather than a four page booklet lease as NLS claims, thus plaintiffs' counsel argues that the lease NLS relies upon cannot be authenticated.

[18] Plaintiffs' counsel also advances these arguments on Salas' behalf.  However, as this court has dismissed Count I as to Salas (see Point II.A.1, *supra*), Arnold is the sole plaintiff referenced in this court's analysis.

disfavored, "the court should not be precluded from exercising its discretion to consider the merits of a subsequent motion" where evidence uncovered during discovery places the court in a better position to determine a legally dispositive issue. *Foster v Kelly*, 119 AD3d 1250, 1251 (3d Dept 2014); *Floyd v New York State Thruway Auth.*, 125 AD3d 1456, 1457 (4th Dept 2015).

Indeed, "[i]f a dispositive point can be reached, it should be." *Varsity Tr., Inc. v Board of Educ. of City of New York*, 300 AD2d 38, 39 (1st Dept 2002) (citation omitted) ("sufficient cause to except to the rule exists inasmuch as the record . . . demonstrates that the matter can be further disposed of without burdening the resources of the court and movants with a plenary trial [citations omitted])". See also *Scholem v Acadia Realty Ltd. Partnership*, 45 Misc3d 562 (Sup Ct, Suffolk County, 2014) (entertaining second summary judgment motion after completion of discovery "is a better use of judicial resources than conducting a full trial"); *Goldstone v Gracie Terrace Apt. Corp.*, 32 Misc3d 1239(A), 938 NYS2d 227, at *4 (Sup Ct, NY County, 2011).

NLS argues the one motion rule does not apply because the complaint was amended after its first summary judgment motion was denied, and in any event, sufficient cause exists because the first motion was purportedly tainted with plaintiffs' counsel's misleading characterization of Kravic's EBT testimony and Krieger's EBT has now taken place. In its discretion, this court will entertain NLS's second request for partial summary judgment on the negligent unlawful access claims based upon the subsequent deposition of Krieger and the above cited case law.

As for the argument that this court's denial of summary judgment on the negligent unlawful access claims against NLS is "law of the case", "[a] denial of

-12-

summary judgment on the merits is merely a determination that the moving party has failed to make the requisite showing at that time (citation omitted)." *Scholem, supra.* "It does not bar the court from resolving an issue after further discovery (citation omitted)." *Id.*

Having reviewed Kravic and Krieger's descriptions of the manner in which NLS utilizes CCRs during the lease origination process, it is readily apparent that NLS obtains its lease guarantors' CCRs not only to "price the lease", but also for the permissible purpose of determining whether or not to extend credit in the first instance. See 15 USC §1681b(a)(3)(A). These witnesses testified extensively as to how the information obtained from CCRs affects NLS's decision whether or not to enter into equipment finance leases, specifically identifying those factors that, if contained in the guarantor's CCR, would cause NLS to reject a lease application (*i.e.*, bankruptcy, recent tax liens, fraud alerts, conflicting identifying information, etc.).

Here, Arnold's signed lease and guaranty was an application for credit and upon NLS's receipt thereof, NLS necessarily was compelled to determine whether or not to fund the lease (*i.e.*, extend credit). As such, there can be no issue as to NLS's intent and a permissible purpose thus existed for obtaining Arnold's CCR at the time of lease origination. A permissible purpose for obtaining Arnold's CCR during the lease term also existed as it is permissible to obtain a CCR to review an account or for collection purposes, or for other legitimate business purposes (15 USC §1681b[3][F]).[19]

---

[19] For the same reasons, a permissible purpose would also exist for MBF to access Salas' CCR.

Arnold does not put forth any evidence to contradict the foregoing permissible purposes. Citing Kravic's EBT testimony to the effect that NLS seldom investigates the creditworthiness of the lessee itself, plaintiffs' counsel posits that this admission "abundantly shows that Defendants' only purpose for evaluating the guarantor's credit is to 'price the lease and to fund the vendor'." Chittur Reply Aff. at ¶54. This is mere speculation on plaintiffs' part.

Arnold's arguments regarding lease authentication and fraud in the inducement can be summarily disregarded. First, the fraud in the inducement claims are premised upon alleged misrepresentations made by independent sales organizations ("ISO"), and are not attributable to NLS. See October 13, 2010 decision in *Northern Leasing Sys., Inc. v Turner*, N.Y. County Index No. 602006/04 (Solomon, J.) (Lilienstein Aff. at Exh. K).

Further, under 15 USC §1681b(a)(3)(A), the only relevant inquiry is NLS's intent in accessing Arnold's CCR and neither fraud claims involving an ISO nor whether Arnold signed a one page lease or a four page booklet lease has any bearing on NLS's intent. Indeed, where, as here, NLS obtains a lease applicant's CCR with the intention of extending credit or reviewing or collecting the account, it has a permissible purpose, even if it obtains the CCR in error. See, e.g., *Beckstrom v Direct Merchant's Credit Card Bank*, 2005 WL 1869107 at *3 (D.Minn) (FCRA not violated where entity seeking CCR made a good faith error in pulling it [obtained for the wrong person]); *Korotki v Attorney Servs. Corp., Inc.*, 931 FSupp 1269, 1276 (D.Md. 1996), *affd* 131 F3d 135 (4th Cir 1997); *cert den* 523 US 1118 (1998) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating

-14-

the FCRA"); *Trikas v Universal Card Servs. Corp.*, 351 FSupp2d 37, 41-43 (EDNY 2005) (no impermissible purpose where consumer no longer had an open account with inquiring party).

For the foregoing reasons, the branch of NLS's cross-motion for summary judgment dismissing Count I is granted as to both Arnold and Salas.  This cause of action now solely remains as to plaintiff Aldrich.

### B.  NY FCRA (GBL §380-b[a]) - Count VI

Count VI of the amended complaint alleges that NLS negligently obtained plaintiffs' CCRs without a permissible purpose in violation of GBL §380-b(a).  As this court previously noted (*see* fn 4 in *Aldrich v Northern Leasing Sys., Inc.*, 2009 NY Misc LEXIS 4752 [*4][Sup Ct NY Co 2009]), the NY FCRA is patterned after the FCRA, its federal counterpart, and is interpreted consistently with federal law.  The NY FCRA, where relevant, parallels the federal FCRA provisions:

§ 380-b. Permissible dissemination of reports

(a)  A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

* * * * *

(3)  To a person whom it has reason to believe intends to use the information (i) in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . ., or (v) to a person in connection with a business transaction involving the consumer where the user has a legitimate business need for such information . . .

For the same reasons a permissible purpose existed for accessing Arnold's CCR under the FCRA, a permissible purpose similarly existed under the NY FCRA.

-15-

Accordingly, the branch of NLS's cross-motion for summary judgment dismissing Count VI is granted as to Arnold, and in light of its dismissal as to Aldrich and Salas based upon their non-resident status, this cause of action is now dismissed in its entirety.

### III.  Refusal/Failure to Investigate/Rectify Reporting Error - Plaintiff Arnold

#### A.  FCRA (15 USC §1681s-2[b][A]) - Counts II and III

The duties of those who furnish information to CRAs and who are subsequently notified of a dispute are set forth in 15 USC §1681s-2, which provides in relevant part:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.

Arnold alleges in Counts II and III[20] of the amended complaint that defendants, upon being informed by a CRA that he disputed the accuracy of information defendants furnished, negligently (Count II) and/or willfully (Count III): (1) failed to conduct a proper investigation of the disputes (15 USC §1681s-2([b][1][A]); (2) failed to review all relevant information adequately in conducting their investigation (15 USC §1681s-2([b][1][B]); and (3) failed to direct the CRA to delete inaccurate information (15 USC §1681s-2([b][1][C]).  See amended complaint at ¶¶ 74-76, 80-82 (Exh. 1 to OSC).

Specific to Arnold, the amended complaint alleges at paragraph 45 that defendants, through NLS, wrongfully reported to a CRA that Arnold "had a 'credit limit/orig. amt' of $2,157, and that they had 'charged off' $1,560, which Mr. Arnold allegedly 'owed'."  After Arnold disputed same, defendants allegedly failed to correct the purportedly inaccurate report.  *Id.* at ¶¶ 46-47.

Defendants claim entitlement to summary judgment dismissing these causes of action as to Arnold because the information they provided to the CRA in question was accurate.  Defendants cite the amended complaint's acknowledgment that Arnold signed a lease with NLS (*id.* at ¶42) and his deposition testimony wherein he admitted that:  he signed a lease for a 48 month non-cancelable term; he received the equipment described in the lease; it worked properly; he used it for ten months; and he stopped paying NLS because he was dissatisfied with the interest rates an unrelated

---

[20] While Counts II and III are also alleged on Aldrich's behalf, the portion of defendants' cross-motion for summary judgment dismissing same based upon the accuracy of the information reported is directed only to Arnold.  Defendants seek summary judgment as to Aldrich only on Count II, predicated upon his alleged inability to establish actual damages.  See Point VI, *infra.*

merchant processing company was charging him for credit card transactions under a separate contract. See Lillienstein Aff. at ¶¶ 68-71. As the lease provides for a 48 month term which cannot be canceled and Arnold admitted stopping payment before the end of the term, defendants contend the information was correct and they were not obligated to correct the entry to Arnold's CCR.

In opposition, Arnold again raises questions as to the lease's validity and lack of authentication. Arguing that he only admitted to signing a one page document and was fraudulently induced to do so, Arnold contends defendants are not entitled to summary judgment predicated upon the four page booklet lease they proffer as bearing his signature. See Chittur Reply Aff. at ¶63. These arguments fail to refute Arnold's deposition testimony, support the amended complaint's allegations and/or refute the accuracy of the information defendants furnished.

As Arnold fails to rebut defendants' entitlement to summary judgment, the branch of defendants' cross-motion for summary judgment dismissing Counts II and III as to Arnold is granted.

### B.  NY FCRA (GBL §§ 380-*l* and 380-m) - Counts VII and VIII

Counts VII and VIII of the amended complaint mirror counts II and III but seek damages under GBL §380-*l* (civil liability for willful noncompliance) and GBL §380-m (civil liability for negligent noncompliance), respectively. These causes of action are dismissed as to Arnold for the same reasons Counts II and III were dismissed, *supra*. Accordingly, the branch of NLS's cross-motion for summary judgment dismissing Counts VII and VIII is granted as to Arnold, and in light of their dismissal as to Aldrich

based upon his non-resident status, these causes of action are now dismissed in their entirety.

### IV.  Summary Judgment - Lack of Notice Claims (Counts IV and V)

This court now addresses the merits of the lack of notice claims, which are now extant solely as to Arnold.  Plaintiffs' OSC seeks summary judgment on both the willful and negligent lack of notice claims (Counts IV and V, respectively).  Defendants' cross-motion seeks summary judgment solely on the negligent lack of notice claim (Count V) on the ground that Arnold cannot establish actual damages.

GBL §380-b(b) provides in relevant part as follows:

> No person shall request a consumer report . . . in connection with an application made after the effective date of this article, for credit . . . unless the applicant is first informed in writing or in the same manner in which the application is made that (i) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

Citing Kravic's deposition testimony (OSC at Exh. 8, pp 170-171), Arnold argues it is undisputed that defendants failed to provide the foregoing statutorily required notice to him and the putative class.  In opposition, defendants do not address this argument as to Arnold, but with respect to the proposed class state that in 2012 they modified their lease forms to include language which satisfies GBL §380-b(b)'s notice requirements.[21]

As to Arnold, they argue that summary judgment should not be granted and is premature because plaintiffs failed to provide any discovery as to the lack of notice

---

[21] Plaintiffs dispute the sufficiency of the newly added language.

claims. Defendants incorporate the arguments made in support of their discovery motion, to wit, that plaintiffs have refused to produce documents, answer interrogatories, produce medical records and authorizations as to their health claims, and appear for further depositions. Defendants particularly focus upon the alleged lack of discovery pertaining to damages for the negligent lack of notice claim, which they argue "should be viewed as a failure of proof of an element of the claim for which [plaintiffs] seek summary judgment." Lillienstein Aff. at ¶35.

### A. Negligent Lack of Notice Claim (Count V)

GBL §380-m provides in relevant part as follows:

> Civil liability for negligent noncompliance
>
> Any user of information who or which is negligent in failing to comply with any requirement imposed under this article . . . with respect to any consumer is liable to that consumer in an amount equal to the sum of:
>
> (a) Any actual damages sustained by the consumer as a result of the failure;
>
> (b) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

The foregoing provision is substantially similar to 15 USC §1681o(a), its federal counterpart, which also permits recovery of actual damages and attorney's fees for negligent noncompliance with its provisions. That statute is interpreted to require that actual damages be pleaded as a necessary element of a cause of action for negligent noncompliance with FCRA provisions. *Ritchie v Northern Leasing Sys., Inc.*, 14 FSupp3d 229, 240 (SDNY 2014); *Braun v Client Services Inc.*, 14 FSupp3d 391, 397-398 (SDNY 2014). In the summary judgment context "[p]laintiffs 'bear[ ] the burden of

proving actual damages sustained.'" *George v Equifax Mtge. Servs.*, 2010 WL

3937308, at *1 (EDNY), citing *Casella v Equifax Credit Info. Servs.*, 56 F3d 469, 473

(2d Cir 1995).

As the NY FCRA is interpreted consistently with the FCRA, after which it was

patterned, Arnold must prove he sustained actual damages. *George v Equifax Mtge.*

*Servs., supra.* Here, regardless of whether or not defendants' liability is undisputed,

Arnold cannot maintain his negligent lack of notice cause of action because he has no

actual damages.  Specifically, in opposition to the discovery motion, Arnold takes the

position that his responses to defendants' discovery demands regarding damages are

sufficient because the same damages previously described as having ensued from the

FCRA and NY FCRA violations alleged in the original complaint (such as physical

ailments and mental anguish) are also attributable to the more recent lack of notice

claims.  Chittur Aff. in Opp. to Motion and in Supp. of Cross-Motion, ¶8.  Arnold reasons

that had defendants complied with GBL § 380-b(b) by giving prior notice, then he would

have been in a position to prevent defendants from accessing his CCR "and none of

these injuries would have followed." *Id.*

The problem with this position is that all causes of action except the lack of

notice claims have now been dismissed as to Arnold.  In light of such dismissal, by his

own characterization Arnold has no actual damages.  Count V of the amended

complaint therefore must be dismissed based upon Arnold's inability to establish actual

damages.

For the foregoing reasons, plaintiffs' OSC for summary judgment on Count V is

denied and the portion of defendants' cross-motion for summary judgment dismissing

Count V is granted. In light of Count V's dismissal as to the remaining plaintiffs based upon their out of state residency, Count V is now dismissed in its entirety.

### B. Willful Lack of Notice Claim (Count IV)

Unlike the negligent lack of notice claim, no showing of actual damages is required to sustain a cause of action for willful violation of GBL §380-b(b). See GBL § 380-*l*. Having not sustained any actual damages, Arnold's recovery, if any, will thus be limited to punitive damages and attorney's fees if he prevails. *Id.*

In support of the request for summary judgment on this cause of action, Arnold cites *Safeco Ins. Co. of Am. v Burr*, 551 US 47, 56-57 (2007), which dealt with FCRA violations, and held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well". Arnold concludes that defendants acted in reckless disregard of their statutory duty to provide notice as GBL §380-b(b) requires, citing their failure to familiarize themselves and their staff with relevant credit reporting laws.

In opposition, defendants argue the willfulness claim is unsupported and based upon deposition testimony concerning a different issue, to wit, whether NLS had a permissible purpose to access plaintiffs' CCRs. They further note that there is no requirement for each NLS employee to be a legal expert on credit reporting laws.

Here, Arnold fails to sustain his burden of establishing entitlement to judgment as a matter of law on his claim for willful violations of GBL §380-b(b). Arnold relies only on conclusory allegations which are insufficient to establish that defendants acted willfully. Accordingly, the portion of plaintiffs' OSC seeking partial summary judgment as to Count IV must be denied.

## V. Class Certification

Given the foregoing determinations, the only potential class representative for the lack of notice claims is New York resident Arnold. As Arnold's negligent lack of notice claim has been dismissed, the only claim which is potentially certifiable is the claim for willful violation of GBL §380-b(b) (Count IV).

Although the ultimate decision to grant class certification is within the court's sound discretion *(see Lauer v New York Tel. Co.,* 231 A.D.2d 126, 130 [3d Dept. 1997]), still, a plaintiff bears the burden of meeting the statutory prerequisites for certification, to wit: (1) the class must be so numerous that joinder of all members is impracticable; (2) common questions of law or fact must predominate; (3) the claims of the representative plaintiff must be typical of all members of the class; (4) the representative party must fairly and adequately protect the interests of the class; and (5) a class action must be the most fair and efficient means of resolving the controversy. *Pludeman v Northern Leasing Sys., Inc.,* 74 AD3d 420, 421-422 (1st Dept 2010).

Further, the claim on which certification is sought must not only have merit, but must also have buttressed evidentiary support and not rest on conclusory allegations. *Kudinov v Kel-Tech Constr. Inc.,* 65 AD3d 481 (1st Dept 2009). Having denied summary judgment on Count IV, *supra,* because of the conclusory nature of the willfulness allegations, class certification must similarly be denied. Accordingly, the portion of the OSC seeking class certification and related relief is denied.[21]

---

[21] While it is unnecessary to address the remaining arguments advanced in support of and in opposition to class certification, there appears to be confusion on the

## VI. Summary Judgment - Aldrich's Negligent FCRA Claims (Counts I and II)

As to Counts I and II alleging negligent FCRA violations (now extant solely as to Aldrich), defendants request summary judgment arguing that Aldrich cannot establish actual damages as required by 15 USC § 1681o.  Defendants' arguments in support of their cross-motion for summary judgment focus on the negligent lack of notice claims under the NY FCRA but are sparse with respect to the negligent FCRA claims.  See Lillienstein Aff. at ¶¶ 31-35.  However, as mentioned in Part IV.A, *supra*, defendants incorporate the arguments made in support of their discovery motion.  In opposition, plaintiffs rely on their expert's report and cite case law confirming that damages for mental anguish and emotional distress are recoverable under the FCRA.

As set forth in Point IV.A, *supra*, 15 USC § 1681o is interpreted to require actual damages as a necessary element of a cause of action for negligent noncompliance with FCRA provisions such as 15 USC § 1681b(a) (Count I) and 15 USC §1681s-2(b)(1) (Count II).  *Ritchie v Northern Leasing Sys., Inc., supra; Braun v Client Services Inc., supra.*  As to Aldrich, the record does not support summary judgment on the merits . dismissing his negligent FCRA claims based upon a failure of proof of the essential element of actual damages.  The sufficiency of the discovery Aldrich has provided thus far to establish damages (such as his expert's report)[22] is not discussed in the moving

---

parts of both plaintiffs and defendants as to the amendment decision's statute of limitations analysis.  This court reiterates its finding that the lack of notice claims relate back to the original complaint as to the named plaintiffs and thus were interposed timely, but the claims of potential class members whose claims arose before December 2010 are time barred.

[22] See Exhibit 3 to Discovery Cross-Motion.

papers and as such it is not possible to make a determination on the merits.[24]  For the foregoing reasons, the portion of defendants' cross-motion for summary judgment as to Counts I and II must be denied as to Aldrich.

## VII.  Remaining Discovery Issues

This court now turns to defendants' discovery motion, the portion of plaintiffs' discovery cross-motion requesting a protective order and the portion of plaintiffs' OSC seeking to strike defendant Cohen's answer based upon his failure to appear for depositions.  For the sake of brevity and to conserve judicial resources, this court only addresses alleged discovery defaults related to the sole remaining plaintiffs and causes of action, to wit:  Aldrich's FCRA claims (Counts I, II and III) and Arnold's willful lack of notice claim (Count IV).  The discovery motion details purported discovery defaults by plaintiffs dating back to 2010.  To the extent that it is based upon discovery defaults by plaintiff Salas or seeks discovery relevant to dismissed causes of action, it is denied as moot.

With respect to penalties for failure to comply with discovery procedures, CPLR §3126 provides in relevant part as follows:

> If any party...refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:

---

[24] Aldrich's situation is distinguishable from Arnold's, whose damages for his sole remaining negligent violation claim (for lack of notice under the NY FCRA) were stated to be the same as those he incurred in connection with his unlawful access and refusal/failure to investigate/rectify reporting error claims.  When those claims were dismissed, the negligent NY FCRA claim necessarily failed.

-25-

1. an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order; or

2. an order prohibiting the disobedient party from supporting or opposing designated claims or defenses...; or

3. an order striking out pleadings or parts thereof,...or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.

While the penalty of striking a pleading for failure to comply with disclosure is extreme, courts have nonetheless held that dismissing the pleading is the appropriate remedy where the failure to comply has been "clearly deliberate or contumacious." *Henry Rosenfeld, Inc. v Bower & Gardner*, 161 AD2d 374 (1st Dept 1990); *Kutner v Feiden, Dweck & Sladkus*, 223 AD2d 488, 489 (1st Dept), *lv denied*, 88 NY2d 802 (1996)(disobedience of a series of court orders directing discovery warranted striking of pleading). See *Wolfson v Nassau County Med. Ctr.*, 141 AD2d 815 (2d Dept 1988) (motion to dismiss complaint granted after plaintiff failed for two and a half years to respond to interrogatories, as lack of excuse for default and extensive nature of the delay permitted an inference of willfulness, even though no court order was violated).

Defendants' discovery motion alleges that plaintiffs have defaulted with respect to the following demands:  Defendants' Second Request for Discovery and Inspection of Documents dated April 4, 2012 ("Second Request", *id.* at Exh. S); Defendants' Fourth Request for Discovery and Inspection of Documents dated December 4, 2012 ("Fourth Request", *id.* at Exh. A); the Demand for Health Related Information and Authorizations dated December 4, 2012 (*id.* at Exh. B); Defendants' Fifth Request for Discovery and Inspection of Documents and Third Set of Interrogatories dated October

15, 2013 (the "Fifth Request", at Exh. F to Discovery Motion); and their request for a further deposition.

In opposition, plaintiffs contend that discovery was complete in this action (with the exception of defendants' depositions), but was reopened via this court's September 10, 2013 stipulation and order to permit discovery solely as to the lack of notice claims. See Chittur Aff. in Opp. to Motion and in Supp. of Cross-Motion, at Exh. 1. They note that defendants never raised any issues concerning allegedly outstanding pre-amendment disclosure demands either by motion or at court conferences. Plaintiffs particularly oppose defendants' demands for authorizations to obtain their medical records and for further depositions on the lack of notice claims. They claim that the "only issue at this stage *can* be Plaintiffs' compliance with the [8/28/14 decision]. . . . [b]ut that is a non-issue, since Plaintiffs (but not defendants) are in full compliance." Emphasis in original (*id.* at ¶3).

Like plaintiffs, this court was also under the impression that the only outstanding disclosure herein, other than defendants' depositions, pertained to the lack of notice claims. Indeed, defendants' motion brought in or about January 2014 (sequence 13) was based solely upon plaintiffs' default in responding to the Fifth Request. If other discovery remained outstanding it was incumbent upon defendants to move for appropriate relief expeditiously. For this reason, defendants' discovery motion is denied as to the Second and Fourth Requests and the Demand for Health Related Information and Authorizations, all of which predate the complaint's amendment to include the lack of notice claims, and the portion of plaintiffs' discovery cross-motion seeking a protective order as to these demands is granted.

-27-

This leaves only defendants' Fifth Request and demand for a further deposition, both of which seek discovery relevant to the willful lack of notice claim (Count IV). As this claim is now outstanding solely as to Arnold, no relief is warranted in defendants' favor as against Aldrich. The discovery motion *inter alia* requests an order dismissing Arnold's claims or precluding him from supporting his claim for damages based upon his alleged willful failure to provide a supplemental response to interrogatories 3 (subsections [d] through [f]) and 4 contained in the Fifth Request.

## A. The Fifth Request

After this court's determinations herein, the only demands in the Fifth Request which are still applicable to Arnold and his sole remaining cause of action (Count IV) are interrogatories 4(a) and 3(d). As a brief background, plaintiffs initially responded to defendants Fifth Request on or about November 25, 2013 (Exh. G to Discovery Motion). Deeming this response insufficient, defendants moved to compel and preclude (*id.* at Exh. H). That motion was deemed resolved in accordance with the stipulation/order dated February 4, 2014, which directed plaintiffs to respond to the "interrogatories [and] discovery demands that are the subject of motion seq. 13" by February 18, 2014 (*id.* at Exh. I). Defendants contended plaintiffs' subsequent response dated February 14, 2014 (*id.* at Exh. J) was again insufficient and brought a second motion (seq. 16) which culminated in this court's 8/28/14 decision (*id.* at Exh. K, pp. 5-6), *inter alia* again directing plaintiffs to supplement the interrogatory responses at issue.[24] Plaintiffs subsequently served their Second Supplemental Responses dated

---

[24] Plaintiffs' discovery cross-motion seeks reargument of this decision or alternatively asks this court to delete purportedly inaccurate references to plaintiffs'

September 3, 2014 (*id.* at Exh. M), the alleged insufficiency of which prompted the instant discovery motion.

### 1. Interrogatory 4(a)

Interrogatory 4(a) seeks the amount of damages Arnold suffered in connection with alleged violations of the NY FCRA and how such damages were calculated. As previously stated, damages recoverable under GBL § 380-*l* for willful NY FCRA violations include actual damages, punitive damages and attorney's fees. As previously found, Arnold has no actual damages for lack of notice after the dismissal of his other claims herein, and thus is limited to recovering punitive damages and attorney's fees if successful on Count IV. As interrogatory 4(a) seeks information relevant to actual damages, the discovery motion is denied as moot as to Arnold with respect to this demand.

### 2. Interrogatory 3(d)

Interrogatory 3(d) seeks the specific knowledge possessed by each person claimed to have knowledge as to the allegation at paragraph 88 of the amended complaint that defendants willfully violated GBL §380-b(b) by obtaining plaintiffs' CCRs without advance notice. Plaintiffs initially stated that they responded to this inquiry at their depositions but could not provide further details because the transcripts were allegedly being "withheld" (*id.* at Exh. G).[25] They also responded that defendants' knowledge was exclusively within their possession and had yet to be disclosed (*id.*). In

_____

counsel having acted in bad faith (see discussion *infra*).

[25] Defendants emphasize that plaintiffs' depositions preceded the complaint's amendment to include the lack of notice claims.

their February 14, 2014 supplemental response (*id.* at Exh. J), plaintiffs then objected to interrogatory 3(d) as improper, a position this court ultimately rejected and found was made in bad faith (8/28/14 decision at p. 4), but went on to state, without prejudice, that defendants knowingly obtained their CCRs under false pretenses and for impermissible purposes, as purportedly testified to by defendants' representative.

Defendants cite this court's 8/28/14 decision (*id.* at Exh. K), which granted plaintiffs "one final opportunity" to identify specific responsive deposition testimony or alternatively, if "unaware of the specific knowledge by potential witnesses", to "so state under oath." Plaintiffs responded to the 8/28/14 decision by serving Plaintiffs' Second Supplemental Responses to Defendants' Third Set of Interrogatories dated September 3, 2014 (*id.* at Exh. M), wherein they state:

> Each Plaintiff is aware that Defendants obtained the personal consumer credit reports of each Plaintiff, and Defendants did so without giving any advance notice to such Plaintiff. The corporate Defendant Northern Leasing was aware of its routine practice of pulling credit reports without authorization and/or without advance notice.

Plaintiffs go on to state that defendant Bernardone was the only individual defendant who had been deposed and as such they were unaware of the remaining three individual defendants' specific knowledge or that of their employees or representatives. They then cite a portion of Bernardone's deposition testimony to the effect that it was NLS's routine practice to obtain CCRs upon receipt of a lease application and that its computer system automatically did so when information from the lease application was entered into the system.

Defendants characterize the foregoing response as "a purposeful attempt to avoid the Court's unequivocal directive" to either identify specific responsive deposition

testimony or state under oath that they lack such knowledge. Lilienstein Aff. in Supp. of Discovery Motion, at ¶¶ 27, 29. Defendants claim plaintiffs made no attempt to specify each defendant's knowledge and, insofar as relevant to Arnold, the response contradicts his sworn deposition testimony essentially conceding he had no knowledge as to how the individual defendants may have violated his rights (*id.* at Exh. O). Finally, defendants argue that Bernardone's testimony is unresponsive since it makes no mention of the advance notice requirement.

It is readily apparent from the foregoing response that Arnold cannot specify any actions or inactions on the part of the individual defendants with respect to the alleged willful violation of GBL §380-b(b) by obtaining plaintiffs' CCRs without advance notice. As of this date, only one defendant's deposition remains outstanding (to wit, defendant Cohen's, discussed *infra*). Plaintiffs still can only identify the corporate defendant NLS as being aware of its practice of accessing CCRs without giving advance notice, and they obstinately refuse to concede their inability to respond fully and in detail to this interrogatory. Presumably they seek to avoid dismissal of the remaining willful lack of notice claim as to the individual defendants. However, their continued evasiveness cannot forestall the inevitable. Under CPLR §3126(1), and in its discretion, this court deems the issue of the individual defendants' alleged willful violation of GBL §380-b(b) to be resolved in their favor. Accordingly, defendants' discovery motion is granted to the extent that Count IV is dismissed as to all defendants except NLS.

### B. Continued Deposition

The portion of the discovery motion seeking to compel continued depositions is granted as to Arnold and is to be limited to questioning on the willful lack of notice claim

(Count IV). Despite the repeated claim that plaintiffs know nothing with regard to this cause of action and that all knowledge is in defendants' possession, defendants are entitled to examine Arnold as to the willful lack of notice claim. As he is a New York resident there can be no claim of prejudice due to inconvenience or expense. The portion of the discovery motion seeking further depositions is thus granted as to Arnold, and it is directed that such deposition shall be completed within 60 days of the date hereof. It follows that plaintiffs' request for a protective order is denied as to this request.

### C. Defendant Cohen's EBT

The portion of plaintiffs' OSC seeking to strike defendant Cohen's answer is denied. On the facts presented, this court can discern no willful refusal on Cohen's part to be deposed. Rather, counsel for the parties simply cannot agree on a mutually convenient date and are unwilling to accommodate each other's schedules. Though striking Cohen's answer is unwarranted, it is ordered that his deposition be completed, like Arnold's, within 60 days of the date hereof.

### VIII. Reargument of the 8/28/14 Decision

Plaintiffs' discovery cross-motion seeks reargument of the 8/28/14 decision, and upon granting reargument, an order denying defendants' underlying motion pertaining to the Fifth Request. Alternatively, Chittur asks the court to retract the 8/28/14 decision's references to plaintiffs' counsel having acted in bad faith. This portion of the discovery cross-motion is denied, as this court did not overlook or misapprehend any matters of fact or law.

Contrary to plaintiffs' counsel's characterization of the underlying February 4, 2014 order as not addressing defendants' document demands (Chittur Aff. in Opp. to Motion and in Supp. of Cross-Motion, ¶¶ 20-24), that order expressly requires plaintiffs to serve "responses to interrogatories & **discovery demands** that are the subject of motion seq. 13" by February 18, 2014 (emphasis added). Exh. I to Discovery Motion. Implicit in the foregoing is that plaintiffs' responses to both the interrogatories and document demands discussed in the prior moving papers (*id.* at Exh. H) were deficient. As such, this court was justified in observing that plaintiffs' subsequent service of a supplemental response containing the same objections was unacceptable. As to interrogatory 3 (Chittur Aff. in Opp. to Motion and in Supp. of Cross-Motion, ¶¶ 25-26), this court's direction to plaintiffs to supplement their response presupposes that the demand was proper. Thus, it should be apparent that serving a supplemental response objecting to interrogatory 3 would not go over well with the court. Accordingly, whether or not these particular issues were actually discussed at the February 4, 2014 conference is of no moment.

IX.  Sanctions

Both parties seek sanctions against the other under 22 NYCRR §130-1.1, *et seq.* for alleged frivolous conduct. Plaintiffs' OSC (seq. 17) demands sanctions against defendants and their counsel for allegedly making materially false factual statements. Specifically, defendants denied or disclaimed knowledge as to the amended complaint's allegations in support of the lack of notice claims. See Answer to First Amended Complaint, Affirmative Defenses and Counterclaims, at Exh. 2 to OSC. Plaintiffs claim defendants knew at the time they interposed their answer that they had

-33-

never provided notice to plaintiffs as mandated by GBL §380-b(b), and their deposition testimony ultimately supports this conclusion.

Simultaneously with their request for discovery sanctions, defendants' discovery motion (seq. 18) also seeks sanctions for frivolous conduct, including, at a minimum, the costs and attorney's fees defendants incurred in bringing the discovery motion. In support, defendants cite the following transgressions:  plaintiffs' repeatedly inadequate responses to discovery orders; asserting frivolous objections (which this court's 8/28/14 decision found to be in bad faith); refusing to supplement interrogatories as directed; submitting false and perjurious interrogatory responses; and refusing to produce discovery as to their damages (including for physical and emotional injuries).

Though frustrated with both parties' general conduct to date, sanctions are denied at this time.  This case has been marked by a general lack of attention by both sides - from plaintiffs' delay in amending the complaint to allege the lack of notice claims and their deficient and often circular discovery responses, to defendants' delay in pursuing discovery remedies, etc.  In this round of motion practice, the issues in this action have been significantly narrowed and class certification has been denied.  It is expected that discovery will be completed imminently and what is left of the case will proceed to trial.

As a final matter, it was unnecessary for this court to consider defendants' sur-reply letter submissions dated August 18, 2015 and January 6, 2016 in determining these motions.  As to plaintiffs' request for leave to file the note of issue, a date will be set at the next court conference.  Accordingly, for all of the foregoing reasons, it is hereby

-34-

ORDERED that plaintiffs' OSC (seq. 017) is granted to the extent that the caption of this action shall be amended to remove plaintiff Weier (see below), and is otherwise denied; and it is further

ORDERED that defendants' cross-motion (seq. 017) is granted to the extent that Count I is dismissed as to plaintiffs Arnold and Salas; Counts II and III are dismissed as to plaintiff Arnold; Count IV is dismissed as to plaintiffs Aldrich and Salas, and as against the individual defendants; and Counts V, VI, VII and VIII are dismissed in their entirety (leaving Counts I, II and III as to plaintiff Aldrich and Count IV as to plaintiff Arnold, solely as against defendant NLS); and it is further

ORDERED that defendants' discovery motion (seq. 018) is granted to the extent that Count IV is dismissed as to defendants Cohen, Bernardone, Hahn and Krieger, and plaintiff Arnold's continued deposition shall proceed as set forth herein above, and the discovery motion is otherwise denied; and it is further

ORDERED that plaintiffs' discovery cross-motion (seq. 018) is granted to the extent that a protective order is granted as to defendants' demands unrelated to the lack of notice claims (as set forth herein above), and is otherwise denied; and it is further

ORDERED that the caption in the above action is hereby amended to delete plaintiff Stephanie Weier and, to that end, all papers, pleadings and proceedings in the above entitled action shall be deemed amended accordingly, without prejudice to the proceedings heretofore had herein; and it is further

ORDERED that plaintiffs' counsel shall serve a copy of this decision and order with notice of entry upon the County Clerk (Room 141B) and the Clerk of the Trial

Support Office (Room 158), who are directed to amend their records to reflect such change in the caption herein.

Counsel for the parties are directed to appear for a status conference on May 24, 2016, at 9:30 a.m. at 60 Centre Street, Room 325, New York, New York.

The foregoing constitutes this court's Decision and Order.  Courtesy copies of this Decision and Order have been provided to counsel for the parties.

Dated:   New York, New York
         March 21, 2016

HON. MARTIN SHULMAN, J.S.C.

FILED

MAR 2 3 2016

COUNTY CLERK'S OFFICE
NEW YORK

-36-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————— x

BRADLEY C. ALDRICH, MICHAEL ARNOLD,  :
ESTELA SALAS, AND STEPHANIE WEIER, ON  :
BEHALF OF THEMSELVES AND ALL OTHERS  :
SIMILARLY SITUATED,  :
                      Plaintiffs,  :

              -v-  :

NORTHERN LEASING SYSTEMS, INC., JAY  :
COHEN, STEVE BERNARDONE, RICH HAHN  :
AND SARA KRIEGER, AND JOHN DOES 1-50,  :

              Defendants.  :

———————————————————————— x

Index No. 602803/07

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK  )

     Nicholas A. Moran, being duly sworn according to law, deposes and says that he is employed by Moses & Singer LLP, and that on the 24th day of March, 2016, he caused a copy of a signed **Order With Notice of Entry Dated March 24, 2016** to be served upon:

        Krishnan Chittur, Esq.
        CHITTUR & ASSOCIATES, P.C.
        500 Executive Blvd., Suite 305
        Ossining, New York  10562

by depositing a true copy thereof enclosed in a post-paid envelope into a receptacle under the exclusive care and custody of the United States Postal Service.

                                Nicholas A. Moran

Sworn before me this
2_4_day of March, 2016

DON K. KICK
Notary Public, State of New York
No. 01KI6098644
Qualified in Nassau County
Commission Expires Sept. 15, 2015

3341758v1 011082.0106